**E-FILED**
Monday, 20 November, 2006  06:52:05 AM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES ex rel. TONY SHOEMAKER, | ) ) ) ) | |
| Petitioner, | ) ) | |
| vs. | ) ) | No. 06-3187 |
| DONALD HULICK, Warden, | ) ) | The Honorable Richard Mills, |
| Respondent. | ) | Judge Presiding. |

## <u>ANSWER</u>

Respondent, Donald Hulick, by his attorney, Lisa Madigan, Attorney General of Illinois, answers the above-captioned petition for writ of habeas corpus as follows:

1.      Petitioner, Tony Shoemaker, inmate number B23560, is in the custody of Donald Hulick, warden of the Menard Correctional Center.

2.      On May 8, 2000, in the Circuit Court of Morgan County, petitioner entered an open guilty plea to one count of aggravated criminal sexual assault and one count of home invasion.  On June 16, 2000, the trial court sentenced petitioner to consecutive 30-year prison terms.  The trial court applied the truth-in-sentencing provision of the Unified Code of Corrections, requiring petitioner to serve at least 85% of his sentence.  *See* 730 ILCS 5/3-6-3(a)(2)(ii) (West 1998).  Additionally, petitioner was ordered to pay court costs, a $100 sexual assault fine, and $40,550 in restitution, plus 9% interest.  (*See* Exhibit J, at 1-2).

3.     On July 5, 2000, petitioner's appointed counsel filed a motion to reconsider sentence.  (Exhibit A).  Two days later, petitioner filed a pro se motion for reduction of sentence, a motion to withdraw his guilty plea and vacate sentence, and a motion for appointment of new counsel.  That motion essentially alleged ineffective assistance of counsel, in that petitioner alleged he did not believe his attorney gave him good advice, did not visit petitioner often enough, and advised petitioner that he should not move to withdraw his guilty plea.  (Exhibit B).  On August 15, 2000, a hearing was held on the counseled motion to reconsider sentence.  (*See* Exhibit J at 2).  A 30-day continuance was granted at petitioner's request.  Petitioner's pro se motions were stricken without consideration because petitioner was represented by counsel.  (*See* Exhibit J at 2).

4.     On October 10, 2000, petitioner filed a pro se petition to reinstate his motion to withdraw his guilty plea and motion for appointment of new counsel, again alleging ineffective assistance of counsel claiming that if counsel would have investigated the case further, he would have realized there was no factual basis for the plea.  Rather, petitioner alleged, counsel repeatedly persisted in telling petitioner to plead guilty, saying he could get a reduced sentence.  Further, petitioner alleged, trial counsel was unwilling to file a motion to suppress, a motion for change of venue, or any other pretrial motions suggested by petitioner.  (Exhibit C).  Petitioner's motion for appointment of counsel filed that day also alleged that counsel presented inadequate mitigation evidence at sentencing.  (Exhibit D).  This pro se petition was stricken on October 16, 2000, per petitioner's request because he

2

wanted to amend it and refile.  (*See* Exhibit J at 2).  On March 19, 2001, petitioner filed another pro se petition to reinstate his motion to withdraw guilty plea, again alleging ineffective assistance of counsel in that counsel:  (1) failed to discover there was no factual basis for the guilty plea; (2) insisted he had a good rapport with the trial judge and could get a reduced sentence if petitioner pled guilty; (3) failed to file a motion to suppress custodial statements; (4) failed to file a motion for change of venue; and (5) failed to file any pre-trial motions requested by petitioner.  (Exhibit E).  This petition was stricken without consideration on March 20, 2001, because petitioner was represented by counsel.  (*See* Exhibit J at 2).  On March 27, 2001, the trial court conducted a hearing on counsel's July 5, 2000, motion to reconsider sentence.  The motion was denied.  (*See* Exhibit J at 3).

5.    Petitioner appealed contending:  (1) the "truth-in-sentencing" provision of section 3-6-3(a)(2)(ii) of the Unified Code of Corrections (730 ILCS 5/3-6-3(a)(2)(ii) (West 2000)) is unconstitutional under the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000); (2) he was entitled to a $510 credit against his fine; and (3) the case should be remanded for a hearing because the trial court committed reversible error by not inquiring into petitioner's claims of ineffective assistance of counsel.  (Exhibit F).  The State responded.  (Exhibit G).  Thereafter, petitioner filed a supplemental brief contending that the order directing the Department of Corrections to withhold 50% of petitioner's monthly corrections income toward payment of restitution and costs was void.  (Exhibit H).  The State filed a supplemental brief.  (Exhibit I).  On April 8, 2002, the Illinois Appellate

Court, Fourth District, affirmed in part, vacated in part, and reversed in part, and remanded with instructions that the circuit court conduct an inquiry into the factual basis for petitioner's claims of ineffective assistance of counsel. *People v. Shoemaker*, No. 4-01-0300 (unpublished order under Illinois Supreme Court Rule 23) (Exhibit J).

6.      Petitioner filed a petition for leave to appeal (PLA) in the Illinois Supreme Court alleging that Illinois' "truth-in-sentencing" provision was unconstitutional under *Apprendi. People v. Shoemaker*, No. 93885.  (Exhibit K). The Illinois Supreme Court denied the PLA on October 2, 2002.  (Exhibit L).

7.      On remand from the Illinois Appellate Court, the trial court appointed new counsel for petitioner, who filed a post-trial motion urging the trial court to permit withdrawal of petitioner's guilty plea, or in the alternative, reconsider the sentence imposed on petitioner, on the basis that petitioner's trial counsel was ineffective for: (1) failing to consult with petitioner; (2) failing to file a motion to suppress statements made by petitioner during interrogation; (3) failing to require the defense be provided DNA testing results; (4) failing to provide petitioner with certain documents tendered by the People; (5) failing to file a motion to quash petitioner's arrest; (6) failing to make a motion to withdraw petitioner's guilty plea; (7) failing to object to introduction at sentencing of petitioner's uncharged criminal history; (8) failing to call witnesses to testify to petitioner's good character; (9) making prejudicial remarks against petitioner at sentencing; and (10) failing to allow petitioner to testify.  (Exhibit M).  The court conducted a hearing on October

4

30, 2003, and denied the motion.  Petitioner filed a notice of appeal; the appeal was docketed as No. 4-03-0930.  (*See* Exhibit R at 2).

8.    Petitioner filed a pro se post-conviction petition on May 30, 2003, alleging that:  (1) his consecutive sentences violated *Apprendi*; (2) the truth-in-sentencing provisions violated *Apprendi*; (3) the aggravated criminal sexual assault statute was unconstitutional as a triple enhancement; and (4) counsel was ineffective for "failure to protect his client's rights" by:  (a) failing to object to other crimes evidence at sentencing; (b) failing to present mitigation at sentencing; (c) failing to call witnesses on petitioner's behalf at sentencing; (d) making prejudicial remarks about petitioner at sentencing; (e) failing to object to fines imposed; (f) failing to object to the sentencing statutes applied to petitioner, and (g) "fail[ing] to withdraw the defendant's guilty plea as requested."  (Exhibit N). Petitioner then filed a pro se motion to supplement the post-conviction petition on July 24, 2003, alleging the sentencing statute under which he was convicted was void and unconstitutional.  (Exhibit O).  The trial court dismissed the petition and supplemental petition as frivolous and patently without merit on August 11, 2003. Petitioner appealed, and the appeal was docketed as 4-03-0744.  This appeal was consolidated with No. 4-03-0930, and petitioner filed a brief contending that his counsel did not provide effective representation at the sentencing hearing when counsel made disparaging comments about petitioner and failed to call available witnesses to testify to petitioner's character.  (Exhibit P).  The State responded (Exhibit Q), and on June 30, 2006, the Illinois Appellate Court, Fourth Judicial

5

District, affirmed. *People v. Shoemaker*, Nos. 4-03-0744 & 4-03-0930 (cons). (Exhibit R).

8.     Petitioner filed a PLA to the Illinois Supreme Court contending that his counsel did not provide effective representation at the sentencing hearing when he made disparaging comments about petitioner and failed to call available witnesses to testify to petitioner's character. *People v. Shoemaker*, No. 101102. (Exhibit S). On December 1, 2006, the Illinois Supreme Court denied the PLA. (Exhibit T).

9.     On June 29, 2006, petitioner filed a petition for writ of habeas corpus, contending that: (1) trial counsel was ineffective for coercing petitioner into pleading guilty; (2) trial counsel was ineffective for failing to present mitigation evidence at sentencing; (3) trial counsel made prejudicial remarks about petitioner at sentencing; (4) petitioner's consecutive sentences based on "brutal and heinous" behavior violates *Apprendi*, and counsel was ineffective for failing to object to the sentences on this basis; (5) trial counsel was ineffective at petitioner's sentencing hearing for not objecting to the State's inference that petitioner had committed other crimes; (6) Illinois' truth-in-sentencing law violates *Apprendi*; (7) the trial court misapplied "single course of conduct" sentencing rules; (8) appellate counsel was ineffective for not presenting issues regarding sentencing statutes; and (9) petitioner's confession was coerced, but the trial judge did not give him a proper hearing on the matter.

10.    On September 27, 2006, this Court ordered respondent to respond.

Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United

States District Courts, respondent has filed under separate cover the following state

court materials:

Exhibit A: June 5, 2000 motion to reconsider sentence;

Exhibit B: Petitioner's pro se motion to withdraw guilty plea;

Exhibit C: October 10, 2000 pro se petition to reinstate motion to withdraw
        guilty plea;

Exhibit D: Motion for appointment of counsel;

Exhibit E: March 19, 2001 pro se petition to reinstate motion to withdraw
        guilty plea;

Exhibit F: Petitioner's brief on appeal, *People v. Shoemaker*, No. 4-01-0300;

Exhibit G: State's brief on appeal, *People v. Shoemaker*, No. 4-01-0300;

Exhibit H: Petitioner's supplemental brief on appeal, *People v. Shoemaker*,
        No. 4-01-0300;

Exhibit I: State's supplemental brief on appeal, *People v. Shoemaker*,
        No. 4-01-0300;

Exhibit J: Appellate court order, *People v. Shoemaker*, No. 4-01-0300;

Exhibit K: Petitioner's PLA; *People v. Shoemaker*, No. 93885;

Exhibit L: Order denying PLA, *People v. Shoemaker*, No. 93885;

Exhibit M: Motion to allow withdrawal of guilty plea;

Exhibit N: Pro se post-conviction petition;

Exhibit O: Pro se supplement to post-conviction petition;

Exhibit P: Petitioner's brief on appeal, *People v. Shoemaker*, Nos. 4-03-0744
& 4-03-0930;

Exhibit Q: State's brief on appeal, *People v. Shoemaker*, Nos. 4-03-0744 &
4-03-0930;

Exhibit R: Appellate court order, *People v. Shoemaker*, Nos. 4-03-0744 &
4-03-0930;

Exhibit S: Petitioner's PLA, *People v. Shoemaker*, No. 101102; and

Exhibit T: Denial of PLA, *People v. Shoemaker*, No. 101102.

7.    The petition can be disposed of based upon the filed pleadings and the
exhibits submitted herewith. *See Simental v. Matrisciano*, 363 F.3d 607, 612 (7th
Cir. 2004) (decision whether transcripts are necessary left to sound discretion of the
district court; review of state court transcript quite rare); *United States ex rel. Green
v. Greer*, 667 F.2d 585, 586-90 (7th Cir. 1981) (examination of record not required if
petitioner fails to identify any incompleteness or inaccuracies in the facts before the
district court).  The record consists of 7 volumes and is located at the Morgan
County Clerk's Office.

8.  Petitioner has exhausted his state court remedies in that the time for
filing state court proceedings has expired.  However, some issues that should have
been raised in state court were not, making them procedurally defaulted before this
Court.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 841-42 (1999).

## **Standard of Review**

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act
(AEDPA) became law, and, accordingly, applies to petitioner's Section 2254 petition,

which was filed on June 29, 2006. *Benefiel v. Davis*, 357 F.3d 655, 659 (7th Cir. 2004) *cert. denied*, 543 U.S. 979 (2004); *Lindh v. Murphy*, 521 U.S. 320, 323 (1997). The "highly deferential standard" imposed by Section 2254(d)(1) "demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002), and requires that this Court, to the greatest extent possible, respect the legal and factual dispositions made by the Illinois courts, even if it disagrees with them. To confer habeas relief premised on mere disagreement with a state court decision, even if that decision is "wrong" in the independent judgment of the federal courts, "exceeds the limits imposed on federal habeas review" by AEDPA. *Id.* at 20.

AEDPA permits this Court to grant habeas corpus relief only if petitioner meets his burden to show that the state court's decision on the merits of a constitutional claim is either "contrary to," or employs an "unreasonable application of" United States Supreme Court precedent, or was premised on an unreasonable determination of facts. 28 U.S.C. § 2254(d)(1)(2)); *see also Weeks v. Angelone*, 528 U.S. 225, 237 (2000); *Coleman v. Ryan*, 196 F.3d 793, 795-96 (7th Cir. 1999). A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law; [or] if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the United States Supreme Court]." *Williams v. Taylor*, 529

U.S. 362, 404-13 (2000). This Court is obligated to deny habeas relief under the "contrary to" clause even if the state reviewing court's decision is not an exemplar of good legal drafting: "[a]voiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original).

With respect to the "unreasonable application" prong, the Court prescribed the following objective test: "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. The Court cautioned that "an unreasonable application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.; see also Ramdass v. Angelone*, 530 U.S. 156, 166 (2000) (a petitioner cannot secure habeas relief unless, "under clearly established federal law, the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled").

Furthermore, the meaning of the phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant

10

state-court decision. *Williams*, 529 U.S. at 412. Thus, § 2254(d)(1) restricts the source of clearly established law to Supreme Court jurisprudence. *Williams*, 529 U.S. at 412; *Young v. Walls*, 311 F.3d 846, 851 (7th Cir. 2002).

In short, the constitutional judgments made by state courts are no longer open to de novo review in the habeas forum, as the AEDPA "leaves primary responsibility to the state courts for these judgments, and authorizes federal-court intervention only when a state-court decision is objectively unreasonable." *Visciotti*, 537 U.S. at 27; *see also Sanchez v. Gilmore*, 189 F.3d 619, 623 (7th Cir. 1999) ("the upshot of all this is that federal review is now severely restricted; the fact that we may think certain things could have been handled better by the state trial judge or by the prosecuting attorney or by a state reviewing court means very little"). This Court must also presume that the state courts know and follow the dictates of federal constitutional law. *Visciotti*, 537 U.S. at 24.

The standard governing this Court's substantive examination of the constitutional decisions of the state courts on habeas review is mirrored by the manner in which this Court must examine state court findings of fact. Whether developed in state trial or appellate courts, federal habeas courts must presume that the state court findings of fact are correct. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005); *Sumner v. Mata*, 449 U.S. 539, 546 (1981). A petitioner contesting findings of fact bears the burden of rebutting this presumption of correctness with clear and convincing evidence. *See* 28 U.S.C. §2254(e)(1). Therefore, all facts

11

developed in the course of petitioner's trial and appeal are to be presumed correct for purposes of these collateral proceedings, absent a clear and convincing showing by petitioner that they are unreasonable. *Miller-El*, 545 U.S. at 240.

## Procedural default

A petitioner may seek federal habeas review only if he has exhausted all available state court remedies, and has, in the course of those proceedings, fully and fairly presented his constitutional claims to the State's courts. *O'Sullivan*, 526 U.S. at 844-845; *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991). This aspect of the exhaustion inquiry focuses on whether the petitioner's federal claims were fairly presented to the state courts; if not, and the time for raising them has expired, they are defaulted. *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004); *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). A petitioner seeking habeas corpus relief must avoid procedural default to enjoy federal habeas review of the petition's merits. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Procedural default occurs in either of two ways. One involves a petitioner who, although diligently pursuing all appeals required under state law, nevertheless fails to raise the federal claims that he later attempts to assert as the basis for his federal habeas petition. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). Petitioner can fail to "fairly present" the claim or fail to present the claim at all. To provide the State with the necessary "opportunity," the petitioner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review),

12

thereby alerting that court to the federal nature of the claim. *Baldwin v. Reese*, 541 U.S. 27, 31-2 (2004). And, passing references to potential federal claims in a petition for discretionary review are insufficient to satisfy the fair presentment requirement, even if the federal nature of the claims is spelled out in lower court filings and opinions. *Baldwin*, 541 U.S. at 32.

The legal basis upon which a petitioner seeks relief must be fairly presented to the court: "[f]ederal judges will not presume that state judges are clairvoyant." *See Verdin*, 972 F.2d at 1479 (quoting *Petrucelli v. Coombe*, 735 F.2d 684, 689 (2d Cir. 1984)). The purpose of the rules of procedural default is to afford to the state courts an opportunity to correct a constitutional violation. *Duckworth v. Serrano*, 454 U.S. 1, 4 (1981). Such an opportunity is grounded in principles of comity; in a federal system the States should have the first chance to address and correct alleged violations of a state prisoner's federal rights. *Coleman*, 501 U.S. at 731.

Secondly, procedural default can occur when the state court declined to address a claim because the petitioner failed to comply with a state procedural requirement. *Coleman*, 501 U.S. at 729; *Barksdale v. Lane*, 957 F.2d 379, 382 (7th Cir. 1992). If that forfeiture is a state law ground that is independent and adequate to support his conviction, the claim will be defaulted on federal habeas review. *Coleman*, 501 U.S. at 729. *Harris v. Reed*, 489 U.S. 255 (1989), announced a rule for determining when a procedural default under state law forecloses federal relief on collateral attack: if the state enforces its procedural rules and deems the claim

13

forfeited, then federal review is barred; if the state excuses a default, then federal review is proper. *Harris* added that if the State's decision rests on both a procedural default and a lack of merit, then federal review is foreclosed, provided the state court's finding of default is clear. *Id.* 489 U.S. at 264, n.10. A state court finding of default is sufficient to preclude federal habeas corpus review, even though the state court may have discussed the merits of petitioner's claim in an alternative holding. *See id.*; *Fernandez v. Sternes*, 227 F.3d 977, 981 (7th Cir. 2000). On the other hand, a state court has considered a case on the merits "'unless the last state court rendering judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" *Jefferson v. Welborn*, 222 F.3d 286, 288 (7th Cir. 2000) (quoting *Harris*, 489 U.S. at 263).

A procedural default bars review absent a showing of cause for the default and actual prejudice resulting therefrom. *Gray v. Netherland*, 518 U.S. 152, 161-66 (1996). A petitioner can demonstrate cause "by showing that 'some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rules.'" *United States ex rel. Taylor v. Barnett*, 109 F.Supp.2d 911, 920 (N.D. Ill. 2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). While counsel's failure to raise certain issues due to counsel's ineffective assistance may fall within the cause and prejudice exception (*see Schlup v. Delo*, 513 U.S. 298, 314 (1995)), federal courts may not engage in such analysis if state courts were not first presented with the ineffective assistance claim. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000);

14

*Lemons v. O'Sullivan*, 54 F.3d 357, 360 (7th Cir. 1995) ("Before a state prisoner can use ineffective assistance of counsel as cause for procedural default, he must first present this claim as an independent claim to the state courts either on direct appeal or in a post-conviction proceeding").

Alternatively, the petitioner can present his defaulted claims if he can show that failure to consider them will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A fundamental miscarriage of justice occurs when the petitioner can establish that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 315, 327; *House v. Bell*, 126 S.Ct. 2064, 2077 (2006). Accordingly, without new evidence of innocence, even a meritorious constitutional claim is not sufficient to allow a habeas court to reach the merits of a procedurally defaulted claim. *United States ex rel. Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir. 2001) (citing *Schlup,* 513 U.S. at 316); *see also House*, 126 S.Ct. at 2077.

## Claims Presented

### Claim one - trial counsel was ineffective for coercing petitioner into pleading guilty.

Petitioner's first claim — that trial counsel was ineffective for coercing him into pleading guilty — is procedurally defaulted. While petitioner raised the issue in several of his filings in the state circuit court following remand, he did not raise it on appeal. His appellate court brief only raised an issue concerning the ineffective assistance of counsel at sentencing. Therefore, this claim is procedurally

defaulted.  *Farrell*, 939 F.2d at 410.  Additionally, petitioner did not raise the claim

in his PLA, and it is procedurally defaulted for this reason as well.  *O'Sullivan*, 526

U.S. at 841-42.

Further, petitioner has established neither cause for the default and actual

prejudice resulting therefrom, or a fundamental miscarriage of justice.  While

petitioner raises a claim of ineffective assistance of appellate counsel, he claims

only that appellate counsel was ineffective for not presenting issues regarding

sentencing statutes, and this is not such an issue.  Furthermore, petitioner does not

identify which counsel was ineffective; it is unclear whether he means counsel

during his first or second appeal.  Moreover, while ineffective assistance of appellate

counsel may sometimes serve as "cause," the claim of ineffective assistance of

appellate counsel must itself be raised and appealed through the state courts before

it may be raised in federal court. *Edwards*, 529 U.S. at 451-452; *Lemons*, 54 F.3d at

360-61.  This claim was raised only in petitioner's pro se filings in the trial court,

but not in any appeal or PLA, and it is therefore procedurally defaulted.  *Cawley v.

DeTella*, 71 F.3d 691, 695 (7th Cir. 1995) (a petitioner cannot simply opt out of the

state review process because he is tired of it or frustrated by the results he is

getting).  Illinois law "requires persons seeking post-conviction relief to pursue their

appellate remedies." *Jenkins v. Gramley*, 8 F.3d 505, 508 (7th Cir. 1993).  Because

petitioner has neither alleged nor demonstrated facts to excuse this default, relief

should be denied on this claim.

**Claim Two - trial counsel was ineffective for failing to present mitigation evidence at sentencing**

Petitioner next argues that trial counsel was ineffective for failing to present mitigation evidence at sentencing. The state appellate court discussed this claim and stated:

> Defendant also argues defense counsel was ineffective for failing to call him and several character witnesses to testify at the sentencing hearing. At the October 30, 2003, evidentiary hearing, defendant was given an opportunity to state what he could have testified to. Defendant was unable to add anything to the facts already known to the court. Defendant attached affidavits from his suggested character witnesses, but those affidavits said only that they had testimony they believed would have helped defendant. Defense counsel testified that he made a conscious choice not to put on family members to testify as to defendant's character. Defendant has failed to show that the witnesses would have made a difference in the sentence he received. See *People v. Jackson*, 149 Ill.2d 540, 553-54, 599 N.E.2d 926, 932 (1992). The trial court did not err in summarily dismissing defendant's post-conviction petition.

(Exhibit R at 10). Petitioner cannot show that the appellate court decision was either contrary to, or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984).

It is not unreasonable for counsel to decline to investigate or put on testimony that will be fruitless or even harmful. *See Burger v. Kemp*, 483 U.S. 776, 795 (1987). In order to prove ineffective assistance of counsel, petitioner must show that counsel's decision fell below an objective standard of reasonableness, and a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 691. Petitioner's proposed witnesses' affidavits are attached to his petition. Each of those affidavits

17

merely states that the person was in court the day of sentencing, ready to testify on petitioner's behalf, but were not called to do so, and that the person "had testimony, that I believe would have helped Tony Shoemaker, about his character, and circumstances in general, which would have assisted in the mitigation portion of his case." Defense counsel, however, testified that he made a conscious decision not to put on members of petitioner's family. The appellate court, as discussed below, found that defense counsel had a strategy at sentencing, to ask for a lesser sentence than in those cases where a murder is committed. Given that an informed decision regarding whether to call a witness to testify at trial or sentencing is a matter of trial strategy which generally cannot support a claim of ineffective assistance of counsel, *see e.g.*, *Barnhill v. Flannigan*, 42 F.3d 1074, 1078 (7th Cir. 1994) ("usually counsel's decision not to call a witness is a tactical decision not subject to review"), and that the testimony of an interested family member is less valuable than the testimony of a disinterested witness, *United States ex rel. Emerson v. Gramley*, 883 F.Supp. 225, 236-37 (N.D. Ill. 1995), the appellate court's decision is minimally consistent with the facts and circumstances of the case, and thus a reasonable application of *Strickland*. *See Connor v. McBride*, 375 F.2d 643, 649 (7th Cir. 2004). Further, petitioner cannot establish prejudice where the affidavits presented do not even state what the witnesses would testify to, or that it would have changed the sentence received. This Court should deny habeas relief on this claim.

18

### Claim three - trial counsel made prejudicial remarks about petitioner at sentencing.

Petitioner next claims that trial counsel's prejudicial remarks about petitioner at sentencing constituted ineffective assistance. The appellate court discussed this issue at length:

> At the June 16, 2000, sentencing hearing, evidence was presented that the victim had known defendant for about four years. Defendant's father owned a construction company that had done extensive work on the victim's home. Defendant broke into the home through a basement window. The victim was awakened when defendant entered her bedroom. From approximately 1 a.m. to 7 a.m., defendant sexually assaulted the victim, performing multiple sexual acts that were extremely painful to her. Defendant grabbed the victim by the hair and told her, "shut up or I'll kill you." Defendant repeatedly struck the victim. At one time, he knocked the wind out of her. She passed out once while being choked. Throughout the incident, defendant repeatedly told the victim he was going to kill her because he was not going to go back to prison.

> Trial counsel's strategy at the June 2000 sentencing hearing was to discuss sentences other defendants had received in murder cases that had been before the trial court for sentencing. Counsel emphasized that defendant did not kill anyone and asked for a sentence similar to those given in the murder cases. At the sentencing hearing, defendant's trial counsel made the following remarks:

>> "Your Honor, a few years ago I was appointed the [p]ublic [d]efender of Morgan County, and I took an oath to defend individuals to the best of my ability. I'd like to think that during that time — I've represented a few traffic cases, a few misdemeanors, maybe even a few felonies — that I actually helped somebody and they were happy that I represented them. But there are those cases that I'm appointed to represent that are just not much fun, and this is the *coup de grace,* so to speak. *What* [*defendant*] *did in February is one of the most filthy, disgusting, things I've ever heard of,* and I in no way am going to stand here and try to argue that it was not. It's sickening, it's

19

disgusting, it's wrong, and he's going to prison today.  And he knows that.  *I mean, being around him I'm not real happy.  I'm not friends with* [*defendant*].  But, Your Honor, as I stated, I took an oath, and due to that I have to make sure [defendant] gets a fair sentence before this [c]ourt today.

Now, one thing I will say during my time appearing before this [c]ourt is I've been here on sentencing hearings for murder cases.  I've been here for felonies, misdemeanors, [and] traffic cases.  And this [c]ourt has always been very consistent with its sentencing guidelines, and that's one of the things I've always took pride in being before this [c]ourt is I know I'm going to get a fair sentence.

Now, with all the evidence we've heard here today from [the victim] and the victim[-]impact statement that she wrote and the information in the [presentence investigation report], one thing stands out, and that is the fact that she was able to write a victim[-]impact statement; that she was able to come here today and testify.  And the point I'm trying to make, Your Honor, is that [the victim] is not dead.  [She] is alive.  She has her life.  It's damaged.  I'm not trying to say it's not.  And I in no way wish to diminish the impact this is going to have on the rest of her life.  But [defendant] is here today to be sentenced for aggravated criminal sexual assault and home invasion, not for murder." (Emphases added.)

Counsel then discussed the two previous murder cases before the court. Counsel pointed out one of the victims had been raped before being murdered and one of the defendants in that case received a 25-year sentence while the other received a 30-year sentence. In the other case, one defendant received 20 years' imprisonment while the other received a 25-year sentence.

Counsel then stated:

"Once again, Your Honor, I want to reiterate, I am in no way trying to diminish what happened here.  But all

we're asking for from the [c]ourt is consistency.  If the [c]ourt takes the State's recommendation and sentences [defendant] to 80 years in prison, what's the message we're sending out there?  What's the message we're sending?  Well, if you're going to do something like this you'd better kill your victim, because if you don't you're going to prison for a long time.  But if you kill them now there's no evidence of home invasion, we don't know how long this whole thing took place, and you're going to get a lighter sentence.  We're asking the [c]ourt to be consistent.  We're asking the [c]ourt to sentence [defendant] consistently with the cases that have been before the [c]ourt in the past."

Defense counsel stated a sentence in the range of 20 to 24 years would be consistent with "the sentences that this [c]ourt has handed down in the past for murders. Defendant is not a murderer."

Claims of ineffective assistance of counsel are examined under the two-pronged performance and prejudice test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984).  *People v. Harris,* 206 Ill.2d 293, 303, 794 N.E.2d 181, 189 (2002); see W. LaFave, J. Israel & N. King, Criminal Procedure § 11.10(c), at 132 (2d ed. supp. 2005). Under *Strickland,* reviewing courts entertain a strong presumption that the attorney's performance was a product of sound trial strategy and professional judgment. *Strickland,* 466 U.S. at 689.  However, where "counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of [s]ixth [a]mendment rights that makes the adversary process itself presumptively unreliable." (Emphasis added.)  *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039 (1984).  A *Cronic* violation was found in *People v. Hattery,* 109 Ill.2d 449, 488 N.E.2d 513 (1985), where defense counsel conceded the defendant was guilty of murder and eligible for the death penalty. The supreme court, however, concerned that an unscrupulous defense counsel might deliberately concede his client's guilt in order to lay the groundwork for a later reversal, has narrowly construed *Hattery.  People v. Johnson,* 128 Ill.2d 253, 269, 538 N.E.2d 1118, 1125 (1989).  "In situations where there is overwhelming evidence of guilt and no defense, if counsel contests all charges he is liable to lose credibility with the trier of fact when it comes to charges where a legitimate defense exists." *Johnson,* 128 Ill.2d at 270, 538 N.E.2d at 1125 (counsel asserted a theory of defense

21

on a number of charges and vigorously contested that defendant was eligible for the death penalty). It is not necessarily ineffective assistance for a defense counsel to waive closing argument at a capital sentencing hearing; waiving argument may have the advantage of preventing an impassioned rebuttal argument by the prosecutor. See *Bell v. Cone,* 535 U.S. 685, 701-02, 122 S.Ct. 1843, 1854 (2002).

The Supreme Court has refused to find ineffective assistance where counsel argued his client was a " 'bad person, lousy drug addict, stinking thief, jail bird.' " *Yarborough v. Gentry,* 540 U.S. 1, 3, 124 S.Ct. 1, 3 (2003). Although the right to effective assistance extends to closing arguments, deference is particularly important because of the broad range of defense strategy at that stage. *Yarborough,* 540 U.S. at 5-6. The Court rejected the Ninth Circuit's criticism of the quoted remarks, which the Ninth Circuit apparently viewed[.]

> "as a gratuitous swipe at Gentry's character. While confessing a client's shortcomings might remind the jury of facts they otherwise would have forgotten, it might also convince them to put aside facts they would have remembered in any event. This is precisely the sort of calculated risk that lies at the heart of an advocate's discretion. By candidly acknowledging his client's shortcomings, counsel might have built credibility with the jury and persuaded it to focus on the relevant issues in the case." *Yarborough,* 540 U.S. at 9.

The Supreme Court cited a number of works on trial techniques to support its position, concluding with Aristotle: " 'A speech should indicate to the audience that the speaker shares the attitudes of the listener, so that, in turn, the listener will respond positively to the views of the speaker.' " *Yarborough,* 540 U.S. at 11,quoting P. Lagarias, Effective Closing Argument §§ 2.05 through 2.06, at 99-101 (1989) (citing Aristotle's Rhetoric).

This case has differences from *Yarborough. Yarborough* was a *habeas corpus* case, where the Ninth Circuit had reversed a finding of the state court. Judicial review of a defense attorney's summation is "doubly deferential when it is conducted through the lens of federal habeas." *Yarborough,* 540 U.S. at 6. *Yarborough* also involved a closing argument to a jury, while the present case involved an argument to a judge, on sentencing. The remarks in the present case

also appear to be more extensive than those in *Yarborough.* Nevertheless, we cannot say that defense counsel's representation in this case was ineffective.

This is not a case where defense counsel completely failed to test the prosecution's case. Certainly the argument that murderers received lesser sentences than the maximum nonextended consecutive sentences in this case was a reasonable argument. Nor can we conclude that counsel's disparaging remarks were nothing more than "a gratuitous swipe at [defendant's] character." The argument was made to the trial court, not to a jury, and the trial court already knew that defendant's actions were filthy and disgusting. As in *Yarborough,* by candidly acknowledging his client's shortcomings, counsel may have built credibility with the court and persuaded the court to focus its attention not on defendant's character, but the sentencing structure that might punish defendant more severely than a murderer. Counsel's strategy does not constitute ineffective assistance simply because it was unsuccessful. *People v. Milton,* 354 Ill.App.3d 283, 290, 820 N.E.2d 1074, 1079 (2004) (counsel conceded the defendant's possession of drugs but attacked element of knowledge).

(Exhibit R at 3-9).

To prevail on a claim of ineffective assistance of counsel, petitioner must show both that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *See Strickland,* 466 U.S. at 687. When considering whether counsel's performance was deficient, the habeas court is highly deferential to counsel's performance, indulging a presumption that "under the circumstances, the challenged action might be considered sound trial strategy." *Bell v. Cone,* 535 U.S. 685, 698 (2002) (internal quotations omitted). To show prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland,* 466 U.S. at 694). Moreover, in the context of a

23

federal habeas petition governed by the AEDPA, the petitioner must do more than merely convince the federal court that the state court applied *Strickland* incorrectly, but must demonstrate that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699.

The state appellate court found that counsel's representation did not fall below an objective standard of reasonableness, since this was not a case where defense counsel completely failed to test the State's case. The court found that counsel's argument at sentencing — that murderers received lesser sentences than what the prosecution was asking for in this case — was a reasonable argument.

Furthermore, the court found that counsel's disparaging remarks were not "a gratuitous swipe at petitioner's character." The argument was made to the trial court, and not a jury, and the trial court already knew petitioner's character. Further, by candidly acknowledging his client's shortcomings, counsel may have built credibility with the court and persuaded the court to focus its attention not on petitioner's character, but the sentencing structure that might punish petitioner more severely than a murderer. This Court should defer to the state court's assessment of counsel's performance. The state appellate court's application of *Strickland* was reasonable, and habeas relief should be denied.

**Claim Four - petitioner's consecutive sentences based on "brutal and heinous" behavior violates *Apprendi*, and counsel was ineffective for failing to object to the sentences on this basis.**

Petitioner's fourth claim is that his consecutive sentences based on "brutal and heinous" behavior violates *Apprendi*, and counsel was ineffective for failing to object to the sentences on this basis. While petitioner raised the issue in several of his filings in the state circuit court following remand, he did not raise this claim on appeal. Therefore, this claim is procedurally defaulted. *Farrell*, 939 F.2d at 410. Additionally, petitioner did not raise the claim in his PLA, and the claim is further procedurally defaulted for this reason. *O'Sullivan*, 526 U.S. at 841-42.

Petitioner has established neither cause for the default and actual prejudice resulting therefrom, nor a fundamental miscarriage of justice. Petitioner does make a claim of ineffective assistance of appellate counsel, alleging counsel did not present issues regarding sentencing statutes. However, petitioner does not specify whether he means counsel during his first or second appeal. In any event, while ineffective assistance of appellate counsel may serve as "cause," the claim of ineffective assistance of appellate counsel must itself be raised and appealed through every level of the state courts before it may be raised in federal court. *Edwards*, 529 U.S. at 451-452; *Lemons*, 54 F.3d at 360-61. This claim was not raised in any appeal or in either of petitioner's PLAs, and therefore it is defaulted and cannot excuse petitioner's default. *Cawley*, 71 F.3d at 695 (a petitioner cannot simply opt out of the state review process because he is tired of it or frustrated by the results he is getting). Illinois law "requires persons seeking post-conviction relief to pursue their appellate remedies." *Jenkins*, 8 F.3d at 508.

In any event, appellate counsel was not ineffective for failing to raise this claim since both the federal and state courts have held that *Apprendi* does not apply to consecutive sentences.  *See, e.g.*, *United States v. Noble*, 299 F.3d 907, 909 (7th Cir. 2002); *People v. Wagener*, 752 N.E.2d 430, 441 (Ill. 2001).  Because consecutive sentences do not implicate *Apprendi*, this Court should deny habeas relief on this claim.

**Claim five - trial counsel was ineffective at petitioner's sentencing hearing for not objecting to the State's inference that petitioner had committed other crimes**.

Petitioner's fifth claim is that trial counsel was ineffective at his sentencing hearing because he failed to object to the State's inference that petitioner had committed other crimes.  Petitioner did not raise this claim in his first appeal.  And, while petitioner raised the issue in several of his pro se filings in the state circuit court following remand, he did not raise the claim on his consolidated appeal from the judgment denying his motions to withdraw his guilty plea or reconsider sentence and his post-conviction petition.  Therefore, this claim is procedurally defaulted.  *Farrell,* 939 F.2d at 410.  Additionally, because petitioner did not raise the claim in his PLA, it is procedurally defaulted for this reason as well.  *O'Sullivan*, 526 U.S. at 841-42.

Petitioner has established neither cause for the default and actual prejudice resulting therefrom, nor a fundamental miscarriage of justice.  While petitioner makes some claim of ineffective assistance of appellate counsel, his claim is that

appellate counsel was ineffective for not presenting issues regarding sentencing statutes. Petitioner does not specify whether he means counsel during his first or second appeal. In any event, again, petitioner only alleges that appellate counsel was ineffective for not presenting issues regarding sentencing statutes, and this claim does not involve a sentencing statute. Moreover, while ineffective assistance of appellate counsel may serve as "cause," the claim of ineffective assistance of appellate counsel must itself be raised and appealed through every level of the state courts before it may be raised in federal court. *Edwards*, 529 U.S. at 451-452; *Lemons*, 54 F.3d at 360-61. This claim was not raised anywhere in the state courts on appeal and therefore is procedurally defaulted and cannot serve to excuse petitioner's default of this claim. *Cawley*, 71 F.3d at 695 (a petitioner cannot simply opt out of the state review process because he is tired of it or frustrated by the results he is getting). Illinois law "requires persons seeking post-conviction relief to pursue their appellate remedies." *Jenkins*, 8 F.3d at 508.

**Claim six - Illinois' truth-in-sentencing law violates *Apprendi*.**

Petitioner's sixth claim is that Illinois' truth-in-sentencing law violates *Apprendi*. This issue was discussed by the appellate court during petitioner's first appeal. That court noted that it had previously found in *People v. Garry*, 752 N.E.2d 1244 (Ill.App.4th Dist. 2001) that the "truth-in-sentencing" provision of section 3-6-3(a)(2)(ii) of the Unified Code does not implicate *Apprendi* issues. (*See* Exhibit J at 3-4). Petitioner cites to no Supreme Court precedent which holds that

27

*Apprendi* applies to such truth-in-sentencing provisions. Therefore, the state appellate court's decision cannot be "contrary to" Supreme Court precedent, and this Court should deny relief on this claim.

**Claim seven - the trial court misapplied "single course of conduct" sentencing rules.**

Petitioner's seventh claim is that the trial court misapplied "single course of conduct" sentencing rules. However, this claim was not raised in the state court system, and it is therefore procedurally defaulted. *Farrell*, 939 F.2d at 410; *O'Sullivan*, 526 U.S. at 841-42. Furthermore, an error in the interpretation of state sentencing rules does not present a cognizable claim for federal habeas relief. *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002).

Additionally, petitioner has established neither cause for the default and actual prejudice resulting therefrom, nor a fundamental miscarriage of justice. Petitioner does make a claim of ineffective assistance of appellate counsel for not presenting issues regarding sentencing statutes. However, petitioner does not specify whether he means counsel during his first or second appeal. In any event, while ineffective assistance of appellate counsel may serve as "cause,"the claim of ineffective assistance of appellate counsel must itself be raised and appealed through every level of the state courts before it may be raised in federal court. *Edwards*, 529 U.S. at 451-452; *Lemons*, 54 F.3d at 360-61. This claim was not raised in any appeal or in either of petitioner's PLAs, and therefore, it is

28

procedurally defaulted and cannot serve to excuse the default of this claim. *Cawley*, 71 F.3d at 695 (a petitioner cannot simply opt out of the state review process because he is tired of it or frustrated by the results he is getting). Illinois law "requires persons seeking post-conviction relief to pursue their appellate remedies." *Jenkins*, 8 F.3d at 508.

**Claim eight - appellate counsel was ineffective for not presenting issues regarding sentencing statutes.**

Petitioner's eighth claim is that appellate counsel was ineffective because counsel failed to present issues regarding sentencing statutes. However, this claim was not raised in either of petitioner's appeals, or in either of his PLAs. It is therefore procedurally defaulted. *Farrell*, 939 F.2d at 410; *O'Sullivan*, 526 U.S. at 841-42. Petitioner has neither alleged cause and prejudice nor a manifest miscarriage of justice to excuse this default and relief should be denied.

**Claim nine - petitioner's confession was coerced, but the trial judge did not give him a proper hearing on the matter.**

Petitioner's ninth claim is that his confession was coerced, but the trial judge did not give him a proper hearing on the matter. However, this claim was never raised in the state courts, and it is therefore procedurally defaulted. *Farrell,* 939 F.2d at 410; *O'Sullivan*, 526 U.S. at 841-42. Claims not raised in any state court proceeding cannot be raised for the first time in a federal habeas corpus petition. *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995).

Again, petitioner has established neither cause for the default and actual prejudice resulting therefrom, nor a fundamental miscarriage of justice. Petitioner does make a claim of ineffective assistance of appellate counsel, alleging that counsel failed to present issues regarding sentencing statutes. However, petitioner does not specify whether he means counsel during his first or second appeal, and this is not a sentencing statute issue. In any event, while ineffective assistance of appellate counsel may serve as "cause," the claim of ineffective assistance of appellate counsel must itself be raised and appealed through every level of the state courts before it may be raised in federal court. *Edwards*, 529 U.S. at 451-52; *Lemons*, 54 F.3d at 360-61. This claim was not raised in any appeal or in either of petitioner's PLAs, and therefore it is defaulted and cannot serve to excuse the default of this claim. *Cawley*, 71 F.3d at 695 (a petitioner cannot simply opt out of the state review process because he is tired of it or frustrated by the results he is getting). Illinois law "requires persons seeking post-conviction relief to pursue their appellate remedies." *Jenkins*, 8 F.3d at 508.

## CONCLUSION

This Court should deny the Petition for Writ of Habeas Corpus.

November 20, 2006                    Respectfully submitted,


                                     LISA MADIGAN
                                     Attorney General of Illinois


                        BY:    /s COLLEEN M. GRIFFIN
                               COLLEEN M. GRIFFIN
                               Assistant Attorney General
                               100 West Randolph Street, 12th Floor
                               Chicago, Illinois 60601
                               (312) 814-4684
                               cgriffin@atg.state.il.us
                               Reg. Number 6198598












                              IN THE
                   UNITED STATES DISTRICT COURT
                   CENTRAL DISTRICT OF ILLINOIS
                        SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES ex rel. | ) | |
| TONY SHOEMAKER, | ) | |
| | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 06-3187 |
| | ) | |
| DONALD HULICK, Warden, | ) | The Honorable |
| | ) | Richard Mills, |
| Respondent. | ) | Judge Presiding. |

Certificate of Service

I hereby certify that on November 20, 2006, I electronically filed an Answer with the Clerk of Court, Central District, using the CM/ECF system and I hereby certify that on November 20, 2006, I mailed by United States Postal Service, the document to the following person:

Tony Shoemaker, No. B23560
Menard Correctional Center
711 Kaskaskia Street
P.O. Box 711
Menard, Illinois 62259

By:    COLLEEN M. GRIFFIN
       COLLEEN M. GRIFFIN
       Assistant Attorney General
       100 West Randolph Street, 12th Floor
       Chicago, Illinois 60601
       (312) 814-4684

32

**E-FILED**
Monday, 20 November, 2006  06:52:42 AM
Clerk, U.S. District Court, ILCD

IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT
MORGAN COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS,　)
　　　　　　　　　Plaintiff,　　　)
　　　　　　　vs.　　　　　　　)　　NO.  00-CF-21
TONY W. SHOEMAKER,　　　　)
　　　　　　　　　Defendant.　　)

**FILED**

JUL 05 2000

Barbara J. Baker
Clerk of Circuit Court, Morgan County, Illinois

MOTION TO RECONSIDER SENTENCE

NOW COMES the Defendant, TONY W. SHOEMAKER, through his attorney, Richard

K. Crews, and moves this Honorable Court to reconsider the sentence previously imposed.  In

support of this motion, the Defendant states as follows:

1.  On May 8, 2000, the Defendant entered a straight plea of guilty to Aggravated

Criminal Sexual Assault and Home Invasion.

2.  On June 16, 2000, the Court sentenced him to 30 years for the charge of Aggravated

Sexual Assault and 30 years for the charge of Home Invasion, each charge to run consecutively.

3.  In light of the evidence presented to the Court, the sentence imposed in this case is

excessive.

4.  In sentencing the Defendant, the Court failed to follow Article I, Paragraph 11, of the

Illinois Constitution, which states as follows: "All penalties shall be determined both according to

the seriousness of the offense and *with the objective of restoring the offender to useful*

*citizenship."* [Emphasis added. ]

5.  Further, the Court failed to consider the following factor in mitigation within 730 ILCS

5/5-5-53.1:

C 33

EXHIBIT A

(a) There were substantial grounds tending to excuse or justify the defendant's

criminal conduct, though failing to establish defense.

WHEREFORE, the Defendant respectfully requests this Honorable Court to reconsider

the sentence imposed.

Respectfully submitted,

Richard K. Crews
Attorney at Law

Law Office of Richard K. Crews
Attorneys at Law
301 West State Street
Jacksonville, Illinois 62650
217/245-1775

@ 34

**E-FILED**
Monday, 20 November, 2006 06:52:57 AM
Clerk, U.S. District Court, ILCD

IN THE CIRCUIT COURT OF THE _Seventh_ JUDICIAL CIRCUIT

_morgan_ COUNTY, ILLINOIS

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) No. _2000-CF-21_ |
| | ) |
| _Tony Shoemaker_ , | ) |
| Defendant | ) |
| | ) |

**FILED**

JUL X 7 2000

_Barbara J. Baker_
Clerk of Circuit Court, Morgan County, Illinois

<u>NOTICE OF MOTION FOR REDUCTION OF SENTENCE</u>

To:  The State's Attorney of _morgan_ County,

YOU ARE HEREBY GIVEN NOTICE, pursuant to 730 ILCS 5/5-8-1 et. seq., that the defendant, _Tony Shoemaker_ , in the above captioned cause is filing a motion for reduction of sentence with the sentencing court by submitting said motion to the circuit clerk of said court to be filed. A copy of said motion for sentence reduction is attached hereto and hereby served on you.

Please take further notice as below indicated:

[   ] 1. The sentence in this cause was entered on a finding of guilt after either a bench trial or a jury trial in the cause.

[   ] 2. The sentence in this cause was entered on a guilty plea involving an agreement either as to a specific sentence or as to a cap on the term of the sentence which could be imposed; accordingly, pursuant to <u>People-v-Evans</u>,(1996), 174 Ill.2d 320, 673 N.E.2d 244; and, <u>People-v-Linder</u>,(1999), 186 Ill.2d 67, 708 N.E.2d 1169, a Motion to Withdraw Guilty Plea is being filed and is also attached hereto. The defendant [   ] DOES/ [   ] DOES NOT seek to withdraw the guilty plea on other grounds.

[X] 3. The sentence in this cause was entered on a guilty plea which DID NOT involve an agreement as to either a specific sentence or a cap on the term of the sentence which could be imposed. The defendant [X] IS/ [   ] IS NOT filing a motion to withdraw the guilty plea on other grounds.

Respectfully Submitted,

X _Tony Shoemaker_
TONY SHOEMAKER Defendant, pro-se
Reg. No. _B235600_
Graham Correctional Center
P.O. Box 500
Hillsboro, Illinois  62049

(sentence reduction

EXHIBIT B

IN THE CIRCUIT COURT OF THE _Seventh_ JUDICIAL CIRCUIT
_Morgan_ COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS,        )
                 Plaintiff,        )
                                )
           -vs-        )        No. _2000-CB-21_
                                )
_Tony Shoemaker_ ,        )
                Defendant        )

**FILED**

JUL X 7 2000

_Barbara J. Baker_
Clerk of Circuit Court, Morgan County, Illinois

## MOTION FOR REDUCTION OF SENTENCE

Now Comes the defendant, _Tony Shoemaker_ , and Moves this
Court pursuant to 730 ILCS 5/5-8-1 to reduce the sentence imposed in the above
captioned cause, and in support thereof, the defendant states:

1.    The sentence was imposed in this cause on the date: _6-16-00_ .

2.    The defendant was sentenced to _30-30_ years of
imprisonment in the Illinois Department of Corrections for the offense(s) of
_Home Invasion, Agg. Criminal, Ser assault_

3.    There exists substantial extenuating circumstances in this case to
support a reduction in the sentence imposed, and the defendant moves this Court
to reduce the sentence for the following stated reasons:

A.    _I don't think that i was give a_
_Fair Sentence on either one of my Charges_

B.    _I think that i was giving this long_
_term Sentence Because of who i am and who the_
_victim IN the case was_

C.    _I belive my Sentan Should be cut down_
_because i have never had any kind of cases like_
_this and i should that my Sentence should not be_
_the max sent_

D.    

(sentence reduction)

E. _____

_____

_____

F. _____

_____

_____

_____

WHEREFORE, the defendant prays that this Court will grant his Motion for Reduction of Sentence and enter an Order reducing the sentence in this cause.

Respectfully Submitted,

X _Tony Shoemaker_
Defendant, pro-se
TONY SHOEMAKER

## AFFIDAVIT

STATE OF ILLINOIS      )
                       ) SS.
COUNTY OF MONTGOMERY   )

The undersigned, being duly sworn on oath, deposes and says that he is the Defendant whose name is subscribed to the foregoing Motion for Reduction of Sentence; further, that he certifies that he has read and knows the contents of said motion and that the statements made therein are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

X _Tony Shoemaker_
TONY SHOEMAKER  – AFFIANT
Reg. No. B 23560
Graham Correctional Center
P.O. Box 500
Hillsboro, Illinois  62049

Subscribed and sworn to before me

this ___ day of _____, 20___.

_____
NOTARY Public

"OFFICIAL SEAL"
Notary Public, State of Illinois
JULIE USSERY
My Commission Expires 10/20/03

(sentence reduction)

-2-
040

IN THE CIRCUIT COURT OF THE ___7+H___ JUDICIAL CIRCUIT

___MORGAN___ COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS,    )
                        Plaintiff,    )
                                      )
            -vs-                      )   No. _2000-CF.21_
                                      )
___Tony SHOEMAKER___ ,                )
                        Defendant     )

## ORDER

This cause coming before the Court on defendant's MOTION FOR REDUCTION OF SENTENCE, due notice being given and the Court being advised in the premises:

IT IS ORDERED that the defendant's sentence(s) imposed in case number(s): _____ shall be, and the same hereby are reduced from a term or terms of _____ years imprisonment in the Illinois Department of Corrections to a term or terms of _____ _____years imprisonment in the Illinois Department of Corrections, and the defendant shall be given credit for all time served in this cause prior to this modification of the sentence(s) in this cause, and he shall be given credit for all goodtime having been awarded prior to this order.

IT IS FURTHER ORDERED that the Illinois Department of Corrections shall recalculate the defendant's sentence(s) to comply with this order.

ENTERED: _____,20____.

_____
JUDGE

(sentence reduction)

C41

IN THE CIRCUIT COURT OF THE _Seventh_ JUDICIAL CIRCUIT

_Morgon_ COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS,                )
               Plaintiff,                )
                                )
                                )
            -vs-             ).. No. _Q000-CF-21_
                                )
_Tony Shoemaker_ ,                )
               Defendant      )

**FILED**

JUL X 7 2000

_Barbara J. Baker_
Clerk of Circuit Court, Morgan County, Illinois

<u>MOTION TO WITHDRAW GUILTY PLEA AND VACATE SENTENCE</u>

Now Comes the defendant, _Tony Shoemaker_ , pursuant to Illinois Supreme Court Rule 604(d), and Moves this Court to withdraw his guilty plea and vacate the sentence entered in the above captioned cause, and in support thereof states:

1.    (ground 1): I don't think that my P.D gave me the Right advice, and he only came to see me 2 times all the time i was in the County Jail and when he did come to see me it was to tell about pleaing guilty and nothing else

2.    (ground 2): My P.D. told me when i ask him to withdraw my Plea that we should not do that because if we had it to a Jury Trial we would get slamed and he keep telling me your talking to the man who got "such and such" pries this time and this much time, I don't think he done as good a job that he could of done.

3.    (ground 3): I allso sent 2 letters to my P.D. asking him in the first one to put in some Motions which I sent him copys, it took him about a month to come and see me. He told me that the only Reason he had not come and seen me because he did not have the time to see me now next time the state was calling he never did tell me how time the state was calling,

-1-

4.    (ground 4): *my P.O Never Said anything I'm Court to help me out at cll. He never did Say what i csd him to say in my defience. I've never did cvl any on my Court withns hue i csd him to.*

_____

_____

_____

WHEREFORE, the defendant prays this Court will grant his motion to withdraw his plea and enter an order vacating the plea and sentence entered in this cause.

Respectfully Submitted,

X _Tony Shoemaker_
Defendant
TONY SHOEMAKER

### AFFIDAVIT

STATE OF ILLINOIS        )
                         ) SS.
COUNTY OF MONTGOMERY      )

The undersigned, being duly sworn on oath, deposes and says that he is the Defendant whose name is subscribed to the foregoing Motion to Withdraw Guilty Plea and Vacate Sentence; further, that he certifies that he has read and knows the contents of said motion and that the statements made therein are true and correct, except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that he verily believes the same to be true.

X _Tony Shoemaker_
TONY SHOEMAKER              —AFFIANT
Reg. No. B-23560
Graham Correctional Center
P.O. Box 500
Hillsboro, Illinois    62049

Subscribed and sworn to before me

this 30 day of June ,2000

_Julie Ussery_
NOTARY PUBLIC

"OFFICIAL SEAL"
Notary Public, State of Illinois
JULIE USSERY
My Commission Expires 10/20/03

(withdraw plea)

IN THE CIRCUIT COURT OF THE _____*7th*_____ JUDICIAL CIRCUIT

_____*MORGAN*_____ COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS,      )
                Plaintiff,      )
                          )
        -vs-      )  No. *2000-CF-21*
                          )
*TONY SHOEMAKER*          ,      )
           Defendant      )

**FILED**

**MOTION FOR COMMON LAW RECORD AND TRIAL TRANSCRIPT** JUL X 7 2000

    Now Comes the defendant, *TONY SHOEMAKER*  *Barbara J. Baker*
Illinois Supreme Court Rules 402(e),471,604(d),and 607(b),[also: <u>Griffin v.</u>
<u>Illinois</u>, 351 U.S. 12 (1956); and <u>Mayer v. City of Chicago</u>, 404 U.S. 189 (1971)],
and asks this Court to enter an order to provide defendant with a copy of the
Common Law Record and a Transcript of the Proceedings in this cause without
cost, and in support states:

    1.   Defendant is indigent and without the ability to pay the costs of
preparing a transcript and obtaining the common law record and transcript in
this cause. An application to proceed as a poor person is being filed herewith.

    2.   The transcript and common law record is needed for the following
purpose:  *APPEAL & POST CONVICTION PETITION IF NECESSARY* .

    WHEREFORE, defendant prays the Court will grant this motion and order that
he be provided, free of cost, with a copy of the transcript and common law
record in this cause.

                            Respectfully Submitted,

                        x *Tony Shoemaker*
                        Defendant *TONY SHOEMAKER*
                        Box 500, Reg.No. *B-23560*
                **AFFIDAVIT**      Graham Correctional Center
STATE OF ILLINOIS   )                 Hillsboro, IL 62049
              )SS.
COUNTY OF MONTGOMERY )

    The undersigned, being first duly sworn on oath, certifies that he is the
person whose name is subscribed above, and further certifies that the statements
made in the foregoing motion are true and correct.

                       x *Tony Shoemaker*
                       *TONY SHOEMAKER*   AFFIANT
Subscribed and sworn to before me

this *30* day of *June* ,20*00* .

_____
NOTARY PUBLIC           *044*

"OFFICIAL SEAL"
Notary Public, State of Illinois
JULIE USSERY
My Commission Expires 10/20/03

IN THE CIRCUIT COURT OF THE _7TH_ JUDICIAL CIRCUIT
_MORGAN_ COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS,    )
                                    )
        Plaintiff,                  )
                                    )
        -vs-                        )    Case No: _2000-CF-21_
                                    )
_TONY SHOEMAKER_,                   )
        Defendant.                  )

## ORDER

    This cause coming before the Court on Defendant's MOTION FOR COMMON LAW RECORD AND TRIAL TRANSCRIPT, due notice being given and the Court advised in the premises:

    IT IS HEREBY ORDERED:  The Court GRANTS Defendant's Motion and directs the Clerk of the Court to prepare the common law record and trial transcript and send a copy to Defendant at the address shown in his pleadings.

_____, 20____

ENTER:


_____

JUDGE PRESIDING

645

IN THE CIRCUIT COURT OF THE _7th_ JUDICIAL CIRCUIT
_MORGAN_ COUNTY, ILLINOIS

_PEOPLE OF THE STATE OF ILLINOIS_ )
_PLAINTIFF_____, )
)
v. )        CASE NO. _2000 CF-21_
)
_TONY SHOEMAKER_, )    _REDUCE SENTENCE &_
_DEFENDANT_, )         _WITHDRAW GUILTY PLEA_
)                       Nature Of Action

## APPLICATION TO PROCEED AS A POOR PERSON
## AND FOR APPOINTMENT OF COUNSEL

**FILED**

Applicant, _TONY SHOEMAKER_, respectfully asks the Court, pursuant
to the provisions of 725 ILCS 5/113-3, 735 ILCS 5/5-105, and Supreme Court Rule
298, to grant him leave to proceed as a poor person and appoint counsel in his
cause of action before this Court. In support Applicant swears that the following
statements are true in substance and in fact:

JUL X 7 2000
Clerk of Circuit Court, Morgan County, Illinois

1. I am the _DEFENDANT_ in this legal proceeding
2. I am a poor person and am unable to prosecute this action, and am unable
   to pay the costs, fees and expenses of this action or to employ an
   attorney to represent me in this matter.
3. My occupation or means of subsistence:
   (a) I am not currently employed due to my imprisonment at the Graham
       Correctional Center, but I do receive State Pay of $ _0_ per month.
   (b) The amount and source of all other income or support are:
       _STATE PAY ONLY_
4. My total income for the year preceding this application was $ _NONE_.
5. The sources and amount of income expected by me hereafter are:
       _STATE_
6. The nature and current value of any property, real or personal, owned
   by me:
   (a) Real Estate: _NONE_
       Value: $ .
   (b) Motor Vehicle: _NONE_
       Value: $
   (c) Cash, Savings, Checking, etc: _NONE_
       Value: $
   (d) Prison Trust Account: _YES_
       Value: $ _20,765_
   (e) Other (e.g., TV, etc.): _NONE_
       Value: $
7. No applications to proceed as a poor person were filed by me or on
   my behalf during the preceding year, except as follows:
   _MORGAN County Appointed Public_

C 46

8. I am without counsel to represent me in this matter and I wish the Court to appoint counsel to represent me in this cause of action.

9. I am not versed in the law and legal procedures and have no good understanding of how to go about handling my own defenses and claims, and I am not well enough educated to perform my own legal research and the make sense of it.

10. On information and belief, without the assistance of counsel my access to the courts will not be adequate, effective or meaningful.

WHEREFORE, Applicant respectfully asks the Court to grant him leave to proceed as a poor person and to appoint counsel to represent him in this matter.

Respectfully submitted,

X *Tony Shoemaker*

TONY SHOEMAKER

DEFENDANT _____, pro se
Box 500, Reg.No. B-23560
Graham Correctional Center
Hillsboro, IL  62049

AFFIDAVIT

State of Illinois    )
                     ) SS.
County of Montgomery )

The undersigned, being first sworn upon oath, certifies that he has personal knowledge of the statements made in the foregoing Application To Proceed As A Poor Person And For Appointment Of Counsel, and that those statements are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies that he believes the same to be true.

X *Tony Shoemaker*

AFFIANT

Subscribed and sworn to before me
this 30 day of June, 2002.

X *Julie Ussery*
NOTARY PUBLIC

"OFFICIAL SEAL"
Notary Public, State of Illinois
JULIE USSERY
My Commission Expires 10/20/03

047

E-FILED
Monday, 20 November, 2006 06:53:08 AM
Clerk, U.S. District Court, ILCD

IN THE

SEVENTH JUDICIAL CIRCUIT COURT

MORGAN COUNTY, ILLINOIS



FILED

OCT 1 0 2000

*Barbara J. Baker*
Clerk of Circuit Court, Morgan County, Illinois

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 00-CF-21 |
| | ) | |
| | ) | Honorable David J. Bone |
| TONY SHOEMAKER, | ) | Presiding. |
| Defendant. | ) | |

## PETITION TO REINSTATE MOTION TO WITHDRAW GUILTY PLEA

NOW COMES, Tony Shoemaker, defendant, Pro-se, and moves this Honorable Court to reinstate his pro-se Motion To Withdraw Guilty Plea filed before this Court July 27th, 2000.

IN SUPPORT herefor, defendant states as follows:

1.) That following his entry of an **open plea** on May 8th, 2000, and in fact on that very night, and forwarded to his appointed counsel, Richard Crews, the following day, and discussed with said attorney on May 9th, 2000, defendant had stressed his desire to withdraw his guilty plea in the above-captioned matter, but prior to sentencing on June 17th, 2000.

2.) That the circumstances leading up to his entry of an open plea, as more clearly set forth in Motion For Appointment of New Counsel filed herewith, and incorporated herein, were coercive and misleading on part of public defender, Mr. Crews, and notwithstanding ineffective assistance of counsel.

3.) That had appointed counsel explored the circumstances and facts leading up to defendant's arrest in the above-captioned matter, it would have been discovered that the factual basis of the guilty plea is not substantiated by such facts and circumstances. Rather; said counsel persistently advised defendant to plead guilty in exchange for leniency by the Court, which said Counsel represented

0 (~ 2

**EXHIBIT C**

to defendant that he was "the man" with the ability to, and an
established rapport with the sentencing judge, to be able to obtain
a lenient and favorable sentence for defendant. Additionally, said
counsel was unwilling, and in fact did not, file motions to suppress
custodial statement, or for a change of venue to another county, nor
any other pre-trial motions suggested by defendant, and viable under
the circumstances of the case.

4.)  Notwithstanding the fact that defendant had expressed
his desire to withdraw guilty plea, and made appointed counsel
aware of the same prior to sentencing, the defendant nonetheless
filed his pro-se motion to withdraw guilty plea and to reduce sentence
as required per recent Ill.Sup. Ct. precedence, from the Graham
Correctional Center on July 27th, 2000.

5.)  That on August 15th, 2000, defendant was before this
Court with appointed counsel, Mr. Crews, on Crews' Motion To Reduce
Sentence, and at which time the State's Attorney had moved on the
record to request that the Court disregard defendants' pro-se filings,
based on the fact that at that time defendant was represented by
Mr. Crews. The Court subsequently granted the State's request without
argument or objection from defendant's attorney, but over the objection
of defendant which he insisted through his attorney.

6.)  Having knowledge that defendant desires to withdraw his
guilty plea, and being present in Court on August 15th, 2000 and
being aware of the circumstances as set forth in paragraph (5), the
appointed counsel in this cause has yet to file a motion to withdraw
defendant's guilty plea as requested by the defendant.

7.)  Based on the foregoing, and the circumstances leading up
to defendant's guilty plea, the Court was not without jurisdiction
to address defendants' pro-se motion to withdraw guilty plea, partic-
ularly in light of fact that appointed counsel himself has not subst-
ituted his own motion in place of defendant's pro-se motion even though
said counsel is aware of defendant's desire to withdraw his guilty
plea. Accordingly, this Court inadvertantly erred when it disregarded
defendant's pro-se motion to withdraw guilty plea at the request of
the State's Attorney.

WHEREFORE, defendant respectfully prays this Honorable Court

reinstate his pro-se motion to withdraw guilty plea, or alternatively, grant him leave to file said motion anew, and that he be appointed counsel for a hearing on the motion, outside of the Public Defender's Office so as to avoid any potential conflict of interest or split of loyalties in the representation of defendant in such proceedings.

Date: _Oct. 3,_____, 2000.        Respectfully submitted,

_Tony W Shoemaker_
Tony Shoemaker
Defendant, Pro-se

P.O. Box 112-B23560
Joliet, Illinois 60434

STATE OF ILLINOIS)
                 ) SS.
COUNTY OF WILL   )


### A F F I D A V I T

   I, Tony Shoemaker, depose and state under PENALTY OF PERJURY pursuant to Section 1-109 of the Illinois Code of Civil Procedure that I am the defendant in the foregoing motion; that I have read the contents therein and that such contents are both true and correct in substance and fact, and that I am competent to testify thereto if called upon to testify.

_Tony W Shoemaker_
AFFIANT, Tony Shoemaker



FILED

OCT 1 0 2000

_Barbara J. Baker_
Clerk of Circuit Court, Morgan County, Illinois

(55

(3)

E-FILED
Monday, 20 November, 2006 06:53:20 AM
Clerk, U.S. District Court, ILCD

IN THE

SEVENTH JUDICIAL CIRCUIT COURT

MORGAN COUNTY, ILLINOIS



FILED

OCT 10 2000

*Barbara J. Baker*
Clerk of Circuit Court, Morgan County, Illinois

PEOPLE OF THE STATE OF ILLINOIS,          )
     Plaintiff,                         )
                         )
                          )
    -vs-                                )          No. 00-CF-21
                          )
                          )          Honorable David Bone
TONY SHOEMAKER,                       )                   Presiding
     Defendant.                         )

## MOTION FOR APPOINTMENT OF NEW COUNSEL

    **NOW COMES**, Tony Shoemaker, defendant, Pro-se, and moves
this Honorable Court for appointment of New counsel in the above-
captioned cause.

    **IN SUPPORT** herefor, defendant states as follows:

    1.)  On or about February 16th, 2000, he was charged in
the above-captioned cause by criminal information for the offenses of
Aggravated Criminal Sexual Assault  and Home Invasion.

    2.)  On February 25th, 2000, Public Defender Richard Crews
was appointed to represent him in the instant cause.

    3.)  From the outset of his (Crews) representation, it was
his advice to defendant that he should plead guilty because of his
rapport with judge Bone and the likelihood of obtaining a lesser
sentence than had he went to trial in the matter.

    4.)  That defendant continuously stressed that he was not
guilty as charged, and that in fact the allegations, most of which
were untrue, could be impeached during a trial, particularly with
regard to whether defendant unlawfully entered the residence of the
alleged victim, and that there was in fact an ongoing sexual relat-
ionship between the alleged victim and defendant.

    5.)  That on or about March 15th, 2000, defendant had written

EXHIBIT D

a letter to Mr. Crews , regarding the circumstances in which the alleged custodial statement was obtained - specifically where the interogating officer indicated to defendant at the time of arrest that he should coöperate with the officer in all regards before he is appointed an attorney where he would best benefit because the officer could discuss the matter with the State's attorney to get him a more lenient sentence, even though defendant was reluctant to discuss the matter without an attorney present. Moreover, the officer indicated to defendant that he could not tell anyone about the officer telling him that he should discuss it with him first, or the officer would get in trouble and would thereafter be unable to help him get an lenient sentence. Further, in said letter defendant stressed hid desire for Mr. Crews to file a motion to suppress custodial statement.

6.)  Subsequent to having received the letter from defendant, Mr. Crews visited with defendant at the county jail and at which time indicated that he could not find any grounds to motion the Court to supress the custodial statement, and again indicated that defendant should plead guilty. During this interview, defendant had requested Mr. Crews to motion the Court for a change of venue due to the case being highly publicized in the small county, which he responded that there was "no possible way this county would grant such a motion".

7.)  Because defendant was unable to afford the expenses of hiring another attorney, and in conjunction with the impression that Mr.Crews was unwilling to fully represent defendant, and in light of the fact that Mr.Crews indicated that he could get a minimal sentence based on a guilty plead, the defendant then entered a **open plea** on May 8th, 2000, at which time a date had been set for sentencing for June 16th, 2000.

8.)  On the same very night (May 8th), defendant wrote a letter to Mr. Crews, and which was forwarded to him the next day, indicating that he wanted to withdraw his guilty plea based on the fact that he did not feel comfortable pleading guilty to something that he was not guilty of and further feared that he would not receive a fair sentence in the matter, which was also verbally stressed to him the next day in an interview with him at the county jail, at which time Mr. Crews indicated that it would be almost impossible to withdraw the guilty plea now, and that the Court frowns on defendant's that plead guilty

(2)

and then later change their mind and almost in all cases the Court
"burns" the defendant. He further assured the defendant that he could
get him a lenient sentence, and in fact stated that defendant " was
looking at the man that got favorable sentences for other particular
defendants with serious crimes, e.g., Robert Branch, Keith Morris,
etc.."

9.) On June 16th, 2000, defendant appeared before the Court
for sentencing, at which time Mr. Crews presented hardly any evidence
in mitigation on behalf of defendant, such as having remained crime
free for seven years, good work history, no past history of violent
crimes, and circumstances indicating that a sexual relationship did
exist between the alleged victim and defendant, and instead merely
relied on the grace of the Court and in comparing a disparity between
defendant's case and murder cases the Court has addressed in the past.
Following hearing in aggravation and mitigation, defendant was sente-
nced to the maximum sentence on all charges.

10.) Subsequently, while confined at the Graham Correctional
Center, Mr. crews had filed a motion to reduce sentence, of which
defendant was not aware of, and at which time he himself had prepared
a pro-se motion to reduce sentence and withdraw guilty plea, and filed
the same with the Court on July 27th, 2000.

11.) On August 15th, 2000, defendant was in conference with
Mr. Crews regarding the pro-se motions defendant had filed at which
time Mr. Crews stressed that he was very distressed over the fact
defendant had went behind his back and filed the motions and then
indicated that he had already filed his own motion, he further stated
that he was going to seek a continuance at that time so as to look
into the pro-se motions. However, at such hearing, the State's Attorney
went on record and objected to the Court regarding the pro-se motions
that defendant had filed, stating that the defendant was represented
by counsel and therefore the Court was without jurisdiction to address
the pro-se motions, and requested that they be disregarded, and which
time the Court agreed and disregarded defendants' motion to withdraw
guilty plea and motion to reduce sentence, which Mr. Crews did not
object to on behalf of the defendant.

12.) In light of the foregoing, and additional circumstances

C58

(3)

which defendant can and will make apparent to the Court in a hearing on this matter, if deemed necessary, the defendant has been prejudiced in this matter up to this point through the representation of Mr. Crews, and further feels that he will receive additional prejudice through the representation of Mr. Crews if represented on the pending motion to reduce sentence, and pro-se motion to withdraw guilty plea which defendant seeks to reinstate via motion filed herewith.

**WHEREFORE**, defendant respectfully prays this Honorable Court appoint new counsel to represent him on the pending motion to reduce sentence, and for defendants' motion to withdraw guilty plea and reduce sentence, upon reinstatement of said motions filed pro-se, with leave to amend said motions through the appointment of new representation. And, in light of a potential conflict of interest through the Public Defender's Office, that a Court appointed attorney be appointed to represent the defendant in any additional and further proceedings in this cause.

Date: _Oct 3,_____, 2000.                Respectfully submitted,

                                          _Tony W. Shoemaker_
                                          Tony Shoemaker
                                          Defendant, Pro-se

                                          P.O. Box 112- B23560
                                          Joliet, Illinois 60434

STATE OF ILLINOIS)
                ) SS.
COUNTY OF WILL   )

### A F F A D I V I T

I, Tony Shoemaker, depose and state under PENALTY OF PERJURY pursuant to section 1-109 of the Illinois Code of Civil Procedure that I am the defendant in the foregoing motion; that I have read the contents therein and that such contents are both true and correct in substance and fact, and that I am competent to testify thereto if called upon as a witness.

**FILED**

OCT 10 2000

_Barbara J. Baker_
Clerk of Circuit Court, Morgan County, Illinois

                                          _Tony W. Shoemaker_
                                          AFFIANT, Tony Shoemaker

(USG)
(4)

_____CIRCUIT_____ COURT OF ILLINOIS

_____SEVENTH_____ JUDICIAL CIRCUIT

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS | ) |
| | ) |
| Plaintiff, | ) No. 00-CF-21 |
| | ) |
| v. | ) |
| | ) |
| TONY SHOEMAKER | ) Honorable David J. Bone |
| | ) Presiding Judge |
| Defendant. | ) |
| | ) |

### NOTICE OF FILING AND PROOF OF SERVICE

TO:  Charles M. Colburn
     State's Attorney
     Morgan County Courthouse
     300 West State Street
     Jacksonville, Illinois 62650

**FILED**

OCT 10 2000

*Barbara J. Baker*
Clerk of Circuit Court, Morgan County, Illinois

Please be advised that I shall file with the Clerk of the _____CIRCUIT_____

Court of Illinois, _____SEVENTH_____ Judicial Circuit on Oct. 3rd , 2000

the attached motion and supporting documents, Petition To Reinstate Motion to
Withdraw Guilty Plea; Motion For Appointment of New Counsel.

This certifies that I have served the above named parties with a copy

of said motion, by enclosing same in envelopes, properly addressed, postage

prepaid, and by depositing said envelopes in the mail via the U.S. mail,

by way of the Stateville Correctional Center on _____October 3rd_____ , 2000

SUBSCRIBED AND SWORN TO BEFORE ME

THIS _3rd_ DAY OF _Oct_ , 2000

_Sandra Schwab_
NOTARY PUBLIC

s/s _Tony W. Shoemaker_

Tony Shoemaker
P.O. Box 112-B23560
Joliet, Illinois 60434

"OFFICIAL SEAL"
SANDRA SCHWAB
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/3/2001

060

**E-FILED**
Monday, 20 November, 2006  06:53:33 AM
Clerk, U.S. District Court, ILCD

IN THE
SEVENTH JUDICIAL CIRCUIT COURT
MORGAN COUNTY, ILLINOIS



FILED

MAR 1 ᵘ 2001

~~Barbara J. Baker~~
Clerk of Circuit Court. Morgan County, Illinois

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) ) | |
| PLAINTIFF, | ) ) | No.  00-CF-21 |
| vs. | ) ) | |
| TONY SHOEMAKER, | ) ) | Honorable David J. Bone Presiding. |
| DEFENDANT. | ) ) | |

---

## NOTICE OF FILING
### PETITION TO REINSTATE MOTION TO WITHDRAW GUILTY PLEA

---

PLEASE TAKE NOTICE, that on March 15, 2001, I filed with the Circuit Court of Morgan County, and the States Attorney for Morgan County, the following Motion for Petition to Reinstate Motion to Withdraw Guilty Plea.

TO: States Atty's Office  TO: Circuit Court Clerk
7th Judicial Circuit      7th Judicial Circuit
300 West State St.        300 West State St.
Jacksonville, Illinois    Jacksonville Illinois,
62650                     62650

STATE OF ILLINOIS    )
                     ) SS
COUNTY OF WILL       )

After being duly sworn, the defendant states that he served the attached notice on the above named person or persons by placing a true and correct copy in an envelope, addressed as shown above, with the proper U.S. Postage on each and deposited the envelopes in the U.S. Mail at the Stateville Correctional Center, P.O. Box 112, Joliet, Illinois 60434.

_Tony Shoemaker_
TONY SHOEMAKER #B-23560

SUBSCRIBED TO BEFORE ME THIS

16TH DAY OF MARCH, 2001

BY _____
    NOTARY PUBLIC

"OFFICIAL SEAL"
SANDRA SCHWAR
NOTARY PUBLIC, STATE OF
MY COMMISSION

C 64

EXHIBIT E

IN THE
SEVENTH JUDICIAL CIRCUIT COURT
MORGAN COUNTY, ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ) ) ) | |
| PLAINTIFF, ) ) | No. 00-CF-21 |
| vs. ) ) | |
| TONY SHOEMAKER, ) ) | Honorable David J. Bone Presiding. |
| DEFENDANT. ) | |

---

PETITION TO REINSTATE MOTION TO WITHDRAW GUILTY PLEA

---

NOW COMES, Tony Shoemaker, defendnat, Pro-se, and moves this Honorable Court to reinstate his pro-se Motion To Withdraw Guilty Plea filed before this Court on July 27, 2000.

IN SUPPORT HEREFOR, Defendant states as follows:

1. That following his entry of an open plea, on May 8th, 2000, and in fact on that very night, and forwarded to his appointed counsel, Richard Crews, the following day, and discussed with said attorney on May 9th, 2000, defendant had stressed his desire to withdraw his guilty plea in the above captioned matter, but prior to sentencing on June 17th, 2000.

2. That the circumstances leading up to his entry of an open plea, as more clearly set forth in Motion For Appointment of New Counsel filed herewith, and incorporated herein, were coercive and misleading on the part of public defender, Mr. Crews, and notwithstanding ineffective assistance of counsel.

3. That had appointed counsel explored the defendant's circumstances and facts leading up to the defendant's arrest in the above captioned matter, it would have been discovered that the factual basis of the guilty plea is not substantiated by such facts and circumstances. Rather, said counsel had persistently advised defendant to plead guilty in exchange for leniency by the court, which said Counsel represented to defendant that he was "the man" with the ability to, and an established rapport with the sentencing judge, to be able to obtain a lenient and favorable sentence for defendant. Additionally, said counsel was unwilling, and in fact did not, file motions to suppress custodial statement, or for a

$065$

change of venue to another county, nor any other pre-trial motions suggested by defendant, and viable under the circumstances of the case.

4.  Notwithstanding the fact that defendant had expressed his desire to withdraw guilty plea, and made appointed counsel aware of the same prior to sentencing, the defendant nonetheless filed his pro-se motion to withdraw guilty plea, and to reduce sentence as required per recent Ill. Sct. Precedence, from the Graham Correctional Center on July 27, 2000.

5.  That on August 15th, 2000, defendant was before this Court with appointed counsel, Mr. Crews, on Crews' Motion To Reduce Sentence, and at which time the State's Attorney had moved on the record to request that the Court disregard defendant's pro-se filings, based on the fact that at the time defendant was represented by Mr. Crews. The Court subsequently granted the State's request without argument or objection from defendant's attorney, but over the objection of defendant which he insisted through his attorney.

6.  Having knowledge that defendant desires to withdraw his guilty plea, and being present in Court on August 15th, 2000, and being aware of the circumstances as set forth in paragraph (5), the appointed counsel in this cause has yet to file a motion to withdraw defendant's guilty plea as requested by the defendant.

7.  Defendant further alleges that there are genuine concerns with regards to the Constitutionality of the number of years he was given for his crime. He wishes that his attorney bring into issue the case of Apprendi v. New Jeresy, with regards to his extended term sentence.

8.  The defendant further alleges, that there are certain circumstances under which he was given the sentence, which are findings of the Court, that need to be submitted to a jury a proven beyond a reasonable doubt. Such as Severe Bodily Injury.

9.  That until this time, the public defender should have been well aware of these circumstances, and has failed to protect the Constitutional rights of his client in expressing these very issues.

10.  Based on the foregoing, and the circumstances leading up to defendant's guilty plea, the Court was not without jurisdiction to address defendants' pro-se motion to withdraw guilty plea, particularly in light of fact that appointed counsel himself has not substituted his own motion in place of defendant's pro-se motion even though said counsel is aware of defendant's desire to withdraw his guilty plea. Accordingly, we AGAIN, ask this honorable Court, to reconsider it's decision to reinstate Defendant's Motion to Reinstate motion to withdraw guilty plea.

$\mathcal{CLL}$

WHEREFORE, defendant, respectfull prays this Honorable Court either, reinstate said motion to withdraw his guilty plea, or alternatively, grant him leave to file said motion anew, and that he be appointed counsel for a hearing on the motion, outside of the Public Defender's office so as to avoid any potential conflict of interest of split of loyalties in the representation of defendant in such proceedings.

Dated, March 14, 2001.

Respectfully Submitted,

*Tony Shoemaker.*

Tony Shoemaker
Defendant, Pro-se
# B-23560
Stateville C.C.
P.O. Box 112
Joliet, Illinois 60434

STATE OF ILLINOIS ) 
                  ) SS
COUNTY OF WILL    )

A F F I D A V I T

I, TONY SHOEMAKER, depose and state under PENALITY OF PERJURY, pursuant to Section 1-109 of the Illinois Code of Civil Procedure, that I am the defendant in the foregoing motion, that I have read the contents therein, and that such contents are both true and correct in substance and fact, and that I am competent to testify thereto if called upon to testify.

*Tony Shoemaker.*

TONY SHOEMAKER
AFFIANT

167

E-FILED
Monday, 20 November, 2006 06:53:49 AM
Clerk, U.S. District Court, ILCD

FILE COPY

NO.  4-01-0300

IN THE

APPELLATE COURT OF ILLINOIS

FOURTH JUDICIAL DISTRICT

OCT 11 2001

SAAP FOURTH DISTRICT

| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of the Seventh Judicial Circuit, Morgan County, Illinois. |
|---|---|---|
| Plaintiff-Appellee, | ) | |
| vs. | ) | No.  00-CF-21 |
| TONY W. SHOEMAKER, | ) | Honorable J. David Bone, |
| Defendant-Appellant. | ) | Judge Presiding. |

## Brief and Argument for Defendant-Appellant

DANIEL D. YUHAS
Deputy Defender
Office of the State Appellate Defender
Fourth Judicial District
400 S. 9th Street, Suite 102
P.O. Box 5750
Springfield, IL 62705-5750
(217) 782-3654

JEFFREY D. FOUST
Assistant Defender

COUNSEL FOR DEFENDANT-APPELLANT

EXHIBIT F

# Points and Authorities

## I.

**The Truth-In-Sentencing Scheme Violates the Right to Due Process and a Jury Trial by Subjecting Defendants to Increased Punishment Without Pretrial Notice or Allegation in the Charging Instrument, or Mandating a Jury Finding, of the Facts Necessary for Imposition of the Increased Term of Imprisonment.**

*Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 29 S.Ct. 527, 53 L.Ed. 836 (1909) . . . . . . . . . . . . . . . 12

*People v. Arna*, 168 Ill.2d 107, 658 N.E.2d 445 (1995) . . . . . . . . . . . . . 13, 14

*People v. Bryant*, 128 Ill.2d 448, 539 N.E.2d 1221 (1990) . . . . . . . . . . . . . . 13

*People v. Fisher*, 184 Ill.2d 441, 705 N.E.2d 67 (1998) . . . . . . . . . . . . . . . . 9

*People v. Zeisler*, 125 Ill.2d 42, 531 N.E.2d 24 (1988) . . . . . . . . . . . . . . . . . 13

*People v. Boatman*, 312 Ill.App.3d 340, 726 N.E.2d 1178 (4th Dist. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*State v. Johnson*, 166 N.J. 523, 766 A.2d 1126 (2001) . . . . . . . . . . . . . 12, 13

U.S. Const., amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

U.S. Const., amend. VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

U.S. Const., amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

730 ILCS 5/3-6-3(a)(2)(ii) (West 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

N.J. Stat. Ann. section 2C:43-7.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## II.

### Tony Shoemaker Is Entitled to a $510 Credit Against His Fine Pursuant to 725 ILCS 5/110-14 (West 1998).

*People v. Woodard*, 175 Ill.2d 435, 677 N.E.2d 935 (1997) . . . . . . . . . . . 15, 16

Illinois Supreme Court Rule 615(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

725 ILCS 5/110-14 (West 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## III.

### This Case Should Be Remanded for a Hearing Pursuant to *People v. Krankel* Because the Trial Court Committed Reversible Error by Not Inquiring into Mr. Shoemaker's Claim of Ineffective Assistance of Counsel.

*People v. Ball*, 185 Ill.2d 179, 705 N.E.2d 824 (1998) . . . . . . . . . . . . . . . . . 19

*People v. Johnson*, 159 Ill.2d 97, 636 N.E.2d 485 (1994) . . . . . . . . . . . . 19, 22

*People v. Krankel*, 102 Ill.2d 181, 464 N.E.2d 1045 (1984) . . . . . . . . . . . 19, 20

*People v. Shapiro*, 177 Ill.2d 519, 687 N.E.2d 65 (1997) . . . . . . . . . . . . . . . 17

*People v. Williams*, 147 Ill.2d 173, 588 N.E.2d 983 (1991) . . . . . . . . . . . . . . 19

*People v. Jackson*, 131 Ill.App.3d 128, 474 N.E.2d 466
   (4th Dist. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-21

*People v. Williams*, 224 Ill.App.3d 517, 586 N.E.2d 770 (1st Dist. 1992) . . . . . 21

## Nature of the Case

Tony W. Shoemaker pled guilty to the offense of aggravated criminal sexual assault and home invasion and was sentenced to two terms of 30 years' imprisonment to be served consecutively.

This is a direct appeal from the judgment of the court below. No issue is raised challenging the charging instrument.

## Issues Presented for Review

### I.

Whether the truth-in-sentencing scheme violates the right to due process and a jury trial by subjecting defendants to increased punishment without pretrial notice or allegation in the charging instrument, or mandating a jury finding, of the facts necessary for imposition of the increased term of imprisonment.

### II.

Whether Tony Shoemaker is entitled to a $510 credit against his fine pursuant to 725 ILCS 5/110-14 (West 1998).

### III.

Whether this case should be remanded for a hearing pursuant to *People v. Krankel* because the trial court committed reversible error by not inquiring into Mr. Shoemaker's claim of ineffective assistance of counsel.

## Jurisdiction

Tony W. Shoemaker appeals from a final judgment of conviction in a criminal case. Mr. Shoemaker pled guilty and was sentenced to two terms of 30 years' imprisonment to be served consecutively. Appellant filed a motion to vacate his guilty plea, which was denied on March 27, 2001. Notice of appeal was filed on April 3, 2001. (Vol. I, C. 70) Jurisdiction therefore lies in this Court pursuant to article VI, section 6, of the Illinois Constitution, and Supreme Court rules 604(d).

## Statement of Facts

On February 18, 2000, the defendant was charged in Morgan County No. 00-CF-21 with aggravated criminal sexual assault and home invasion. (Vol. I, C. 6-8)

On May 8, 2000, the guilty plea hearing was held. (Vol. III, R. 3) The court was informed by the State that aggravated criminal sexual assault was subject to 85% actual time in the Department of Corrections and, if the court found at the sentencing hearing that the home invasion was accompanied by great bodily harm, it would also be subject to 85% actual time served. (Vol. III, R. 3) The court could also impose an extended term sentence if it found that the defendant's behavior was accompanied by brutal or heinous behavior indicative of wanton cruelty. (Vol. III, R. 4) There is also mandatory consecutive sentencing in this case. (Vol. III, R. 4) The defendant was admonished concerning the sentencing range, good-time credit and the mandatory consecutive sentence. (Vol. III, R. 10) The defendant was admonished concerning the rights he would be relinquishing if he pled guilty. (Vol. III, R. 11-15) The defendant signed a plea of guilty and a jury waiver. (Vol. I, C. 24) The defendant pled guilty to both counts. (Vol. III, R. 15) The court found the defendant knowingly and voluntarily pled guilty. (Vol. III, R. 15)

The factual basis was that, without authority, the defendant entered the dwelling of the complainant at 807 West College Street in Jacksonville on February 16, 2000. (Vol. III, R. 15) With the use of force the defendant then performed sexual intercourse on her, struck her and caused bodily harm to

her. (Vol. III, R. 16)   The trial court accepted the defendant's plea of guilty. (Vol. III, R. 16)

The presentence report was filed on June 8, 2000.   (Envelope)   The defendant was arrested on February 16, 2000, and remained in custody. (Presentence Report at 80)

The sentencing hearing was held on June 16, 2000. (Vol. III, R. 24) The presentence report was corrected to reflect that the defendant was convicted of unlawful restraint in 1991 rather than 1999 as listed in the report. (Vol. III, R. 24)

Sandra Herald, the victim, testified. (Vol. III, R. 27)  Evidence concerning medical expenses was presented. (Vol. III, R. 37-38)  The defendant apologized for what he had done and stated he needed help. (Vol. III, R. 54)  The trial court found that during the home invasion the defendant caused great bodily harm and must serve 85%. (Vol. III, R. 61)

Tony W. Shoemaker was sentenced to two terms of 30 years' imprisonment to be served consecutively for the offenses of aggravated criminal sexual assault and home invasion. (Vol. I, C. 26)  He was also ordered to pay court costs, a $100 sexual assault fine, $40,550 in restitution plus 9% interest. (Vol. I, C. 26)  He was given credit for 122 days previously served in jail. (Vol. III, R. 64)

A motion to reconsider sentence was filed on July 5, 2000.  (Vol. I, C. 33) On July 7, 2000, the defendant filed a *pro se* motion to withdraw his guilty plea and vacate sentence. (Vol. I, C. 42)

A hearing on the motion to reconsider sentence was held on August 15, 2000. (Vol. II, R. 27)  During the hearing, defense counsel noted that he had

-7-

not had an opportunity to discuss the post-sentencing options with the defendant and that, in addition to counsel's motion to reconsider sentence, the defendant filed a *pro se* motion. (Vol. II, R. 30) The defendant was not present at the hearing. The State moved to dismiss the *pro se* motion and the Court granted the motion to dismiss. (Vol. II, R. 30) The hearing was continued.

On October 10, 2000, the defendant filed another petition to reinstate motion to withdraw guilty plea. (Vol. I, C. 53) The defendant also filed a motion for new counsel. (Vol. I, C. 53)

The hearing was held on October 24, 2000. (Vol. II, R. 37) The remainder of the defendant's *pro se* motions were struck without objection. (Vol. II, R. 40) Tony Shoemaker testified that on the day of the offense he arose in the morning and started drinking. He had been drinking heavily for sometime and had passed out from drinking the night before. (Vol. II, R. 43) The hearing resumed on March 20, 2001. (Vol. II, R. 56) On March 19, 2001, the defendant filed another motion to reinstate motion to withdraw guilty plea. (Vol. I, C. 65) The defendant's most recent motion was stricken because he was represented by counsel. (Vol. II, R. 59) On March 27, 2001, the hearing again resumed. (Vol. II, R. 63) The motion to reconsider sentence was denied. (Vol. II, R. 72)

On April 3, 2001, defense counsel filed a certificate pursuant to Supreme Court Rule 604(d). Notice of appeal was filed on April 3, 2001. (Vol. I, C. 70) The Office of the State Appellate Defender was appointed as counsel on appeal. (Vol. I, C. 71)

# Argument

## I.

**The Truth-In-Sentencing Scheme Violates the Right to Due Process and a Jury Trial by Subjecting Defendants to Increased Punishment Without Pretrial Notice or Allegation in the Charging Instrument, or Mandating a Jury Finding, of the Facts Necessary for Imposition of the Increased Term of Imprisonment.**

### *Standard of Review*

The constitutionality of a statute is a question of law, and the standard of review accordingly is *de novo. People v. Fisher*, 184 Ill.2d 441, 705 N.E.2d 67, 71-72 (1998).

### *Analysis*

Tony Shoemaker was sentenced to 30 years' imprisonment for home invasion and thirty years' imprisonment for aggravated criminal sexual assault to be served consecutively. The trial court noted that defendant was entitled to only 15% good time credit and made a finding of "great bodily harm" to the victim on the count of home invasion.

Section 3-6-3(a)(2)(ii) of the Unified Code of Corrections mandates that a prisoner serving a term of imprisonment for certain specific crimes receive no more than 4.5 days of good conduct credit for each month served. 730 ILCS 5/3-6-3(a)(2)(ii) (West 2000). This statute decreasing Mr. Shoemakers' day-for-day good conduct credit does not require that he be given pre-trial notice of the facts qualifying him for this enhanced sentence, nor does it require the facts be charged in the indictment. The statute does not mandate that the facts qualifying Mr. Shoemaker for only 15% good time credit be determined by a jury upon proof beyond a reasonable doubt. The absence of these constitutional protections violated due process.

The United States Supreme Court's recent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), requires that Mr. Shoemakers' 15% credit be vacated and the cause be remanded for imposition of day-for-day credit. In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 147 L.Ed.2d at 446. Such facts must also be included in the charging instrument. *Apprendi*, 147 L.E.2d at 446. The constitutional basis for this holding is of "surpassing importance" and two-fold: the Fourteenth Amendment protection against the deprivation of liberty without due process of law and the Sixth Amendment right to a jury trial. *Apprendi*, 147 L.E.2d at 447; U.S. Const., amends. VI, XIV.

The Court in *Apprendi* invalidated a New Jersey statute that permitted a sentencing judge to enhance a defendant's sentence beyond the prescribed maximum if the judge found, by a preponderance of the evidence, that the crime was committed with a racially biased purpose. *Apprendi*, 147 L.E.2d at 455. Historically, the court noted, no distinction between an "element" and a "sentencing factor" existed; the elements of an "offense" included every fact that would increase the range of punishment. *Apprendi*, 147 L.E.2d at 448. Merely because the state legislature placed the additional factor within the sentencing provisions of the criminal code did not mean that it was not an essential element of the offense. *Apprendi*, 147 L.Ed.2d at 458. "[T]he relevant inquiry is one not of form, but of effect – does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi*, 147 L.Ed.2d at 457.

The Illinois truth-in-sentencing statute bears the same constitutional defects as the New Jersey statute invalidated in *Apprendi*. Like the New Jersey statute, the Illinois statute makes no provision for notice of the possibility of the imposition of only 15% good time credit, nor concomitantly does it require it to be included in the charging indictment. 730 ILCS 5/3-6-3(a)(2)(ii) (West 2000). The United States Supreme Court has recognized the indictment's fundamental role in warning a defendant of facts that may enhance his punishment upon conviction. *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). Furthermore, the statute does not mandate that a defendant be provided with the right to have a jury determination of facts which would cause the defendant to lose day-for-day good time credit.

The trial court's finding that Tony Shoemaker caused "great bodily harm" was in excess of any finding of the jury. Tony Shoemaker was charged by information with home invasion in that he "knowingly and without authority entered the dwelling of Sandy Herald . . . knew that Sandy Herald was present . . . and intentionally caused injury to Sandy Herald." (Vol. I, C. 8) The information did not allege "great bodily harm," but only injury. The defendant was not charged with conduct that caused "great bodily harm." The finding of the trial court was beyond that facts pled in the information.

The holding in *Apprendi* makes clear that such statutes are invalid because they violate a defendant's constitutional rights by permitting an increase in the penalty for an offense beyond that of the statutory maximum based on facts that are not pled before trial, submitted to a jury, or proved beyond a reasonable doubt. U.S. Const., amends. V, VI, XIV; *Apprendi*, 147 L.Ed.2d at 447. The Illinois truth-in-sentencing statute, according to the decision in *Apprendi*, thus is

-11-

unconstitutional as it runs afoul of the Sixth and Fourteenth Amendments to the U.S. Constitution, and any sentence imposed pursuant to it is void.

The New Jersey Supreme Court recently applied the doctrine of constitutional doubt to invalidate the No Early Release Act (hereinafter NERA), a statute very similar to the Illinois truth-in-sentencing statute: *State v. Johnson*, 166 N.J. 523, 766 A.2d 1126 (2001), N.J. Stat. Ann. section 2C:43-7.2. Under the doctrine of constitutional doubt, "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Johnson*, 166 N.J. at 534, 766 A.2d at 1132, *citing Almendarez-Torres v. United States*, 523 U.S. 224, 250, 118 S.Ct. 1219, 1234, 140 L.Ed.2d 350, 372 (1998), *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408, 29 S.Ct. 527, 536, 53 L.Ed. 836, 849 (1909).

The statute in question in *Johnson* provided for enhanced sentences for convictions which included "violent crime" as defined in the statute. In *Johnson*, the defendant was found guilty by a jury of robbery, possession of a firearm with intent to use it unlawfully against a person, and possession of a firearm without a permit. *Johnson*, 166 N.J. at 528, 766 A.2d at1129. At sentencing, the State requested that NERA be applied because Johnson had aimed a BB gun at the victim and threatened her. The trial court, without hearing any additional evidence, made a determination that Johnson committed a violent crime and thus was eligible for sentencing under NERA. *Johnson*, 166 N.J. at 529, 766 A.2d at 1129. The New Jersey Supreme Court concluded that NERA "simply requires that the NERA factor be established at a hearing after the defendant's conviction, without specifying whether the hearing is before the judge or the jury, or the

-12-

applicable standard of proof." *Johnson*, 166 N.J. at 539-40, 766 A.2d at1137.
The Court noted that "[l]ike the Court in *Apprendi*, we find fundamental
constitutional concerns with the notion that a prosecutor could use a judicial
hearing under subsection (e) of NERA to shift to the trial court the burden of
finding predicate facts chargeable as elements of crimes in our criminal statutes."
*Johnson*, 166 N.J. at 543, 766 A.2d at1138. Wishing to avoid a "constitutional
concern," the Court held that whether a "violent crime" had occurred must be
submitted to a jury and found beyond a reasonable doubt. *Johnson*, 166 N.J. at
543-44, 766 A.2d at 1138.

The truth-in-sentencing statute bears the same defects as NERA. It allows
a fact which increases the defendant's sentence to be established by the trial court
at sentencing, without being pled in the indictment or proven to the jury, and
without a clear standard of proof. This Court should apply the doctrine of
constitutional doubt and, relying on the United States Supreme Court's precedent
in *Apprendi*, invalidate this statute.

Mr. Shoemaker is entitled to raise the constitutionality of 730 ILCS 5/3-6-
3(a)(2)(ii) for the first time on direct appeal from trial. The constitutionality of a
statute may be raised at any time. *People v. Bryant*, 128 Ill.2d 448, 539 N.E.2d
1221, 1223-24 (1990). An unconstitutional statute is void *ab initio*, meaning that
it is, "in legal contemplation, as though no such law had ever been passed."
*People v. Zeisler*, 125 Ill.2d 42, 531 N.E.2d 24, 27-28 (1988). Void judgments can
be attacked at any time. *People v. Arna*, 168 Ill.2d 107, 658 N.E.2d 445, 448
(1995). Because Mr. Shoemaker was sentenced pursuant to such an
unconstitutional, and thus void, statute, he may raise this issue for the first time
on direct appeal. In addition, a finding of forfeiture would be inappropriate under

-13-

Illinois Supreme Court Rule 615(a), because the defendant's substantial right not to be sentenced in excess of the maximum allowed by law is implicated. *See Arna*, 658 N.E.2d at 448; *People v. Boatman*, 312 Ill.App.3d 340, 726 N.E.2d 1178, 1180 (4th Dist. 2000).

Accordingly, the defendant respectfully requests that this Court vacate the sentencing order, and either remand the cause for resentencing or order the mittimus amended to reflect full sentencing credit.

## II.

### Tony Shoemaker Is Entitled to a $510 Credit Against His Fine Pursuant to 725 ILCS 5/110-14 (West 1998).

#### *Standard of Review*

When a statute confers a right in mandatory terms such as here, waiver does not apply and a defendant may make application for the credit for the first time on appeal. *People v. Woodard*, 175 Ill.2d 435, 457, 677 N.E.2d 935, 945-46 (1997); 725 ILCS 5/110-14 (West 1998).

#### *Analysis*

Tony W. Shoemaker was sentenced to two terms of 30 years' imprisonment to be served consecutively for the offenses of aggravated criminal sexual assault and home invasion. (Vol. I, C. 26) He was also ordered to pay court costs, a $100 sexual assault fine, $40,550 in restitution plus 9% interest. (Vol. I, C. 26) He was given credit for 122 days previously served in jail. (Vol. III, R. 64) The offenses in this case were bailable. Pursuant to 725 ILCS 5/110-14 (West 1998), Mr. Shoemaker is entitled to a $510 credit against his $100 fine.

725 ILCS 5/110-14 (West 1998) provides:

> Credit for Incarceration on Bailable Offense. Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. However, in no case shall the amount so allowed or credited exceed the amount of the fine.

The Illinois Supreme Court has held that the plain language of the statute does not limit the benefits of the statute to persons who apply for it at the trial level. *Woodard*, 175 Ill.2d at 456-57, 677 N.E.2d at 945. The Court held, "the normal rules of waiver do not apply, and the right is cognizable on appeal as a matter of

course subject to a defendant's application for it." *Woodard*, 175 Ill.2d at 457, 677 N.E.2d at 946.

In this case, the trial court failed to award credit for incarceration on a bailable offense. Mr. Shoemaker spent 122 days in jail prior to his commitment to the Department of Corrections, and he is therefore entitled to a $510 credit against the fines imposed upon him. Accordingly, pursuant to Illinois Supreme Court Rule 615(b), Mr. Shoemaker requests that this Court modify the trial court's judgment of conviction and award a $510 credit against his fine.

## III.

**This Case Should Be Remanded for a Hearing Pursuant to** *People v. Krankel* **Because the Trial Court Committed Reversible Error by Not Inquiring into Mr. Shoemaker's Claim of Ineffective Assistance of Counsel.**

### *Standard of Review*

Whether the defendant's allegations of ineffective assistance of counsel were sufficient to warrant further inquiry by the trial court is a matter of law. As such, a *de novo* standard of review is required because there are no factual disputes in question. *People v. Shapiro*, 177 Ill.2d 519, 687 N.E.2d 65 (1997).

### *Analysis*

A motion to reconsider sentence was filed on July 5, 2000. (Vol. I, C. 33) On July 7, 2000, the defendant mailed a *pro se* motion to withdraw his guilty plea and vacate sentence. (Vol. I, C. 42) In the motion, Mr. Shoemaker alleged that his counsel rendered ineffective assistance of counsel. (Vol. I, C. 42) Specifically, Mr. Shoemaker alleged that defense counsel had only seen the defendant twice while he was in the county jail and that counsel only told him to plead guilty and nothing else. (Vol. I, C. 42) He had also asked counsel to withdraw his plea of guilty, but counsel refused to do so. (Vol. I, C. 42) Counsel had also failed to say anything in court that the defendant had asked him to say. (Vol. I, C. 43) The trial court did not inquire into Mr. Shoemaker's claims or appoint new counsel for post-trial proceedings.

A hearing on the motion to reconsider sentence was held on August 15, 2000. (Vol. II, R. 27) During the hearing, defense counsel noted that he had not had an opportunity to discuss the post-sentencing options with the defendant and that, in addition to counsel's motion to reconsider sentence, the defendant filed a *pro se* motion. (Vol. II, R. 30) The defendant was not present at the hearing.

-17-

The State moved to dismiss the *pro se* motion and the Court granted the motion to dismiss. (Vol. II, R. 30). The hearing was continued.

On October 10, 2000, the defendant filed a petition to reinstate motion to withdraw guilty plea. (Vol. I, C. 53) The defendant also filed a motion for new counsel. (Vol. I, C. 53) The defendant alleged that, following his plea of guilty, he had stressed his desire to withdraw his guilty plea. (Vol. I, C. 53) If counsel had explored the circumstances and facts leading to the defendant's arrest, counsel would have discovered that "the factual basis of the plea was not substantiated by such facts and circumstances." (Vol. I, C. 53) Defense counsel persisted in telling the defendant that he had rapport with the sentencing judge and that counsel would be able to obtain a lenient and favorable sentence from the judge. Additionally, counsel had been unwilling to file a motion to suppress the custodial statement, a motion for change of venue, or any other pretrial motion the defendant requested. (Vol. I, C. 54) Counsel has never filed a motion to withdraw the defendant's guilty plea. (Vol. I, C. 54)

These allegations were repeated in the defendant's motion for the appointment of new counsel. (Vol. I, C. 56) Additionally, the defendant alleged that he was not guilty, that most of the allegations were not true, and that there had been an on going sexual relationship between the defendant and the alleged victim. (Vol. I, C. 56) In a letter to Mr. Crews, the defendant had requested that counsel file a motion to suppress his statement to the police. (Vol. I, C. 57) Counsel also failed to adequately represent the defendant at the sentencing hearing and failed to present evidence in mitigation. (Vol. I, C. 58)

The hearing was held on October 24, 2000. (Vol. II, R. 37) The defendant's *pro se* motions were struck without objection. (Vol. II, R. 40) The hearing

-18-

resumed on March 20, 2001. (Vol. II, R. 56)  On March 19, 2001, the defendant filed another motion to reinstate motion to withdraw guilty plea. (Vol. I, C. 65) The defendant's most recent *pro se* motion was stricken because he was represented by counsel. (Vol. II, R. 59)  On March 27, 2001, the hearing again resumed. (Vol. II, R. 63) The motion to reconsider sentence was denied. (Vol. II, R. 72)

On April 3, 2001, defense counsel filed a certificate pursuant to Supreme Court Rule 604(d). (Vol. I, C. 68)

Because the trial court failed to inquire into the defendant's claim of ineffective assistance of counsel, this cause should be remanded for further proceedings.  In Illinois, a trial judge is required to investigate allegations of ineffective assistance when they are presented by a defendant.  In *People v. Johnson*, 159 Ill.2d 97, 125, 636 N.E.2d 485, 497 (1994), the Supreme Court held that the "operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the *pro se* defendant's allegations of ineffective assistance of counsel." *See also People v. Ball*, 185 Ill.2d 179, 210, 705 N.E.2d 824 (1998).  The Court explained that "the trial court should examine the factual matters underlying the defendant's claim." *People v. Johnson*, 159 Ill.2d at 125, *quoting People v. Williams*, 147 Ill.2d 173, 251, 588 N.E.2d 983 (1991).  In the instant case, no such examination or inquiry was conducted by the trial court. (Vol. VI, R. 77-88)

The type of relief the defendant is requesting was recognized in *People v. Krankel*, 102 Ill.2d 181, 464 N.E.2d 1045 (1984), and *People v. Jackson*, 131 Ill.App.3d 128, 474 N.E.2d 466 (4th Dist. 1985).  In *Krankel*, the defendant filed a *pro se* post-trial motion alleging that he received the ineffective assistance of

-19-

counsel when counsel failed to call additional witnesses at trial. The Illinois Supreme Court remanded the cause to the trial court for a new hearing on the defendant's motion for a new trial with appointed counsel other than his originally-appointed counsel. The Court held that, if after the hearing, the trial court found that the defendant was denied his right to the effective assistance of counsel, then the trial court was required to order a new trial. *Krankel*, 464 N.E.2d at 1049.

Similarly, in *Jackson*, this Court recognized the procedure set forth in *Krankel* in cases where the defendant alleges in post-trial correspondence trial counsel's ineffectiveness. The *Jackson* court stated that a trial court should first examine the factual matters underlying the defendant's claim. If the claim goes to matters of trial tactics or strategy, the defendant's claim should be denied. If, however, the factual matters show possible neglect of the defendant's case, the court should appoint new counsel who can undertake an independent evaluation of the defendant's claim and present the matter to the court from a detached, yet adversarial position. *People v. Jackson*, 474 N.E.2d at 474. In *Jackson*, this Court concluded that the defendant's trial attorney provided a valid explanation upon questioning by the court for not calling a potential alibi witness. *People v. Jackson*, 474 N.E.2d at 475.

As a threshold matter, it is clear that the defendant adequately raised the issue of trial counsel's alleged incompetence. Following the rationale of *Krankel* and *Jackson*, the trial court in this case should have examined the factual matters underlying the defendant's claim when it learned that the defendant may have received the ineffective assistance of counsel.

Where there is a clear basis for an allegation of ineffectiveness of counsel, a defendant's failure to explicitly make such an allegation does not result in a waiver of a *Krankel* problem. *People v. Williams*, 224 Ill.App.3d 517, 524, 586 N.E.2d 770, 774 (1st Dist. 1992). Fundamental fairness requires a further investigation of counsel's performance. *See Williams*, 586 N.E.2d at 774.

This Court has set up an objective test to determine when, as in *Krankel*, it is necessary to appoint substitute counsel:

> The trial court should examine the factual matters underlying the defendant's claim. . . . If the claim goes to matters of trial tactics or strategy, the defendant's claim should be found spurious and his request for new counsel denied. . . .
>
> If, however, the factual matters show possible neglect of the defendant's case, the court should appoint new counsel who can undertake an independent evaluation of the defendant's claim and present the matter to the court from a detached, yet adversarial position. . . .
>
> [In evaluating a defendant's claim] some interchange between the court and defendant's counsel must take place . . . to avoid potential abuses by those who would falsely claim situations of the *Krankel* type. . . . This is not to say counsel should be able to undertake lengthy legal arguments. . . . Rather, counsel may simply answer questions and explain the facts and circumstances surrounding matters which are alleged by his client to demonstrate [ineffective assistance].
>
> *People v. Jackson*, 131 Ill.App.3d 128, 474 N.E.2d 466, 474-75 (4th Dist. 1985).

In this case, the trial court was obliged to determine whether the factual matters raised by the defendant's claim show possible neglect of the defendant's case. The trial court did not inquire into Mr. Shoemaker's claim. First, the trial court ignored the allegation. Over many months, the court continuously dismissed the *pro se* motions without making any inquiry. Mr. Shoemaker is entitled to an evidentiary hearing on his claim of ineffective assistance of counsel. A trial court

-21-

is required to conduct "an adequate inquiry into the *pro se* defendant's allegations of ineffective assistance of counsel." *People v. Johnson*, 159 Ill.2d 97, 125, 636 N.E.2d 485 (1984).

## Conclusion

For the foregoing reasons, Tony W. Shoemaker, defendant-appellant, respectfully requests that this Court vacate the order that the home invasion involved great bodily harm, give the defendant credit toward his fine and remand this cause for a hearing consistent with *People v. Krankel*, 102 Ill.2d 181, 464 N.E.2d 1045 (1984).

Respectfully submitted,

DANIEL D. YUHAS
Deputy Defender
Office of the State Appellate Defender
400 South Ninth Street, Suite 102
P.O. Box 5750
Springfield, IL 62705-5750
(217) 782-3654

JEFFREY D. FOUST
Assistant Defender

COUNSEL FOR DEFENDANT-APPELLANT

**APPENDIX**

IN THE
SEVENTH JUDICIAL CIRCUIT COURT
MORGAN COUNTY, ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | |
| PLAINTIFF, | ) ) | No.  00-CF-21 |
| vs. | ) ) | |
| TONY SHOEMAKER, | ) ) | Honorable David J. Bone Presiding. |
| DEFENDANT. | ) | |

## PETITION TO REINSTATE MOTION TO WITHDRAW GUILTY PLEA

NOW COMES, Tony Shoemaker, defendnat, Pro-se, and moves this Honorable Court to reinstate his pro-se Motion To Withdraw Guilty Plea filed before this Court on July 27, 2000.

IN SUPPORT HEREFOR, Defendant states as follows:

1.  That following his entry of an open plea, on May 8th, 2000, and in fact on that very night, and forwarded to his appointed counsel, Richard Crews, the following day, and discussed with said attorney on May 9th, 2000, defendant had stressed his desire to withdraw his guilty plea in the above captioned matter, but prior to sentencing on June 17th, 2000.

2.  That the circumstances leading up to his entry of an open plea, as more clearly set forth in Motion For Appointment of New Counsel filed herewith, and incorporated herein, were coercive and misleading on the part of public defender, Mr. Crews, and notwithstanding ineffective assistance of counsel.

3.  That had appointed counsel explored the defendant's circumstances and facts leading up to the defendant's arrest in the above captioned matter, it would have been discovered that the factual basis of the guilty plea is not substantiated by such facts and circumstances. Rather, said counsel had persistently advised defendant to plead guilty in exchange for leniency by the court, which said Counsel represented to defendant that he was "the man" with the ability to, and an established rapport with the sentencing judge, to be able to obtain a lenient and favorable sentence for defendant. Additionally, said counsel was unwilling, and in fact did not, file motions to suppress custodial statement, or for a

A-1

change of venue to another county, nor any other pre-trial
motions suggested by defendant, and viable under the
circumstances of the case.

4.    Notwithstanding the fact that defendant had expressed
his desire to withdraw guilty plea, and made appointed counsel
aware of the same prior to sentencing, the defendant nonetheless
filed his pro-se motion to withdraw guilty plea, and to
reduce sentence as required per recent Ill. Sct. Precedence,
from the Graham Correctional Center on July 27, 2000.

5.    That on August 15th, 2000, defendant was before
this Court with appointed counsel, Mr. Crews, on Crews'
Motion To Reduce Sentence, and at which time the State's
Attorney had moved on the record to request that the Court
disregard defendant's pro-se filings, based on the fact that
at the time defendant was represented by Mr. Crews.    The
Court subsequently granted the State's request without argument
or objection from defendant's attorney, but over the objection
of defendant which he insisted through his attorney.

6.    Having knowledge that defendant desires to withdraw
his guilty plea, and being present in Court on August 15th,
2000, and being aware of the circumstances as set forth in
paragraph (5), the appointed counsel in this cause has yet to
file a motion to withdraw defendant's guilty plea as requested
by the defendant.

7.    Defendant further alleges that there are genuine
concerns with regards to the Constitutionality of the number
of years he was given for his crime.    He wishes that his
attorney bring into issue the case of Apprendi v. New Jeresy,
with regards to his extended term sentence.

8.    The defendant further alleges, that there are
certain circumstances under which he was given the sentence,
which are findings of the Court, that need to be submitted to
a jury a proven beyond a reasonable doubt.    Such as Severe
Bodily Injury.

9.    That until this time, the public defender should
have been well aware of these circumstances, and has failed
to protect the Constitutional rights of his client in expressing
these very issues.

10.    Based on the foregoing, and the circumstances
leading up to defendant's guilty plea, the Court was not
without jurisdiction to address defendants' pro-se motion to
withdraw guilty plea, particularly in light of fact that
appointed counsel himself has not substituted his own motion
in place of defendant's pro-se motion even though said counsel
is aware of defendant's desire to withdraw his guilty plea.
Accordingly, we AGAIN, ask this honorable Court, to reconsider
it's decision to reinstate Defendant's Motion to Reinstate
motion to withdraw guilty plea.

A-2

WHEREFORE, defendant, respectfull prays this Honorable Court either, reinstate said motion to withdraw his guilty plea, or alternatively, grant him leave to file said motion anew, and that he be appointed counsel for a hearing on the motion, outside of the Public Defender's office so as to avoid any potential conflict of interest of split of loyalties in the representation of defendant in such proceedings.

Dated, March 14, 2001.

Respectfully Submitted,

*Tony Shoemaker.*

Tony Shoemaker
Defendant, Pro-se.
# B-23560
Stateville C.C.
P.O. Box 112
Joliet, Illinois 60434


STATE OF ILLINOIS    )
                     ) SS
COUNTY OF WILL       )


A F F I D A V I T


I, TONY SHOEMAKER, depose and state under PENALITY OF PERJURY, pursuant to Section 1-109 of the Illinois Code of Civil Procedure, that I am the defendant in the foregoing motion, that I have read the contents therein, and that such contents are both true and correct in substance and fact, and that I am competent to testify thereto if called upon to testify.

*Tony Shoemaker*

TONY SHOEMAKER
AFFIANT


067

A-3

NO. 4-01-0300

IN THE

APPELLATE COURT OF ILLINOIS

FOURTH JUDICIAL DISTRICT

---

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| | ) | the Seventh Judicial Circuit |
| Plaintiff-Appellee, | ) | Morgan County, Illinois |
| | ) | |
| vs. | ) | No.  00-CF-21 |
| | ) | |
| TONY W. SHOEMAKER, | ) | Honorable |
| | ) | J. David Bone |
| Defendant-Appellant. | ) | Judge Presiding. |

---

BRIEF AND ARGUMENT FOR PLAINTIFF-APPELLEE

Charles M. Colburn
State's Attorney
Morgan County Courthouse
Jacksonville, Illinois  62650

Norbert J. Goetten
Director
Robert J. Biderman
Deputy Director
Thomas R. Dodegge
Staff Attorney
State's Attorneys Appellate
     Prosecutor
725 South Second Street
Springfield, Illinois  62704
(217) 782 - 8076

COUNSEL FOR PLAINTIFF-APPELLEE

EXHIBIT G

<u>POINT AND AUTHORITIES</u>                    <u>PAGE</u>

I

THE TRUTH-IN-SENTENCING PROVISION DOES NOT

IMPLICATE <u>APPRENDI</u>...................................  2

<u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S. 466, 120 S.Ct.

    2438, 147 L.Ed.2d 435 (2000)....................  2

<u>People</u> v. <u>Garry</u>, 323 Ill.App.3d 292, 257 Ill.Dec.

    64, 752 N.E.2d 1244 (4th Dist. 2001)............  2

<u>People</u> v. <u>Newbolds</u>, ___ Ill.App.3d ___, ___

    Ill.Dec. ___, ___ N.E.2d ___ (No. 5-01-0162,

    October 2, 2001)................................  2

<u>People</u> v. <u>Jackson</u>, 319 Ill.App.3d 110, 253 Ill.Dec.

    211, 744 N.E.2d 1275 (4th Dist. 2001), <u>appeal</u>

    <u>allowed</u>, ___ Ill.2d ___, ___ Ill.Dec. ___, ___

    N.E.2d ___ (No. 91359, June 6, 2001)............  2

730 ILCS 5/3-6-3(a)(2)(ii)...........................  2

II

THE STATE WILL NOT CONTEST THAT DEFENDANT IS

ENTITLED TO A CREDIT AGAINST HIS SEXUAL ASSAULT

FINE...............................................  4

730 ILCS 5/5-9-1.7...................................  4

i

725 ILCS 5/110-14................................... 4

III

DEFENDANT'S REQUEST THAT THIS CASE BE REMANDED FOR

A HEARING ON INEFFECTIVENESS OF COUNSEL SHOULD BE

DENIED............................................. 5

People v. Krankel, 102 Ill.2d 181, 80 Ill.Dec. 62,

    464 N.E.2d 1045 (1984)........................... 8

People v. Jackson, 131 Ill.App.3d 128, 85 Ill.Dec.

    738, 474 N.E.2d 466 (4th Dist. 1985)............ 8

People v. Handy, 278 Ill.App.3d 829, 216 Ill.Dec.

    114, 664 N.E.2d 1042 (4th Dist. 1996)........... 9

People v. Pondexter, 214 Ill.App.3d 79, 157

    Ill.Dec. 921, 573 N.E.2d 339 (4th Dist. 1991)... 9

People v. Douglas, 296 Ill.App.3d 192, 230 Ill.Dec.

    696, 694 N.E.2d 665 (4th Dist. 1998)............ 9, 10

People v. Pope, 284 Ill.App.3d 330, 219 Ill.Dec. 750,

    672 N.E.2d 65 (1996)............................ 10, 11

People v. Markiewicz, 246 Ill.App.3d 31, 186

    Ill.Dec. 65, 615 N.E.2d 869 (2nd Dist. 1993).... 11

People v. Bien, 277 Ill.App.3d 744, 214 Ill.Dec.

    657, 661 N.E.2d 511 (4th Dist. 1996)............ 12

People v. Davison, 292 Ill.App.3d 981, 227 Ill.Dec.

    75, 686 N.E.2d 1231 (4th Dist. 1997)........... 12

People v. Hobley, 182 Ill.2d, 231 Ill.Dec. 321,

    696 N.E.2d 313 (1998)............................ 12

People v. Massa, 271 Ill.App.3d 75, 207 Ill.Dec.

    667, 648 N.E.2d 123 (1st Dist. 1995)............ 13

People v. Ramey, 152 Ill.2d 41, 178 Ill.Dec. 19,

    604 N.E.2d 275 (1992)........................... 13

## NATURE OF THE CASE

Defendant, Tony Shoemaker, pleaded guilty to aggravated criminal sexual assault and home invasion.  He was sentenced to consecutive terms of 30 years for each offense.  Defendant has appealed his convictions and sentences.

1

ARGUMENT

I

THE TRUTH-IN-SENTENCING PROVISION DOES NOT IMPLICATE <u>APPRENDI</u>.

Defendant pleaded guilty to home invasion and aggravated criminal sexual assault. (R. Vol. III, 15)  The trial court found that he had caused great bodily harm in committing the home invasion and that he was consequently required to serve 85% of his sentence for this offense (R. Vol. III, 61)

Defendant contends that the truth-in-sentencing provision (730 ILCS 5/3-6-3(a)(2)(ii)) is unconstitutional under <u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2438, 147 L.Ed.2d 435 (2000).

This argument was rejected by this court in <u>People</u> v. <u>Garry</u>, 323 Ill.App.3d 292, 257 Ill.Dec. 64, 752 N.E.2d 1244 (4th Dist. 2001).  <u>Garry</u> was followed in <u>People</u> v. <u>Newbolds</u>, ___ Ill.App.3d ___, ___ Ill.Dec. ___; ___ N.E.2d ___ (No. 5-01-0162, October 2, 2001).  <u>Garry</u> and <u>Newbolds</u> are dispositive of this case.

The State also notes that defendant pleaded guilty. (R. Vol. III, 15)  In <u>People</u> v. <u>Jackson</u>, 319 Ill.App.3d 110, 253 Ill.Dec. 211, 744 N.E.2d 1275, 1278 (4th Dist. 2001), <u>appeal</u>

2

<u>allowed</u>, ___ Ill.2d ___, ___ Ill.Dec. ___, ___ N.E.2d ___ (No.
91359, June 6, 2001), this court held that a defendant could
not raise an <u>Apprendi</u> issue if he pleaded guilty.

3

ARGUMENT

II

THE STATE WILL NOT CONTEST THAT DEFENDANT IS ENTITLED TO A
CREDIT AGAINST HIS SEXUAL ASSAULT FINE.


    The trial court imposed a $100 sexual assault fine
pursuant to 730 ILCS 5/5-9-1.7.  Defendant claims that he is
entitled to a credit against this fine under 725 ILCS 5/110-14
for the 122 days he spent incarcerated prior to his sentence
to the Department of Corrections.

    The State will not contest that defendant is entitled to
a $100 credit against his fine.

4

ARGUMENT

III

DEFENDANT'S REQUEST THAT THIS CASE BE REMANDED FOR A HEARING ON INEFFECTIVENESS OF COUNSEL SHOULD BE DENIED.

On May 8, 2000, defendant pleaded guilty to aggravated criminal sexual assault and home invasion (R. Vol. III, 15) after receiving thorough Rule 402 admonitions (R. Vol. III, 4-14). On June 16, 2000, the trial court conducted a sentencing hearing. (R. Vol. III, 22)    The victim testified in aggravation. (R. Vol. III, 27-40)  Defendant apologized for the crimes he had committed. (R. Vol. III, 54)    The trial court sentenced defendant to consecutive sentences of 30 years for home invasion and aggravated criminal sexual assault. (R. Vol. III, 61)

On July 5, 2000, defense counsel filed a motion to reduce sentence. (R. Vol. I, C33)  On July 7, 2000, defendant filed a pro se motion to withdraw guilty plea. (R. Vol. I, C42)  The pro se motion alleged that defendant did not think "that my P.D. gave me the right advice" and that defense counsel had said that he should not withdraw his guilty plea because they would be "slammed" in a jury trial. (R. Vol. I, C42)

5

On August 15, 2000, there was a hearing on the motion to reconsider. (R. Vol. II, 27)    The following exchanges occurred:

> [DEFENSE COUNSEL]: Your Honor, Mr. Shoemaker has recently been sentenced, within the last two months.  I filed a motion to reconsider that sentence, and I haven't had the opportunity, since Mr. Shoemaker has been in the Department of Corrections, to go visit him and discuss our next move.  And he didn't get some of my mail, and he turned around and filed his own motion.  So we need to kind of get this straightened out a little bit. I think there's two motions currently on file.  The Court may have dismissed his motion.
>
> THE COURT: All right.  How much more time would you need, sir?
>
> [DEFENSE COUNSEL]: 30 days, Your Honor.
>
> THE COURT: All right. State has no objection. Then we'll continue the hearing[.]

(R. Vol. II, 29)

Pursuant to the State's motion, defendant's pro se motion to withdraw guilty plea was stricken without objection. (R. Vol. II, 30)

On October 10, 2000, defendant filed another pro se petition to withdraw guilty plea and a pro se motion for appointment of new counsel. (R. Vol. I, C53, C56)    On October 16, 2000, defendant filed a letter requesting that the two motions he had previously filed be withdrawn. (R. Vol. I, C161)

6

A hearing was held on October 24, 2000, and defendant's pro se motions were stricken without objection. (R. Vol. II, 37, 40)  Defendant was called as a witness. (R. Vol. II, 41) He stated that he had been drinking heavily prior to the incident. (R. Vol. II, 42)  The State objected to this testimony, and the hearing was continued. (R. Vol. II, 45)

On March 19, 2001, defendant filed a pro se petition to reinstate motion to withdraw guilty plea. (R. Vol. I, C65)  I stated in part:

> 3. That had appointed counsel explored the defendant's circumstances and facts leading up to the defendant's arrest in the above captioned matter, it would have been discovered that the factual basis of the guilty plea is not substantiated by such facts and circumstances. Rather, said counsel had persistently advised defendant to plead guilty in exchange for leniency by the court, which said Counsel represented to defendant that he was "the man" with the ability to, and an established rapport with the sentencing judge, to be able to obtain a lenient and favorable sentence for defendant. Additionally, said counsel was unwilling, and in fact did not, file motions to suppress custodial statement, or for a change of venue to another county, nor any other pre-trial motions suggested by defendant, and viable under the circumstances of the case.

> 4. Notwithstanding the fact that defendant had expressed his desire to withdraw guilty plea, and made appointed counsel aware of the same prior to sentencing, the defendant nonetheless filed his pro-se motion to withdraw guilty plea, and to reduce sentence as required per recent Ill. Sct. Precedence, from the Graham Correctional Center on July 27, 2000.

(R. Vol. I, C65-C66)

7

This motion was stricken by the trial court on March 20, 2001. (R. Vol. II, 58)

On March 27, 2001, the hearing resumed. (R. Vol. II, 63) At the hearing, the following exchanges occurred:

> [DEFENSE COUNSEL]: He started to testify and the State objected, and the reason that it was continued at that time is that there was some question as to what he was going to testify to and our ability to present new evidence. Since that time Mr. Shoemaker and I have met three different times, and at this time we are simply going to offer argument only as to his motion.
>
> THE COURT: Yes. So counsel has consulted. Did you fill out the appropriate certificate?
>
> [DEFENSE COUNSEL]: I'm going to file the certificate this morning, Your Honor, after we have the hearing this morning.
>
> THE COURT: And no, no motions to modify the motion?
>
> [DEFENSE COUNSEL]: No. We are, we stand on the motion as it is filed.
>
> (R. Vol. II, 65-66)

After hearing arguments of counsel, the trial court denied the motion to reduce sentence. (R. Vol. II, 72) On April 3, 2001, defense counsel filed a Rule 604(d) certificate. (R. Vol. I, C68)

Defendant, primarily citing People v. Krankel, 102 Ill.2d 181, 80 Ill.Dec. 62, 464 N.E.2d 1045 (1984), and People v. Jackson, 131 Ill.App.3d 128, 85 Ill.Dec. 738, 474 N.E.2d 466

8

(4th Dist. 1985), contends that this case should be remanded to the trial court for a hearing concerning defendant's allegations of ineffective assistance of counsel.

As an initial matter, in People v. Handy, 278 Ill.App.3d 829, 216 Ill.Dec. 114, 664 N.E.2d 1042, 1046 (4th Dist. 1996), this court determined that a trial court had correctly ignored a defendant's pro se motion for reduction of sentence because he was represented by counsel. However, in People v. Pondexter, 214 Ill.App.3d 79, 157 Ill.Dec. 921, 573 N.E.2d 339, 345 (4th Dist. 1991), this court stated that the "only exception affording the right to file pro se motions while represented by counsel are motions directed to defendant's attorney representation."

The question posed is whether a remand is necessary because the trial court never ruled on the merits of defendant's motions, which involved defense counsel's representation. The State submits that no remand is necessary since defendant's allegations of ineffective assistance of counsel are clearly meritless.

In People v. Douglas, 296 Ill.App.3d 192, 230 Ill.Dec. 696, 694 N.E.2d 665 (4th Dist. 1998), it was stated:

> To establish that defendant was denied effective assistance of counsel in entering a guilty plea, defendant must demonstrate both (1) that his counsel's performance was deficient; and (2) prejudice to defendant (defined as a reasonable

9

probability that, but for counsel's errors,
defendant would not have pleaded guilty and would
have insisted on going to trial). Prejudice is
assessed in light of the likelihood of success at
trial, and if prejudice has not been demonstrated,
we need not consider whether counsel's performance
was deficient.

694 N.E.2d at 669.

People v. Pope, 284 Ill.App.3d 330, 219 Ill.Dec. 750, 672

N.E.2d 65 (1996), is analogous to the case at bar. In Pope,

the defendant expressed dissatisfaction with defense counsel's

representation in a statement which was included in the

presentence report. This court stated:

> When a *pro se* defendant raises a post-trial
> claim of ineffective assistance of counsel, the
> trial court may, under certain circumstances,
> appoint new counsel to assist the defendant in the
> presentation of his claim. *People v. Giles*, 261
> Ill.App.3d 833, 847, 200 Ill.Dec. 630, 640, 635
> N.E.2d 969, 979 (1994); *People v. Krankel*, 102
> Ill.2d 181, 189, 80 Ill.Dec. 62, 66, 464 N.E.2d
> 1045, 1049 (1984). The trial court should first
> conduct an "adequate inquiry" to determine the
> factual basis for defendant's claims. *People v.
> Johnson*, 159 Ill.2d 97, 125, 201 Ill.Dec. 53, 65,
> 636 N.E.2d 485, 497 (1994). If the court
> determines that the claims lack merit or pertain
> only to matters of trial strategy, then new counsel
> is unnecessary.

672 N.E.2d at 67.

> Defendant contends that because the trial
> court never conducted an inquiry into his
> allegations of ineffective assistance of counsel,
> we must remand for the court to conduct such an
> inquiry The trial court could then determine
> whether the appointment of new counsel is
> warranted. We disagree.

10

* * *

> Defendant's claims were either meritless on
> their face or unsupported by sufficient factual
> allegations.

672 N.E.2d at 68.

In the case at bar, as in <u>Pope</u>, defendant's claims were either meritless on their face or unsupported by sufficient factual allegations.

In his last petition (R. Vol. I, C65), defendant alleged that if defense counsel had investigated, he would have determined that the factual basis was not substantiated. (R. Vol. I, C65)    As discussed in <u>Pope</u>, whether a failure to investigate is incompetence depends on the value of the evidence.    672 N.E.2d at 68.    Here, defendant has failed to indicate what witnesses could have been contacted, what their potential testimony might have been, and how this evidence would have assisted his case.    As such, this allegation is pure speculation and cannot support a claim of ineffective assistance.    See <u>People</u> v. <u>Markiewicz</u>, 246 Ill.App.3d 31, 186 Ill.Dec. 65, 615 N.E.2d 869, 880 (2nd Dist. 1993) (when record did not disclose substance of expert's testimony, evidentiary value entirely speculative).

The State also observes that the record contains overwhelming evidence of defendant's guilt.    Defendant made a statement to the police in which he admitted committing the

11

offenses. (R. Vol. I, C127-C146)  At the sentencing hearing, he apologized for committing the offenses. (R. Vol. III, 54) At the sentencing hearing, the victim testified that she had known defendant for about four years. (R. Vol. III, 27)  She also testified that he had broken through a storm window in her basement. (R. Vol. III, 28)  This evidence belies the assertion in defendant's petition.

Defendant states that defense counsel advised him to plead guilty. (R. Vol. I, C65)  Given the evidence of defendant's guilt, this advice did not constitute ineffective assistance.  See People v. Bien, 277 Ill.App.3d 744, 214 Ill.Dec. 657, 661 N.E.2d 511, 516 (4th Dist. 1996).

The petition also claimed that defense counsel did not file certain pretrial motions suggested by defendant. (R. Vol. I, C65-C66)  The filing of these motions is a decision to be made by defense counsel (People v. Davison, 292 Ill.App.3d 981, 227 Ill.Dec. 75, 686 N.E.2d 1231, 1236 (4th Dist. 1997)) and is a matter of trial strategy (People v. Hobley, 182 Ill.2d 404, 231 Ill.Dec. 321, 696 N.E.2d 313, 337 (1998)).

The petition also states that defense counsel failed to file a motion to withdraw guilty plea. As discussed, supra, defendant has failed to establish any basis for his claim of ineffective assistance.  Also, as noted defendant received

12

thorough Rule 402 admonitions (R. Vol. III, 4-14), and there was overwhelming evidence of his guilt.

Defense counsel filed a Rule 604(d) certificate, which has not been challenged by defendant. (R. Vol. I, C68) The certificate stated that counsel had examined the report of proceedings and the trial court file. (R. Vol. I, C68)

Under the circumstances, defense counsel could not have been ineffective for filing a motion to reduce sentence as opposed to a motion to withdraw guilty plea. It was clearly his professional judgment that such a motion could not succeed. See People v. Massa, 271 Ill.App.3d 75, 207 Ill.Dec. 667, 648 N.E.2d 123, 129-130 (1st Dist. 1995) (no ineffective assistance during post-trial motion proceedings, where defense counsel filed 604(d) certificate).

In conclusion, in People v. Ramey, 152 Ill.2d 41, 178 Ill.Dec. 19, 604 N.E.2d 275 (1992), it was stated:

> After reviewing the record, we are sufficiently convinced that defendant's allegations of ineffective assistance either were spurious, related to trial tactics or not supported by the record. Therefore, we find that the trial court did not err in declining to appoint new counsel for defendant to argue his post-trial motion of ineffective assistance of counsel.

604 N.E.2d at 280.

The State suggests that the above statement is fully applicable to the case at bar.

13

<u>CONCLUSION</u>

WHEREFORE, the PEOPLE OF THE STATE OF ILLINOIS respectfully request this court to affirm the defendant's convictions and sentences, to reduce the sexual assault fine, and to tax costs accordingly.

Respectfully Submitted,

THE PEOPLE OF THE STATE OF ILLINOIS

Charles M. Colburn
State's Attorney
Morgan County Courthouse
Jacksonville, Illinois  62650

Norbert J. Goetten
Director
Robert J. Biderman
Deputy Director
Thomas R. Dodegge
Staff Attorney
State's Attorneys Appellate
    Prosecutor
725 South Second Street
Springfield, Illinois  62704
(217) 782 - 8076

COUNSEL FOR PLAINTIFF-APPELLEE

14

NO.  4-01-0300

IN THE

APPELLATE COURT OF ILLINOIS

FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the Circuit Court of |
| | ) the Seventh Judicial Circuit |
| Plaintiff-Appellee, | ) Morgan County, Illinois |
| | ) |
| vs. | ) No. 00-CF-21 |
| | ) |
| TONY W. SHOEMAKER, | ) Honorable |
| | ) J. David Bone |
| Defendant-Appellant. | ) Judge Presiding. |

## NOTICE AND PROOF OF SERVICE

TO:  Darryl Pratscher, Clerk          Daniel Yuhas
     Appellate Court, 4th Dist.       Office of the St.App.Dfndr.
     Supreme Court Building           400 S. Ninth, PO Box 5750
     Springfield, IL 62701            Springfield, IL 62705-5750

The undersigned certifies that six copies of the Brief and Argument of Plaintiff-Appellee were delivered to the Clerk of the Appellate Court; and three copies of same were served upon the defendant's Attorney of Record by enclosing said copies in an envelope addressed as indicated above and by depositing said envelope, with postage fully prepaid, in the U.S. Mail in Springfield, Illinois, on this 9th day of November, 2001.

_Shirley M. Bagby_
Shirley M. Bagby, Secretary
State's Attorneys Appellate
Prosecutor

NO. 4-01-0300

IN THE

APPELLATE COURT OF ILLINOIS

FOURTH JUDICIAL DISTRICT



SAAP FOURTH DISTRICT

MAR - 1 2002

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) ) | Appeal from the Circuit Court of the Seventh Judicial Circuit, Morgan County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| vs. | ) ) | No. 00-CF-21 |
| TONY W. SHOEMAKER, | ) ) | Honorable J. David Bone |
| Defendant-Appellant. | ) ) | Judge Presiding. |

## Supplemental Brief and Argument

## For Defendant-Appellant

DANIEL D. YUHAS
Deputy Defender
Office of the State Appellate Defender
Fourth Judicial District
400 South Ninth Street, Suite 102
P.O. Box 5750
Springfield, IL  62705-5750
(217) 782-3654

JEFFREY D. FOUST
Assistant Defender

COUNSEL FOR DEFENDANT-APPELLANT

EXHIBIT H

# Supplemental Point and Authorities

## IV.

**Because the trial court lacked authority to order 50 percent of Tony Shoemaker's Department of Corrections wages withheld and remitted to the circuit clerk toward restitution and costs, that order is void; therefore, this Court should vacate the withholding order, and any money already collected by the circuit clerk should be reimbursed to Mr. Shoemaker.**

*Drury v. County of McLean*, 89 Ill.2d 417, 433 N.E.2d 666 (1982) . . . . . . . . .  6

*People v. Arna*, 168 Ill.2d 107, 658 N.E.2d 445 (1995) . . . . . . . . . . . . . . . .  3

*People v. Meyerowitz*, 61 Ill.2d 200, 335 N.E.2d 1 (1975) . . . . . . . . . . . . . .  6

*People v. Davis*, 319 Ill.App.3d 572, 746 N.E.2d 758 (4th Dist. 2001) . . . . . . 4, 5

*People v. Terneus*, 239 Ill.App.3d 669, 607 N.E.2d 568 (4th Dist. 1992) . . . . .  5

730 ILCS 5/5-5-6(f) (West 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

730 ILCS 5/5-5-6(h) (West 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

730 ILCS 5/5-9-4 (West 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

735 ILCS 5/12-801 *et seq.* (West 2000) . . . . . . . . . . . . . . . . . . . . . . . . .  4

735 ILCS 5/12-803 (West 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

735 ILCS 5/12-805 (West 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

## Supplemental Issue Presented for Review

IV.

Because the trial court lacked authority to order 50 percent of Tony Shoemaker's Department of Corrections wages withheld and remitted to the circuit clerk toward restitution and costs, that order is void; therefore, this Court should vacate the withholding order, and any money already collected by the circuit clerk should be reimbursed to Mr. Shoemaker.

## Supplemental Argument

### IV.

### Because the Trial Court Lacked Authority to Order 50 percent of Tony Shoemaker's Department of Corrections Wages Withheld and Remitted to the Circuit Clerk Toward Restitution and Costs, That Order Is Void; Therefore, this Court Should Vacate the Withholding Order, and Any Money Already Collected by the Circuit Clerk Should Be Reimbursed to Mr. Shoemaker.

#### Standard of Review

The defendant in this case is requesting that this Court vacate the trial court's written order withholding 50 percent of the defendant's Department of Corrections wages. The defendant asserts that the trial court lacked any statutory authority to issue such an order. A sentence which does not conform to a statutory requirement is void. Because such an order is void, the Appellate Court has the authority to correct it at any time. *People v. Arna*, 168 Ill.2d 107, 658 N.E.2d 445, 448 (1995).

#### Argument

Tony W. Shoemaker was sentenced to two terms of 30 years' imprisonment to be served consecutively for the offenses of aggravated criminal sexual assault and home invasion. (Vol. I, C. 26) He was also ordered to pay court costs, a $100 sexual assault fine, $40,550 in restitution plus 9% interest. (Vol. I, C. 26) He was given credit for 122 days previously served in jail. (Vol. III, R. 64) The court further ordered that restitution and costs were to be paid by withholding 0% of the inmate's income. (See attached Mittimus) The written judgment er specifically stated:

-3-

> It is further ordered that the Illinois Department of Corrections is to withhold 50% (not to exceed 50%) of the inmate's monthly Corrections income and remit this amount to the Morgan County Circuit Clerk for application to the amounts due in this cause for a total amount due of $40,968.00. (See attached Mittimus)

The only statutory authority for withholding wages to pay restitution is an order of withholding, as provided for in subsection (h) of the restitution statute. 730 ILCS 5/5-5-6(h) (West 2000). However, subsection (h) specifically requires compliance with part 8 of article XII of the Code of Civil Procedure. 735 ILCS 5/12-801 *et seq.* (West 2000). This civil wages deduction process requires a summons of the employer and a hearing to determine the proper amount of deduction. 735 ILCS 5/12-805 (West 2000). It also sets the maximum limit of deductions at the lesser of either (1) 15 percent of gross pay or (2) the amount by which disposable earnings per week exceed 45 times the federal minimum hourly wage. The trial court's 50 percent withholding order in Tony Shoemaker's case does not comply with any of these requirements.

Moreover, the restitution statute itself specifically directs that the trial court "shall fix a period of time not in excess of 5 years, *not including periods of incarceration*, within which payment of restitution is to be paid in full." 730 ILCS 5/5-5-6(f) (West 2000) [*emphasis added*]. Thus, the General Assembly has specifically prohibited trial courts from forcing defendants to make payments toward restitution while they are still incarcerated.

In *People v. Davis*, 319 Ill.App.3d 572, 578, 746 N.E.2d 758, 764 (4th Dist. 2001) this Court held this procedure of ordering restitution was void. Specifically, this Court stated:

-4-

> The legislature has clearly and unambiguously stated its preferred method of determining if wage deduction is appropriate. Additionally, we note that, here, the amount of the withholding (50% of wages) may exceed the amount authorized under the civil wage deduction remedy. See 735 ILCS 5/12-803 (West 1998) (setting the maximum wage subject to collection).
>
> As a result, because the procedure employed in this case does not comport with the civil procedure for wage deduction, the wage deduction order is void, and it is vacated. In all other respects, the judgment of the circuit court of Adams County is affirmed. We remand for the limited purpose of amending the judgment by deleting the wage deduction provision therein.
>
> *People v. Davis*, 319 Ill.App.3d at 578, 746 N.E.2d at 764.

Because the procedure employed in this case does not comport with the civil procedure for wage deduction, the wage deduction order is void, and should be vacated.

In addition, according to the plain language of 730 ILCS 5/5-9-4 (West 1998), a trial court is authorized to enter an order of withholding to collect "fines" assessed in a criminal case. There is no statutory authority for entering an order to recover fees or costs. "Fees" and "costs" are not synonymous with the term "fines." *See People v. Terneus*, 239 Ill.App.3d 669, 672, 607 N.E.2d 568, 570 (4th Dist. 1992). Thus, the withholding order in this case, which is directed solely at fees and costs, was entered wholly without authority.

Moreover, not only do the relevant statutes in this case "not authorize" the withholding of the defendant's Department of Corrections income; when section 5-5-6(f) of the restitution statute is added to the analysis, the relevant statutes affirmatively prohibit such a withholding.

This Court should also order a refund of all wages illegally seized from Tony Shoemaker under the invalid sentencing order. The Illinois Supreme Court has recognized that fines paid under a vacated order must be reimbursed: "We are of the opinion that the money, having been received in payment of fines imposed as an incident to judgments of conviction, should be ordered refunded as an incident to the vacation of the judgments under which it was ordered paid." *People v. Meyerowitz*, 61 Ill.2d 200, 335 N.E.2d 1, 8 (1975) (fines paid under a vacated sentence for the sale of marijuana must be disgorged and refunded to the defendants).

In *Drury v. County of McLean*, 89 Ill.2d 417, 433 N.E.2d 666 (1982), the plaintiffs, who had been convicted for a criminal offense under an unconstitutional law, sought recovery of fines and costs they had paid to the Circuit Clerk, who was to distribute the money to the County. The Clerk disbursed the fine money to the City, and the costs paid by the plaintiffs to the County. The Illinois Supreme Court held that the County was liable for the money it actually received, and ordered the costs reimbursed to the plaintiffs. *Drury*, 433 N.E.2d at 669-670.

Because Tony Shoemaker's Department of Corrections income was illegally seized under a void order, this Court should vacate that order. In addition, under *Meyerowitz* and *Drury*, this Court should order that the amount already withheld from Mr. Shoemaker be refunded to the defendant.

## Conclusion

As an additional or alternate basis for relief, the defendant respectfully requests that this Court vacate the trial court's order requiring the Department of Corrections to withhold 50 percent of the defendant's monthly corrections income, and further order that the amount already withheld from Mr. Shoemaker be refunded to the defendant.


Respectfully submitted,


DANIEL D. YUHAS
Deputy Defender
Office of the State Appellate Defender
Fourth Judicial District
400 South Ninth Street, Suite 102
P.O. Box 5750
Springfield, IL  62705-5750
(217) 782-3654

JEFFREY D. FOUST
Assistant Defender

COUNSEL FOR DEFENDANT-APPELLANT

**Appendix**

## IN THE CIRCUIT COURT OF MORGAN COUNTY, ILLINOIS

### SEVENTH JUDICIAL CIRCUIT

PEOPLE OF THE STATE OF ILLINOIS )
    Plaintiff, )
Vs. )   Case No. 2000-CF-21  **FILED**
TONY W. SHOEMAKER )
    Defendant. )    JUN 19 2000

    *Darwin Y. Baker*

### JUDGMENT - SENTENCE TO ILLINOIS DEPARTMENT OF CORRECTIONS

    WHEREAS the above-named defendant **Tony W. Shoemaker** has been adjudged guilty of and stands convicted of a felony, date of birth **3/19/70**

    IT IS THEREFORE ORDERED that the defendant be and hereby is sentenced to confinement in the Illinois Department of Corrections for the term of years and months specified for each offense.

| COUNT | OFFENSE | DATE OF OFFENSE | STATUTORY CITATION | CLASS | SENTENCE |
|---|---|---|---|---|---|
| 1 | Aggravated Criminal Sexual Assault | On or about 2/16/00 | 720, 5/12-14 (a)(2) | X | 30 Yrs. 0 Mos. |

and said sentence shall run (concurrent with) (consecutive to) the sentence imposed on:

| | | | | | |
|---|---|---|---|---|---|
| 2 | Home Invasion | On or about 2/16/00 | 720, 5/12-11 (a)(2) | X | 30 Yrs. 0 Mos. |

and said sentence shall run (concurrent with) (consecutive to) the sentence imposed on:

_____ _____ _____ _____ _____Yrs. _____Mos.

~~Convicted of a class _____ offense but sentenced as a class X offender pursuant to 730 ILCS 5/5-5-3(c)(8).~~

    The Court finds that the defendant is entitled to receive credit for time actually served in custody (of **122** days as of the date of this order) from [specify dates]

    The Court further finds that the conduct leading to conviction for the offenses enumerated in counts **1 + 2** resulted in great bodily harm to the victim. (730 ILCS 5/3-6-3(a)(2)(ii).)

    IT IS FURTHER ORDERED that the sentence(s) imposed on count(s) _____ be (concurrent with) (consecutive to) the sentence imposed in case number _____ in the Circuit Court of _____ County; be (concurrent with)(consecutive to) the sentence imposed in case number _____ in the Circuit Court of _____ County; be (concurrent with)(consecutive to) the sentence imposed in case number _____ in the Circuit Court of _____ County.

    IT IS FURTHER ORDERED that the Clerk of the Court deliver a certified copy of this order to the Sheriff.

    IT IS FURTHER ORDERED that the Sheriff take the defendant into custody and deliver him to the Department of Corrections which shall confine said defendant until expiration of his sentence or until he is otherwise released by operation of law.

    IT IS FURTHER ORDERED that the Illinois Department of Corrections is to withhold **50** % [not to exceed 50%] of the inmate's monthly Corrections income and remit that amount to the Morgan County Circuit Clerk for application to amounts due in this cause, for a total amount due of $ **40,968.00**.

    IT IS FURTHER ORDERED **that defendant serve 3 years Mandatory Supervised Release Defendant ordered to pay court costs on each count, $100.00 sexual assault fine, $40,550.00 restitution plus 9% interest**
This order is ( **XXX** effective immediately) ( _____ stayed until _____ ).

DATE: **June 16, 2000**     ENTER: _____ JUDGE

    J. DAVID BONE, CIRCUIT JUDGE
    [PLEASE PRINT JUDGE'S NAME HERE]

**E-FILED**
Monday, 20 November, 2006  06:54:35 AM
Clerk, U.S. District Court, ILCD

NO.   4-01-0300

IN THE

APPELLATE COURT OF ILLINOIS

FOURTH JUDICIAL DISTRICT

---

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| | ) | the Seventh Judicial Circuit |
| Plaintiff-Appellee, | ) | Morgan County, Illinois |
| | ) | |
| vs. | ) | No.  00-CF-21 |
| | ) | |
| TONY W. SHOEMAKER, | ) | Honorable |
| | ) | J. David Bone |
| Defendant-Appellant. | ) | Judge Presiding. |

---

### SUPPLEMENTAL BRIEF AND ARGUMENT FOR PLAINTIFF-APPELLEE

Charles M. Colburn
State's Attorney
Morgan County Courthouse
300 West State
Jacksonville, Illinois 62650

Norbert J. Goetten
Director
Robert J. Biderman
Deputy Director
Thomas R. Dodegge
Staff Attorney
State's Attorneys Appellate
        Prosecutor
725 South Second Street
Springfield, Illinois  62704
(217) 782 - 8076

COUNSEL FOR PLAINTIFF-APPELLEE

EXHIBIT I

<u>POINT AND AUTHORITIES</u>                    <u>PAGE</u>

THE STATE WILL NOT CONTEST THAT THE WAGE DEDUCTION

ORDER IS VOID.    HOWEVER, DEFENDANT IS NOT ENTITLED TO

A REFUND ORDER IN THE CURRENT APPELLATE PROCEEDING  . . .  1


<u>People</u> v. <u>Davis</u>, 319 Ill.App.3d 572, 254 Ill.Dec.

    1, 746 N.E.2d 758 (4th Dist. 2001) . . . . . . . . 1, 2

<u>People</u> v. <u>Meyerowitz</u>, 61 Ill.2d 200, 335 N.E.2d 1

    (1975) . . . . . . . . . . . . . . . . . . . . . 2

<u>Drury</u> v. <u>County of McLean</u>, 89 Ill.2d 417, 60 Ill.Dec.

    624, 433 N.E.2d 666 (1982) . . . . . . . . . . 2, 3, 4

730 ILCS 5/5-9-1.7 . . . . . . . . . . . . . . . . . . 3

Ill.S.Ct. Rule 615(b) . . . . . . . . . . . . . . . . 2, 3

## SUPPLEMENTAL ARGUMENT

THE STATE WILL NOT CONTEST THAT THE WAGE DEDUCTION ORDER IS
VOID.  HOWEVER, DEFENDANT IS NOT ENTITLED TO A REFUND ORDER IN
THE CURRENT APPELLATE PROCEEDING.

The sentencing order in the case at bar stated in part:

IT IS FURTHER ORDERED that the Illinois Department
of corrections is to withhold __50 %__ [not to exceed
50%] of the inmate's monthly Corrections income and
remit that amount to the Morgan County Circuit
clerk for application to amounts due in this cause,
for a total amount due of $40,960.00.

*        *        *

Defendant ordered to pay court costs on each count,
$100.00 sexual assault fine, $40,550.00 restitution
plus 9% interest.

(Appendix)

Defendant filed a supplemental brief contending that the
wage deduction order entered by the trial court was void and
that this court should direct that any money collected by the
circuit clerk under the order be returned to defendant.

Based upon the decision of this court in People v. Davis,
319 Ill.App.3d 572, 254 Ill.Dec. 1, 746 N.E.2d 758, 764 (4th
Dist. 2001), the State will not contest that the order is
void, since there is no evidence in the record that a wage
deduction proceeding was conducted.  Davis also holds that

1

this issue is not subject to waiver.  <u>Davis</u>, 746 N.E.2d at 764.

Next, citing <u>People</u> v. <u>Meyerowitz</u>, 61 Ill.2d 200, 335 N.E.2d 1 (1975), and <u>Drury</u> v. <u>County of McLean</u>, 89 Ill.2d 417, 60 Ill.Dec. 624, 433 N.E.2d 666 (1982), defendant contends that this court should also order a refund of all wages seized from defendant under the order.  The State submits that the cases cited by defendant do not support this contention.

In <u>Meyerowitz</u>, the court held that fines paid as a result of void convictions could be recovered in proceedings to terminate probation, without separate proceedings. <u>Meyerowitz</u>, 335 N.E.2d at 8.  The State contends that <u>Meyerowitz</u> does not apply to the case at bar for the reasons set forth below.

Initially, the refund in <u>Meyerowitz</u> was first sought in the trial court.  <u>Meyerowitz</u>, 335 N.E.2d at 3.  Here, this issue was never raised in the trial court.  Supreme Court Rule 615(b) provides:

> (b)  **Power of the Reviewing Court.**  On appeal the reviewing court:
>
>  (1)  reverse, affirm, or modify the judgement or order from which the appeal is taken;
>
>  (2)  set aside, affirm, or modify any or all of the proceedings subsequent to or dependent upon the judgment or order from which the appeal is

2

taken;

(3)    reduce the degree of the offense of
       which the appellant was convicted;

(4)    reduce the punishment imposed by the
       trial court; or

(5)    order a new trial.

Since this is a court of appellate jurisdiction and this issue was never addressed by the trial court, the State questions whether it should be considered on appeal.    It suggests that the order sought by defendant would exceed modifying the order from which an appeal was taken, since such a reimbursement order was never considered at the trial level.

In Drury, the court distinguished Meyerowitz and concluded that a county could not be ordered to repay a fine, where it had never received the money.    Here, the $40,550.00 in restitution would benefit the victim, not the county. Also, under 730 ILCS 5/5-9-1.7, sexual assault fines are not paid to the county.    Therefore, Drury refutes, rather than supports, defendant's contention as to the restitution and sexual assault fine.

Finally, as to the costs, the court in Drury stated:

The appellate court and the plaintiffs in this cause have relied on our statement in Meyerowitz that "[a]n action to recover fines monies paid under an unconstitutional statute * * * resemble[s] the common law action for money had and received" (61 Ill.2d 200, 212, 335 N.E.2d 1).    An action for

3

> money had and received in the nature of an action
> in assumpsit is maintainable where defendant has
> received money which in equity and good conscience
> belongs to the plaintiff.

<u>Drury</u>, 433 N.E.2d at 670.

Defendant does not contest that he remains liable for the costs assessed by the trial court. Thus, unlike in <u>Meyerowitz</u>, this amount is not money which in equity and good conscience belongs to the defendant, and <u>Meyerowitz</u> does not apply.

4

**A P P E N D I X**

IN THE CIRCUIT COURT OF MORGAN COUNTY, ILLINOIS

SEVENTH JUDICIAL CIRCUIT

PEOPLE OF THE STATE OF ILLINOIS ) 
    Plaintiff, )    Case No. 2000-CF-21    **FILED**
Vs. )
TONY W. SHOEMAKER )     JUN 19 2000
    Defendant. )

JUDGMENT - SENTENCE TO ILLINOIS DEPARTMENT OF CORRECTIONS

WHEREAS the above-named defendant Tony W. Shoemaker has been adjudged guilty of the above offense(s) with a birth date of birth 3/19/70

IT IS THEREFORE ORDERED that the defendant be and hereby is sentenced to confinement in the Illinois Department of Corrections for the term of years and months specified for each offense.

| COUNT | OFFENSE | DATE OF OFFENSE | STATUTORY CITATION | CLASS | SENTENCE |
|---|---|---|---|---|---|
| 1 | Aggravated Criminal Sexual Assault | On or about 2/16/00 | 720, 5/12-14 (a) (2) | X | 30 Yrs 0 Mos. |

and said sentence shall run (concurrent with) (consecutive to) the sentence imposed on:

| 2 | Home Invasion | On or about 2/16/00 | 720, 5/12-11 (a) (2) | X | 30 Yrs 0 Mos. |

and said sentence shall run (concurrent with) (consecutive to) the sentence imposed on: _____ Yrs. _____ Mos.

Convicted of a class _____ offense but sentenced as a class X offender pursuant to 730 ILCS 5/5-5-3(c)(8).

The Court finds that the defendant is entitled to receive credit for time actually served in custody (of 122 days as of the date of this order) from [specify dates] _____

The Court further finds that the conduct leading to conviction for the offenses enumerated in counts 1 + 2 resulted in great bodily harm to the victim. (730 ILCS 5/3-6-3(a)(2)(ii)).

IT IS FURTHER ORDERED that the sentence(s) imposed on count(s) _____ be (concurrent with) (consecutive to) the sentence imposed in the Circuit Court of _____ County; be (concurrent with) (consecutive to) the sentence imposed in case number _____ in the Circuit Court of _____ County; be (concurrent with) (consecutive to) the sentence imposed in case number _____ in the Circuit Court of _____ County.

IT IS FURTHER ORDERED that the Clerk of the Court deliver a certified copy of this order to the Sheriff.

IT IS FURTHER ORDERED that the Sheriff take the defendant into custody and deliver him to the Department of Corrections which shall confine said defendant until expiration of his sentence or until he is otherwise released by operation of law.

IT IS FURTHER ORDERED that the Illinois Department of Corrections is to withhold 50 % (not to exceed 50%) of the inmate's monthly Corrections income and remit that amount to the Morgan County Circuit Clerk for application to amounts due in this cause, for a total amount due of $ 40,968.00.

IT IS FURTHER ORDERED that defendant serve 3 years Mandatory Supervised Release Defendant ordered to pay court costs on each count, $100.00 sexual assault fine, $40,550.00 restitution plus 9% interest

This order is ( XXX effective immediately) ( stayed until _____ )

DATE: June 16, 2000      ENTER: _____ JUDGE

J. DAVID BONE, CIRCUIT JUDGE
[PLEASE PRINT JUDGE'S NAME HERE]

NO: 4-01-0300

IN THE

APPELLATE COURT OF ILLINOIS

FOURTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the Circuit Court of |
| | ) | the Seventh Judicial Circuit |
| Plaintiff-Appellee, | ) | Morgan County, Illinois |
| | ) | |
| Vs. | ) | No. 00-CF-21 |
| | ) | |
| TONY W. SHOEMAKER, | ) | Honorable |
| | ) | J. David Bone |
| Defendant-Appellant. | ) | Judge Presiding. |

## NOTICE AND PROOF OF SERVICE

TO:  Darryl Pratscher, Clerk,              Daniel D. Yuhas
     Fourth District Appellate Court    Office of the St.Apel.Dfndr.
     201 W. Monroe, P.O. Box 19206      400 S. Ninth St., Suite 102
     Springfield, IL 62794-9206         P.O. Box 5750
                                         Springfield, IL 62705-5750

The undersigned certifies that six copies of Plaintiff-Appellee's Supplemental Brief and Argument were delivered to the Clerk of the Appellate Court; and three copies of same were served upon the defendant's Attorney of Record by enclosing said copies in an envelope addressed as indicated above, and by depositing said envelope, with postage fully prepaid, in the U.S. Mail in Springfield, Illinois, on this 13th day of March, 2002.

_____
Carol Smith, Secretary
State's Attorneys Appellate Prosecutor

E-FILED
Monday, 20 November 2006  06:54:47 AM
Clerk, U.S. District Court, ILCD

NO. 4-01-0300

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
APR  8 2002
CLERK OF THE
APPELLATE COURT, 4TH DIST.

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Morgan County |
| TONY W. SHOEMAKER, | ) | No. 00CF21 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | J. David Bone, |
| | ) | Judge Presiding. |

---

## ORDER

Defendant Tony W. Shoemaker appeals from the March 27,
2001, order of the Morgan County circuit court denying his motion
to reconsider sentence.  We affirm in part, vacate in part,
reverse in part, and remand with instructions.

### I. BACKGROUND

On May 8, 2000, defendant entered an open plea of
guilty to one count of aggravated criminal sexual assault (720
ILCS 5/12-14(a)(2) (West 2000)) and one count of home invasion
(720 ILCS 5/12-11(a)(2) (West 2000)).  Defendant was fully
admonished.  The trial court sentenced defendant to 30 years in
prison on each count, to be served consecutively.  Defendant was
ordered to pay court costs, a $100 sexual assault fine, and
$40,550 in restitution plus 9% interest.  The Illinois Department
of Corrections (DOC) was ordered to withhold 50% of defendant's
monthly corrections income to be remitted to the Morgan County
circuit clerk as payment toward the above amounts due in this
case.  The "truth-in-sentencing" provision of section 3-6-

3(a)(2)(ii) of the Unified Code of Corrections (Unified Code)
(730 ILCS 5/3-6-3(a)(2)(ii) (West 2000)) was also applied,
ensuring that defendant would serve at least 85% of those 60
years.

Defendant's appointed trial counsel filed a motion to
reconsider sentence on June 5, 2000. Two days later, defendant
filed a pro se motion for reduction of sentence, motion to
withdraw guilty plea and vacate sentence, and motion for appoint-
ment of new counsel. Defendant's pro se motions essentially
alleged ineffective assistance of counsel.

On August 15, 2000, a hearing was held on defendant's
counsel's motion to reconsider sentence. A 30-day continuance
was granted on defendant's request. Defendant's pro se motions
were stricken without consideration because defendant was repre-
sented by counsel.

On October 10, 2000, defendant filed a pro se petition
to reinstate his motion to withdraw his guilty plea and motion
for appointment of new counsel, again alleging ineffective
assistance of counsel. This pro se petition was stricken on
October 16, 2000, per defendant's request because he wanted to
change some things and refile.

On March 19, 2001, defendant filed another pro se
petition to reinstate his motion to withdraw guilty plea, again
alleging ineffective assistance of counsel. This petition was
stricken without consideration on March 20, 2001, because defen-
dant was represented by counsel.

- 2 -

On March 27, 2001, the trial court heard the unmodified July 5, 2000, motion to reconsider sentence filed by defendant's counsel.  The motion was denied.  Defendant appeals.

## II. ANALYSIS

Defendant raises four issues on appeal:  (1) the "truth-in-sentencing" provision of section 3-6-3(a)(2)(ii) of the Unified Code (730 ILCS 5/3-6-3(a)(2)(ii) (West 2000)) is unconstitutional under the United States Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000); (2) defendant is entitled to a $510 credit against his fine; (3) the case should be remanded because the trial court erred by not inquiring into defendant's claim of ineffective assistance of counsel; and (4) the order directing DOC to withhold 50% of defendant's monthly corrections income toward payment of restitution and costs is void.  We address each issue in turn

### A. Apprendi Challenge

Defendant argues that his sentence must be vacated because the "truth-in-sentencing" provision of section 3-6-3(a)(2)(ii) of the Unified Code is unconstitutional under the United States Supreme Court's decision in Apprendi.  This court specifically found that the "truth-in-sentencing" provision of section 3-6-3(a)(2)(ii) does not implicate Apprendi issues in People v. Garry, 323 Ill. App. 3d 292, 752 N.E.2d 1244 (2001), appeal denied, 196 Ill. 2d 552, ___ N.E.2d ___ (2001).  Garry is dispositive on the issue.  Defendant's argument is without merit.

## B. Credit Against Defendant's Fine

Defendant argues, and the State concedes, that defendant is entitled to a $510 credit toward his $100 fine for the 122 days at $5 per day he spent in jail prior to his sentencing. See 725 ILCS 5/110-14 (West 1998). Because the amount credited cannot exceed the amount of the fine, the case is remanded with instructions to give defendant a $100 credit against his fine. 725 ILCS 5/110-14 (West 1998).

## C. The Trial Court's Failure To Inquire into Defendant's Claim of Ineffective Assistance of Counsel

Defendant argues that this case must be remanded because the trial court erred when it dismissed without consideration his pro se motions claiming ineffective assistance of counsel. We agree.

The general rule is that a court can and should ignore pro se motions that are filed by defendants who are represented by counsel; a defendant has no right to self-representation and the assistance of counsel. People v. Pondexter, 214 Ill. App. 3d 79, 87, 573 N.E.2d 339, 345 (1991). When a defendant elects to be represented by counsel, the defendant retains the right to make decisions regarding fundamental rights, but strategic matters are left to the attorney. Pondexter, 214 Ill. App. 3d at 87, 573 N.E.2d at 345. "The only exception affording the right to file pro se motions while represented by counsel are motions directed to defendant's attorney's representation." (Emphasis added.) Pondexter, 214 Ill. App. 3d at 88, 573 N.E.2d at 345. Without this exception, a defendant represented by appointed

- 4 -

counsel could not argue his counsel was ineffective unless and until he convinced his counsel to argue his or her own ineffectiveness.  This is clearly an untenable position for a defendant. In this case, defendant's motions were directed to his attorney's representation.  Therefore, the trial court erred in striking defendant's motions without consideration on the basis that defendant was represented by counsel.

In a case such as this where a defendant's request for new appointed counsel is denied, the Illinois Supreme Court has stated that "the operative concern for the reviewing court is whether the trial court conducted an <u>adequate inquiry</u> into the <u>pro se</u> defendant's allegations of ineffective assistance of counsel."  (Emphasis added.)  <u>People v. Johnson</u>, 159 Ill. 2d 97, 125, 636 N.E.2d 485, 497 (1994).  If the posttrial claim of ineffective assistance lacked merit or went to matters of strategy, then a trial court is correct not to appoint new counsel; if the claim has merit, new counsel should be appointed to argue the claim of ineffective assistance.  <u>Johnson</u>, 159 Ill. 2d at 124, 636 N.E.2d at 497.

The trial court was required to make an adequate inquiry in this case into defendant's claims of ineffective assistance before summarily dismissing those claims.  <u>Johnson</u>, 159 Ill. 2d at 124-25, 636 N.E.2d at 497.  The trial court made no inquiry, however, on the incorrect belief that it did not need to because defendant was represented by counsel.  No inquiry is not an adequate inquiry.  The trial court's decision put defen-

dant in the untenable position of being unable to question his attorney's effectiveness unless his attorney argued his own ineffectiveness.

The State apparently recognizes that the trial court should have made some inquiry into defendant's claims of ineffective assistance of counsel.  The State argues, however, that remand for the trial court to inquire into defendant's claim of ineffective assistance is unnecessary because this court can determine that the claim is clearly meritless.  In support of its argument, the State cites to this court's decision in People v. Pope, 284 Ill. App. 3d 330, 335, 672 N.E.2d 65, 69 (1996) (failure to make an adequate inquiry into the defendant's claim of ineffective assistance did not require remand because the claims were without merit and unsupported by sufficient facts).  We find Pope distinguishable and find that remand is necessary for the trial court to consider defendant's claims of ineffective assistance.

In Pope, this court noted as a threshold matter that the trial court's duty to inquire into the defendant's claim was limited because defendant had not filed a pro se motion or requested appointment of new counsel.  Pope, 284 Ill. App. 3d at 334, 672 N.E.2d at 68.  In this case, however, defendant did file a pro se motion and did request appointment of new counsel, so the trial court's duty to investigate defendant's claim was not limited for that reason.

- 6 -

### D. The Trial Court Did Not Have Authority To Order DOC To Withhold 50% of Defendant's Monthly Corrections Income Toward Payment of Restitution and Costs

Defendant next argues that the trial court did not have authority to order DOC to withhold 50% of his monthly corrections income toward payment of restitution and costs, and, therefore, that order is void and all money collected pursuant to that void order must be returned to defendant. We agree. No authority exists for a trial court to direct that DOC withhold wages earned while a defendant is imprisoned, and that part of a sentencing order directing DOC to withhold corrections wages is void. People v. Williamson, 319 Ill. App. 3d 891, 900, 747 N.E.2d 26, 34 (2001), appeal denied, 195 Ill. 2d 597, 755 N.E.2d 483 (2001); see also People v. Watson, 318 Ill. App. 3d 140, 142-43, 743 N.E.2d 147, 149 (2000), appeal denied, 195 Ill. 2d 570, 754 N.E.2d 1291 (2001). Because the withholding order was void, the money paid pursuant to the void order must be returned to defendant. See Buzz Barton & Associates, Inc. v. Giannone, 108 Ill. 2d 373, 381-82, 483 N.E.2d 1271, 1275 (1985). We therefore vacate that part of defendant's sentencing order directing DOC to withhold defendant's corrections wages.

### III. CONCLUSION

We affirm the convictions and sentence imposed by the trial court. We vacate the order directing DOC to withhold 50% of defendant's corrections income. We reverse the trial court's order striking defendant's pro se motions and remand for an adequate inquiry into the factual basis for defendant's claims of

- 7 -

ineffective assistance of counsel.  We further order the trial court to credit $100 toward defendant's fine.

Affirmed in part, vacated in part, and reversed in part; cause remanded with directions.

COOK, J., with MYERSCOUGH, J., concurring.

TURNER, J., concurring in part and dissenting in part.

- 8 -

JUSTICE TURNER, specially concurring in part and dissenting in part:

I concur with the majority to affirm the sentence imposed by the trial court.  I also concur to remand the cause with instructions to give defendant a $100 credit against his fine and to vacate that part of defendant's sentencing order directing DOC to withhold defendant's correction wages.

I respectfully dissent with the majority order to remand for an inquiry into the factual basis for defendant's claim of ineffective assistance of counsel.  Defendant alleged that if his attorney had investigated he would have determined that the factual basis for the plea was not substantiated.  As noted in Pope, whether a failure to investigate is incompetence depends on the value of the evidence.  Pope, 284 Ill. App. 3d at 334, 672 N.E.2d at 68.  Here, defendant did not identify the witnesses who could or should have been contacted.  Defendant also failed to allege the substance of the evidence from these "potential" witnesses or how such evidence would have assisted defendant's case.  Hence, defendant's claims were either meritless on their face or unsupported by sufficient factual allegations.  Pope, 284 Ill. App. 3d at 334, 672 N.E.2d at 68. Accordingly, I would affirm the trial court's order striking defendant's pro se motions and denying defendant's motion to reconsider sentencing.

- 9 -

FILE COPY

E-FILED
Monday, 20 November, 2006  06:55:04 AM
Clerk, U.S. District Court, ILCD

MAY 1 5 2002

SAAP FOURTH DISTRICT

NO.

IN THE

SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Appellate Court of Illinois, Fourth Judicial District, No. 4-01-0300. |
| Plaintiff-Respondent, | ) ) | |
| | ) ) | There on appeal from the Circuit Court of the Seventh Judicial |
| vs. | ) ) ) | Circuit, Morgan County, Illinois. No.  00-CF-21. |
| | ) | |
| TONY SHOEMAKER, | ) ) | Honorable J. David Bone, |
| Defendant-Petitioner. | ) | Judge Presiding. |

## Petition for Leave to Appeal

DANIEL D. YUHAS
Deputy Defender
Office of the State Appellate Defender
Fourth Judicial District
400 South Ninth Street, Suite 102
P.O. Box 5750
Springfield, IL  62705-5750
(217) 782-3654

JEFFREY D. FOUST
Assistant Defender

COUNSEL FOR PETITIONER-APPELLANT

***ORAL ARGUMENT REQUESTED***

EXHIBIT K

NO.

IN THE

## SUPREME COURT OF ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the Appellate Court<br>) of Illinois, Fourth Judicial District,<br>) No. 4-01-0300. |
| Plaintiff-Respondent, | )<br>) There on appeal from the Circuit<br>) Court of the Seventh Judicial |
| vs. | ) Circuit, Morgan County, Illinois.<br>) No.  00-CF-21. |
| TONY SHOEMAKER, | )<br>) Honorable<br>) J. David Bone, |
| Defendant-Petitioner. | ) Judge Presiding. |

## Petition for Leave to Appeal

TO THE HONORABLE JUSTICES OF THE SUPREME COURT OF THE
STATE OF ILLINOIS:

May It Please The Court:

## I.

## Prayer for Leave to Appeal

Now comes, defendant-petitioner, and respectfully petitions this Court

pursuant Illinois Supreme Court Rules 315 and 612(b) for leave to appeal from

the judgement of the Appellate Court of Illinois, Fourth Judicial District, which

affirmed the petitioner's conviction and sentence.

-1-

## II.

## Proceedings in the Appellate Court

On April 8, 2002, the Appellate Court of Illinois, Fourth Judicial District, affirmed the petitioner's conviction and sentence in this case, but vacated the order directing the Department of Corrections to withhold 50% of the defendant's corrections income, ordered the trial court to credit $100 toward the defendant's fine and reversed the trial court's order striking the defendant's *pro se* motions and remanded for an adequate inquiry into the factual basis for the defendant's claims of ineffective assistance of counsel. The petitioner filed an affidavit of intent to seek leave to appeal on April 17, 2002. No petition for rehearing was filed.

## III.

## Reasons for Granting Review

Leave to appeal should be granted because the Appellate Court order affirming the petitioner's sentence in error where the Truth-In-Sentencing scheme violates the right to due process and a jury trial by subjecting defendants to increased punishment without pretrial notice or allegation in the charging instrument, or mandating a jury finding, of the facts necessary for imposition of the increased term of imprisonment. *See, Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), here, the trial court's finding that the defendant caused "great bodily harm" was in excess of any finding of the jury and resulted in the defendant receiving only 15% credit rather than day-for-day credit for time he serves in prison.

# IV.

## Point Relied upon for Reversal

Whether the Truth-In-Sentencing scheme violates the right to due process and a jury trial by subjecting defendants to increased punishment without pretrial notice or allegation in the charging instrument, or mandating a jury finding, of the facts necessary for imposition of the increased term of imprisonment.

# V.

## Statement of Facts

On February 18, 2000, the defendant was charged in Morgan County no. 00-CF-21 with aggravated criminal sexual assault and home invasion. (Vol. I, C. 6-8)

On May 8, 2000, the guilty plea hearing was held. (Vol. III, R. 3) The court was informed by the State that aggravated criminal sexual assault was subject to 85% actual time in the Department of Corrections and, if the court found at the sentencing hearing that the home invasion was accompanied by great bodily harm, it would also be subject to 85% actual time served. (Vol. III, R. 3) The court could also impose an extended term sentence if it found that the defendant's behavior was accompanied by brutal or heinous behavior indicative of wanton cruelty. (Vol. III, R. 4) There is also mandatory consecutive sentencing in this case. (Vol. III, R. 4) The defendant was admonished concerning the sentencing range, good-time credit and the mandatory consecutive sentence. (Vol. III, R. 10) The defendant was admonished concerning the rights he would be relinquishing if he pled guilty. (Vol. III, R. 11-15) The defendant signed a plea of guilty and a jury waiver. (Vol. I, C. 24) The defendant pled guilty to both counts. (Vol. III, R. 15) The court found the defendant knowingly and voluntarily pled guilty. (Vol. III, R. 15)

The factual basis was that, without authority, the defendant entered the dwelling of the complainant at 807 West College Street in Jacksonville on February 16, 2000. (Vol. III, R. 15) With the use of force the defendant then performed sexual intercourse on her, struck her and caused bodily harm to her.

(Vol. III, R. 16)  The trial court accepted the defendant's plea of guilty.  (Vol. III, R. 16)

The presentence report was filed on June 8, 2000.  (Envelope)  The defendant was arrested on February 16, 2000, and remained in custody. (Presentence Report at 80)

The sentencing hearing was held on June 16, 2000.  (Vol. III, R. 24)  The presentence report was corrected to reflect that the defendant was convicted of unlawful restraint in 1991 rather than 1999 as listed in the report.  (Vol. III, R. 24)

Sandra Herald, the victim, testified.  (Vol. III, R. 27)  Evidence concerning medical expenses was presented.  (Vol. III, R. 37-38)  The defendant apologized for what he had done and stated he needed help.  (Vol. III, R. 54)  The trial court found that during the home invasion the defendant caused great bodily harm and must serve 85%.  (Vol. III, R. 61)

Tony W. Shoemaker was sentenced to two terms of 30 years' imprisonment to be served consecutively for the offenses of aggravated criminal sexual assault and home invasion.  (Vol. I, C. 26)  He was also ordered to pay court costs, a $100 sexual assault fine, $40,550 in restitution plus 9% interest.  (Vol. I, C. 26) He was given credit for 122 days previously served in jail.  (Vol. III, R. 64)

A motion to reconsider sentence was filed on July 5, 2000.  (Vol. I, C. 33) On July 7, 2000, the defendant filed a *pro se* motion to withdraw his guilty plea and vacate sentence.  (Vol. I, C. 42)

A hearing on the motion to reconsider sentence was held on August 15, 2000.  (Vol. II, R. 27)  During the hearing, defense counsel noted that he had not had an opportunity to discuss the post-sentencing options with the defendant

and that, in addition to counsel's motion to reconsider sentence, the defendant filed a *pro se* motion. (Vol. II, R. 30) The defendant was not present at the hearing. The State moved to dismiss the *pro se* motion and the Court granted the motion to dismiss. (Vol. II, R. 30) The hearing was continued.

On October 10, 2000, the defendant filed another petition to reinstate motion to withdraw guilty plea. (Vol. I, C. 53) The defendant also filed a motion for new counsel. (Vol. I, C. 53)

The hearing was held on October 24, 2000. (Vol. II, R. 37) The remainder of the defendant's *pro se* motions were struck without objection. (Vol. II, R. 40) Tony Shoemaker testified that on the day of the offense he arose in the morning and started drinking. He had been drinking heavily for sometime and had passed out from drinking the night before. (Vol. II, R. 43) The hearing resumed on March 20, 2001. (Vol. II, R. 56) On March 19, 2001, the defendant filed another motion to reinstate motion to withdraw guilty plea. (Vol. I, C. 65) The defendant's most recent motion was stricken because he was represented by counsel. (Vol. II, R. 59) On March 27, 2001, the hearing again resumed. (Vol. II, R. 63) The motion to reconsider sentence was denied. (Vol. II, R. 72)

On April 3, 2001, defense counsel filed a certificate pursuant to Supreme Court Rule 604(d). Notice of appeal was filed on April 3, 2001. (Vol. I, C. 70) The Office of the State Appellate Defender was appointed as counsel on appeal. (Vol. I, C. 71)

# VI.

## Argument

**The Truth-In-Sentencing Scheme Violates the Right to Due Process and a Jury Trial by Subjecting Defendants to Increased Punishment Without Pretrial Notice or Allegation in the Charging Instrument, or Mandating a Jury Finding, of the Facts Necessary for Imposition of the Increased Term of Imprisonment.**

Tony Shoemaker was sentenced to 30 years' imprisonment for home invasion and thirty years' imprisonment for aggravated criminal sexual assault to be served consecutively. The trial court noted that defendant was entitled to only 15% good time credit and made a finding of "great bodily harm" to the victim on the count of home invasion.

Section 3-6-3(a)(2)(ii) of the Unified Code of Corrections mandates that a prisoner serving a term of imprisonment for certain specific crimes receive no more than 4.5 days of good conduct credit for each month served. 730 ILCS 5/3-6-3(a)(2)(ii) (West 2000). This statute decreasing Mr. Shoemakers' day-for-day good conduct credit does not require that he be given pre-trial notice of the facts qualifying him for this enhanced sentence, nor does it require the facts be charged in the indictment. The statute does not mandate that the facts qualifying Mr. Shoemaker for only 15% good time credit be determined by a jury upon proof beyond a reasonable doubt. The absence of these constitutional protections violated due process.

The United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), requires that Mr. Shoemakers' 15% credit be vacated and the cause be remanded for imposition of day-for-day credit. In *Apprendi*, the Supreme Court held that

"[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 147 L.Ed.2d at 446.  Such facts must also be included in the charging instrument. *Apprendi*, 147 L.E.2d at 446.  The constitutional basis for this holding is of "surpassing importance" and two-fold: the Fourteenth Amendment protection against the deprivation of liberty without due process of law and the Sixth Amendment right to a jury trial. *Apprendi*, 147 L.E.2d at 447; U.S. Const., amends. VI, XIV.

The Court in *Apprendi* invalidated a New Jersey statute that permitted a sentencing judge to enhance a defendant's sentence beyond the prescribed maximum if the judge found, by a preponderance of the evidence, that the crime was committed with a racially biased purpose. *Apprendi*, 147 L.E.2d at 455. Historically, the court noted, no distinction between an "element" and a "sentencing factor" existed; the elements of an "offense" included every fact that would increase the range of punishment. *Apprendi*, 147 L.E.2d at 448.  Merely because the state legislature placed the additional factor within the sentencing provisions of the criminal code did not mean that it was not an essential element of the offense. *Apprendi*, 147 L.Ed.2d at 458.  "[T]he relevant inquiry is one not of form, but of effect – does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi*, 147 L.Ed.2d at 457.

The Illinois truth-in-sentencing statute bears the same constitutional defects as the New Jersey statute invalidated in *Apprendi.*  Like the New Jersey statute, the Illinois statute makes no provision for notice of the possibility of the imposition of only 15% good time credit, nor concomitantly does it require it to

be included in the charging indictment. 730 ILCS 5/3-6-3(a)(2)(ii) (West 2000). The United States Supreme Court has recognized the indictment's fundamental role in warning a defendant of facts that may enhance his punishment upon conviction. *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). Furthermore, the statute does not mandate that a defendant be provided with the right to have a jury determination of facts which would cause the defendant to lose day-for-day good time credit.

The trial court's finding that Tony Shoemaker caused "great bodily harm" was in excess of any finding of the jury. Tony Shoemaker was charged by information with home invasion in that he "knowingly and without authority entered the dwelling of Sandy Herald . . . knew that Sandy Herald was present . . . and intentionally caused injury to Sandy Herald." (Vol. I, C. 8) The information did not allege "great bodily harm," but only injury. The defendant was not charged with conduct that caused "great bodily harm." The finding of the trial court was beyond that facts pled in the information.

The holding in *Apprendi* makes clear that such statutes are invalid because they violate a defendant's constitutional rights by permitting an increase in the penalty for an offense beyond that of the statutory maximum based on facts that are not pled before trial, submitted to a jury, or proved beyond a reasonable doubt. U.S. Const., amends. V, VI, XIV; *Apprendi*, 147 L.Ed.2d at 447. The Illinois truth-in-sentencing statute, according to the decision in *Apprendi*, thus is unconstitutional as it runs afoul of the Sixth and Fourteenth Amendments to the U.S. Constitution, and any sentence imposed pursuant to it is void.

-10-

The New Jersey Supreme Court recently applied the doctrine of constitutional doubt to invalidate the No Early Release Act (hereinafter NERA), a statute very similar to the Illinois truth-in-sentencing statute. *State v. Johnson*, 166 N.J. 523, 766 A.2d 1126 (2001), N.J. Stat. Ann. section 2C:43-7.2. Under the doctrine of constitutional doubt, "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Johnson*, 166 N.J. at 534, 766 A.2d at 1132, *citing Almendarez-Torres v. United States*, 523 U.S. 224, 250, 118 S.Ct. 1219, 1234, 140 L.Ed.2d 350, 372 (1998), *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408, 29 S.Ct. 527, 536, 53 L.Ed. 836, 849 (1909).

The statute in question in *Johnson* provided for enhanced sentences for convictions which included "violent crime" as defined in the statute. In *Johnson*, the defendant was found guilty by a jury of robbery, possession of a firearm with intent to use it unlawfully against a person, and possession of a firearm without a permit. *Johnson*, 166 N.J. at 528, 766 A.2d at 1129. At sentencing, the State requested that NERA be applied because Johnson had aimed a BB gun at the victim and threatened her. The trial court, without hearing any additional evidence, made a determination that Johnson committed a violent crime and thus was eligible for sentencing under NERA. *Johnson*, 166 N.J. at 529, 766 A.2d at 1129. The New Jersey Supreme Court concluded that NERA "simply requires that the NERA factor be established at a hearing after the defendant's conviction, without specifying whether the hearing is before the judge or the jury, or the applicable standard of proof." *Johnson*, 166 N.J. at 539-40, 766 A.2d at 1137. The Court noted that "[l]ike the Court in *Apprendi*, we find

-11-

fundamental constitutional concerns with the notion that a prosecutor could use a judicial hearing under subsection (e) of NERA to shift to the trial court the burden of finding predicate facts chargeable as elements of crimes in our criminal statutes." *Johnson*, 166 N.J. at 543, 766 A.2d at1138. Wishing to avoid a "constitutional concern," the Court held that whether a "violent crime" had occurred must be submitted to a jury and found beyond a reasonable doubt. *Johnson*, 166 N.J. at 543-44, 766 A.2d at 1138.

The truth-in-sentencing statute bears the same defects as NERA. It allows a fact which increases the defendant's sentence to be established by the trial court at sentencing, without being pled in the indictment or proven to the jury, and without a clear standard of proof. This Court should apply the doctrine of constitutional doubt and, relying on the United States Supreme Court's precedent in *Apprendi*, invalidate this statute.

Mr. Shoemaker is entitled to raise the constitutionality of 730 ILCS 5/3-6-3(a)(2)(ii) for the first time on direct appeal from trial. The constitutionality of a statute may be raised at any time. *People v. Bryant*, 128 Ill.2d 448, 539 N.E.2d 1221, 1223-24 (1990). An unconstitutional statute is void *ab initio*, meaning that it is, "in legal contemplation, as though no such law had ever been passed." *People v. Zeisler*, 125 Ill.2d 42, 531 N.E.2d 24, 27-28 (1988). Void judgments can be attacked at any time. *People v. Arna*, 168 Ill.2d 107, 658 N.E.2d 445, 448 (1995). Because Mr. Shoemaker was sentenced pursuant to such an unconstitutional, and thus void, statute, he may raise this issue for the first time on direct appeal. In addition, a finding of forfeiture would be inappropriate under Illinois Supreme Court Rule 615(a), because the defendant's substantial right not to be sentenced in excess of the maximum allowed by law is implicated.

-12-

*See Arna*, 658 N.E.2d at 448; *People v. Boatman*, 312 Ill.App.3d 340, 726 N.E.2d 1178, 1180 (4ᵗʰ Dist. 2000). Counsel is aware of this Court's decision in *People v. Jackson*, __ Ill.2d __, __ N.E.2d __, (2002) (No. 90976, 4/18/02), where this Court found that the "brutal and heinous" extended term factor is not void on it's face and, thus, is waived by a guilty plea. However, this Cour should reconsider this holds in light of Justice Harrison's dissent in *People v. Jackson*.

Accordingly, the defendant respectfully requests that this Court grant leave to appeal and vacate the sentencing order, and either remand the cause for resentencing or order the mittimus amended to reflect full sentencing credit.

# VII.

# Conclusion

Review by the Supreme Court is warranted because the Appellate Court order affirming the petitioner's conviction and sentence was in error where the trial court where the Truth-In-Sentencing scheme violates the right to due process and a jury trial by subjecting defendants to increased punishment without pretrial notice or allegation in the charging instrument, or mandating a jury finding, of the facts necessary for imposition of the increased term of imprisonment. *See, Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), here, the trial court's finding that the defendant caused "great bodily harm" was in excess of any finding of the jury and resulted in the defendant receiving only 15% credit rather than day-for-day credit for time he serves in prison.

WHEREFORE, the defendant-petitioner respectfully requests that this Honorable Court grant leave to appeal as a matter of sound judicial discretion under Supreme Court Rule 315 and reverse the decision of the Appellate Court affirming the petitioner's conviction and sentence.

Respectfully submitted,

DANIEL D. YUHAS
Deputy Defender
Office of the State Appellate Defender
Fourth Judicial District
400 South Ninth, Suite 102
P.O. Box 5750
Springfield, IL 62705-5750
(217) 782-3654

JEFFREY D. FOUST
Assistant Defender

COUNSEL FOR DEFENDANT-PETITIONER

-14-

# Appendix

NO. 4-01-0300

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED

APR 8 2002

CLERK OF THE
APPELLATE COURT, 4TH DIST.

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Morgan County |
| TONY W. SHOEMAKER, | ) | No. 00CF21 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | J. David Bone, |
| | ) | Judge Presiding. |

ORDER

Defendant Tony W. Shoemaker appeals from the March 27, 2001, order of the Morgan County circuit court denying his motion to reconsider sentence. We affirm in part, vacate in part, reverse in part, and remand with instructions.

I. BACKGROUND

On May 8, 2000, defendant entered an open plea of guilty to one count of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(2) (West 2000)) and one count of home invasion (720 ILCS 5/12-11(a)(2) (West 2000)). Defendant was fully admonished. The trial court sentenced defendant to 30 years in prison on each count, to be served consecutively. Defendant was ordered to pay court costs, a $100 sexual assault fine, and $40,550 in restitution plus 9% interest. The Illinois Department of Corrections (DOC) was ordered to withhold 50% of defendant's monthly corrections income to be remitted to the Morgan County circuit clerk as payment toward the above amounts due in this case. The "truth-in-sentencing" provision of section 3-6-

A-1

3(a)(2)(ii) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/3-6-3(a)(2)(ii) (West 2000)) was also applied, ensuring that defendant would serve at least 85% of those 60 years.

Defendant's appointed trial counsel filed a motion to reconsider sentence on June 5, 2000. Two days later, defendant filed a pro se motion for reduction of sentence, motion to withdraw guilty plea and vacate sentence, and motion for appointment of new counsel. Defendant's pro se motions essentially alleged ineffective assistance of counsel.

On August 15, 2000, a hearing was held on defendant's counsel's motion to reconsider sentence. A 30-day continuance was granted on defendant's request. Defendant's pro se motions were stricken without consideration because defendant was represented by counsel.

On October 10, 2000, defendant filed a pro se petition to reinstate his motion to withdraw his guilty plea and motion for appointment of new counsel, again alleging ineffective assistance of counsel. This pro se petition was stricken on October 16, 2000, per defendant's request because he wanted to change some things and refile.

On March 19, 2001, defendant filed another pro se petition to reinstate his motion to withdraw guilty plea, again alleging ineffective assistance of counsel. This petition was stricken without consideration on March 20, 2001, because defendant was represented by counsel.

- 2 -

A-2

On March 27, 2001, the trial court heard the unmodified July 5, 2000, motion to reconsider sentence filed by defendant's counsel. The motion was denied. Defendant appeals.

## II. ANALYSIS

Defendant raises four issues on appeal: (1) the "truth-in-sentencing" provision of section 3-6-3(a)(2)(ii) of the Unified Code (730 ILCS 5/3-6-3(a)(2)(ii) (West 2000)) is uncon-stitutional under the United States Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000); (2) defendant is entitled to a $510 credit against his fine; (3) the case should be remanded because the trial court erred by not inquiring into defendant's claim of ineffective assistance of counsel; and (4) the order directing DOC to withhold 50% of defendant's monthly corrections income toward payment of restitution and costs is void. We address each issue in turn

### A. Apprendi Challenge

Defendant argues that his sentence must be vacated because the "truth-in-sentencing" provision of section 3-6-3(a)(2)(ii) of the Unified Code is unconstitutional under the United States Supreme Court's decision in Apprendi. This court specifically found that the "truth-in-sentencing" provision of section 3-6-3(a)(2)(ii) does not implicate Apprendi issues in People v. Garry, 323 Ill. App. 3d 292, 752 N.E.2d 1244 (2001), appeal denied, 196 Ill. 2d 552, ___ N.E.2d ___ (2001). Garry is dispositive on the issue. Defendant's argument is without merit.

- 3 -

## B. Credit Against Defendant's Fine

Defendant argues, and the State concedes, that defendant is entitled to a $510 credit toward his $100 fine for the 122 days at $5 per day he spent in jail prior to his sentencing. See 725 ILCS 5/110-14 (West 1998). Because the amount credited cannot exceed the amount of the fine, the case is remanded with instructions to give defendant a $100 credit against his fine. 725 ILCS 5/110-14 (West 1998).

## C. The Trial Court's Failure To Inquire into Defendant's Claim of Ineffective Assistance of Counsel

Defendant argues that this case must be remanded because the trial court erred when it dismissed without consideration his pro se motions claiming ineffective assistance of counsel. We agree.

The general rule is that a court can and should ignore pro se motions that are filed by defendants who are represented by counsel; a defendant has no right to self-representation and the assistance of counsel. People v. Pondexter, 214 Ill. App. 3d 79, 87, 573 N.E.2d 339, 345 (1991). When a defendant elects to be represented by counsel, the defendant retains the right to make decisions regarding fundamental rights, but strategic matters are left to the attorney. Pondexter, 214 Ill. App. 3d at 87, 573 N.E.2d at 345. "The only exception affording the right to file pro se motions while represented by counsel are motions directed to defendant's attorney's representation." (Emphasis added.) Pondexter, 214 Ill. App. 3d at 88, 573 N.E.2d at 345. Without this exception, a defendant represented by appointed

- 4 -

A-4

counsel could not argue his counsel was ineffective unless and until he convinced his counsel to argue his or her own ineffectiveness.  This is clearly an untenable position for a defendant. In this case, defendant's motions were directed to his attorney's representation.  Therefore, the trial court erred in striking defendant's motions without consideration on the basis that defendant was represented by counsel.

In a case such as this where a defendant's request for new appointed counsel is denied, the Illinois Supreme Court has stated that "the operative concern for the reviewing court is whether the trial court conducted an <u>adequate</u> <u>inquiry</u> into the <u>pro</u> <u>se</u> defendant's allegations of ineffective assistance of counsel." (Emphasis added.) <u>People v. Johnson</u>, 159 Ill. 2d 97, 125, 636 N.E.2d 485, 497 (1994).  If the posttrial claim of ineffective assistance lacked merit or went to matters of strategy, then a trial court is correct not to appoint new counsel; if the claim has merit, new counsel should be appointed to argue the claim of ineffective assistance. <u>Johnson</u>, 159 Ill. 2d at 124, 636 N.E.2d at 497.

The trial court was required to make an adequate inquiry in this case into defendant's claims of ineffective assistance before summarily dismissing those claims. <u>Johnson</u>, 159 Ill. 2d at 124-25, 636 N.E.2d at 497.  The trial court made no inquiry, however, on the incorrect belief that it did not need to because defendant was represented by counsel.  No inquiry is not an adequate inquiry.  The trial court's decision put defen-

- 5 -

A - 5

dant in the untenable position of being unable to question his attorney's effectiveness unless his attorney argued his own ineffectiveness.

The State apparently recognizes that the trial court should have made some inquiry into defendant's claims of ineffective assistance of counsel. The State argues, however, that remand for the trial court to inquire into defendant's claim of ineffective assistance is unnecessary because this court can determine that the claim is clearly meritless. In support of its argument, the State cites to this court's decision in People v. Pope, 284 Ill. App. 3d 330, 335, 672 N.E.2d 65, 69 (1996) (failure to make an adequate inquiry into the defendant's claim of ineffective assistance did not require remand because the claims were without merit and unsupported by sufficient facts). We find Pope distinguishable and find that remand is necessary for the trial court to consider defendant's claims of ineffective assistance.

In Pope, this court noted as a threshold matter that the trial court's duty to inquire into the defendant's claim was limited because defendant had not filed a pro se motion or requested appointment of new counsel. Pope, 284 Ill. App. 3d at 334, 672 N.E.2d at 68. In this case, however, defendant did file a pro se motion and did request appointment of new counsel, so the trial court's duty to investigate defendant's claim was not limited for that reason.

- 6 -

A - 6

D. The Trial Court Did Not Have Authority To Order DOC To With-
hold 50% of Defendant's Monthly Corrections Income Toward Payment
of Restitution and Costs

Defendant next argues that the trial court did not have
authority to order DOC to withhold 50% of his monthly corrections
income toward payment of restitution and costs, and, therefore,
that order is void and all money collected pursuant to that void
order must be returned to defendant.  We agree.  No authority
exists for a trial court to direct that DOC withhold wages earned
while a defendant is imprisoned, and that part of a sentencing
order directing DOC to withhold corrections wages is void.
People v. Williamson, 319 Ill. App. 3d 891, 900, 747 N.E.2d 26,
34 (2001), appeal denied, 195 Ill. 2d 597, 755 N.E.2d 483 (2001);
see also People v. Watson, 318 Ill. App. 3d 140, 142-43, 743
N.E.2d 147, 149 (2000), appeal denied, 195 Ill. 2d 570, 754
N.E.2d 1291 (2001).  Because the withholding order was void, the
money paid pursuant to the void order must be returned to defen-
dant.  See Buzz Barton & Associates, Inc. v. Giannone, 108 Ill.
2d 373, 381-82, 483 N.E.2d 1271, 1275 (1985).  We therefore
vacate that part of defendant's sentencing order directing DOC to
withhold defendant's corrections wages.

### III. CONCLUSION

We affirm the convictions and sentence imposed by the
trial court.  We vacate the order directing DOC to withhold 50%
of defendant's corrections income.  We reverse the trial court's
order striking defendant's pro se motions and remand for an
adequate inquiry into the factual basis for defendant's claims of

- 7 -

ineffective assistance of counsel.  We further order the trial court to credit $100 toward defendant's fine.

Affirmed in part, vacated in part, and reversed in part; cause remanded with directions.

COOK, J., with MYERSCOUGH, J., concurring.

TURNER, J., concurring in part and dissenting in part.

- 8 -

A - 8

JUSTICE TURNER, specially concurring in part and dissenting in part:

I concur with the majority to affirm the sentence imposed by the trial court.  I also concur to remand the cause with instructions to give defendant a $100 credit against his fine and to vacate that part of defendant's sentencing order directing DOC to withhold defendant's correction wages.

I respectfully dissent with the majority order to remand for an inquiry into the factual basis for defendant's claim of ineffective assistance of counsel.  Defendant alleged that if his attorney had investigated he would have determined that the factual basis for the plea was not substantiated.  As noted in <u>Pope</u>, whether a failure to investigate is incompetence depends on the value of the evidence.  <u>Pope</u>, 284 Ill. App. 3d at 334, 672 N.E.2d at 68.  Here, defendant did not identify the witnesses who could or should have been contacted.  Defendant also failed to allege the substance of the evidence from these "potential" witnesses or how such evidence would have assisted defendant's case.  Hence, defendant's claims were either meritless on their face or unsupported by sufficient factual allegations.  <u>Pope</u>, 284 Ill. App. 3d at 334, 672 N.E.2d at 68.  Accordingly, I would affirm the trial court's order striking defendant's <u>pro</u> <u>se</u> motions and denying defendant's motion to reconsider sentencing.

- 9 -

**E-FILED**
Monday, 20 November, 2006 06:55:16 AM
Clerk, U.S. District Court, ILCD

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

93885

OCT - 3 2002

SAAP FOURTH DISTRICT

October 2, 2002

State's Attorneys App. Pros. Springfield
Fourth Judicial District
725 South Second Street
Springfield, IL 62704

No.  93885 - People State of Illinois, respondent, v. Tony W.
          Shoemaker, petitioner.  Leave to appeal, Appellate
          Court, Fourth District.

The Supreme Court today DENIED the petition for leave to

appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court

on October 24, 2002.

EXHIBIT L

## IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT OF ILLINOIS
## JACKSONVILLE, MORGAN COUNTY, ILLINOIS

THE PEOPLE OF THE STATE              )
OF ILLINOIS,                         )
                                     )
          Plaintiff,                 )
                                     )
vs.                                  )        NO. 2000-CF-21
                                     )
TONY SHOEMAKER,                      )                    **FILED**
                                     )
          Defendant.                 )                    SEP 26 2003

                                              THERESA LONERGAN
                                              Clerk of Circuit Court Morgan Co. IL

### POST TRIAL MOTION

NOW COMES the Defendant, TONY SHOEMAKER, by his attorney, Kenneth D. Dobson, and herewith prays that he be granted leave by this Court to withdraw the guilty plea entered in this cause, or, in the alternative, that this Court reconsider the sentence imposed upon him, and in support thereof, states:

### Withdrawal of Guilty Plea

1.    That on May 8, 2000, the Defendant did plead guilty to the offense of aggravated criminal sexual assault and home invasion.

2.    That the plea entered by the Defendant was not voluntary in that it was the result of the ineffective assistance and advice of counsel in the following respects:

PD-203-096/KDD/mdh                    -1

C161

85

EXHIBIT M

A.    That counsel for the Defendant failed to effectively consult with the Defendant concerning evidentiary issues and potential defenses prior to the Defendant entering his plea in this cause;

B.    That counsel for the Defendant failed to file a motion to suppress statements made by the Defendant during interrogation by Lieutenant Neil Snelling of the Jacksonville Police Department wherein the Defendant was made various promises and subject to coercive interrogation in order to elicit incriminating information from the Defendant in violation of the Constitutional rights of the Defendant;

C.    That counsel for the Defendant did not require that the defense be provided the results of various DNA testing that was performed and did not investigate whether the results of said tests would exculpate the Defendant or otherwise raise a potential reasonable doubt of the Defendant's guilt;

D.    That counsel for the Defendant failed to provide the Defendant with the documents contained in the People's disclosure, including all investigative reports, statements, and other information so that the Defendant could review the evidence the State intended to offer at trial, such that the Defendant could make an intelligent and

PD-203-096/KDD/mdh                    -2-



knowing decision regarding whether to proceed to trial and present a defense rather than entering an open plea of guilty;

E. That counsel for the Defendant failed to file a motion to suppress the arrest of the Defendant when the Defendant was arrested without a warrant within the home of another person and without consent to enter the premises when such a motion may have resulted in the exclusion of all evidence resulting from the arrest of the Defendant, including statements made by the Defendant and physical evidence collected from the Defendant; and,

F. That counsel for the Defendant failed to file a motion to withdraw the Defendant's guilty plea prior to sentencing after being requested to do so by the Defendant.

## Reconsideration of Sentence

1. That on February 16, 2000, Defendant was sentenced to two terms of thirty years imprisonment with said terms to be served consecutively.

2. That the sentence imposed by the Court was excessive and did not properly take into account the factors in mitigation including the lack of a criminal history sufficient to warrant a maximum sentence.

PD-203-096/KDD/mdh

-3



87

3.    That counsel for the Defendant was ineffective in representing the interests of the Defendant at the sentencing hearing in the following respects:

A.    That counsel for the Defendant did not object to the introduction at sentencing of uncharged criminal conduct purportedly occurring at Nicholas Park in Jacksonville, Morgan County, Illinois, which the Defendant did not commit and was never charged;

B.    That counsel for the Defendant failed to call any witnesses at sentencing who would have testified as to the good character of the Defendant and the potential for rehabilitation of the Defendant. Affidavits of said witnesses indicating that they were not contacted by counsel are attached hereto as Group Exhibit "A";

C.    That counsel for the Defendant made prejudicial remarks against the Defendant during sentencing in which counsel stated that Defendant's acts were "...one of the most filthy, disgusting things I have ever heard of..."; "I mean, being around him, I'm not real happy." Said statements did nothing to further the interests of the Defendant at sentencing and further prejudiced the Court against the Defendant;

PD-203-096/KDD/mdh                           -4-

E.    That counsel for the Defendant failed to allow the Defendant to testify concerning the Defendant's version of the circumstances surrounding the alleged offense which would have mitigated the seriousness of the offense and resulted in the Court imposing a lesser sentence on the Defendant; and,

F.    That counsel for the Defendant was otherwise ineffective in presenting sufficient evidence at sentencing which would allow the Court to impose a lesser sentence on the Defendant.

WHEREFORE, the Defendant, TONY SHOEMAKER, prays that this Honorable Court enter an order vacating the guilty plea of the Defendant and allowing the Defendant to proceed to trial in this cause, or, in the alternative, reconsider the sentence imposed on the Defendant following the presentation of evidence of the Defendant in mitigation and therafter reduce the sentence imposed on the Defendant, together with granting the Defendant such other and different relief as may be just and proper under the circumstances.

_____
KENNETH D. DOBSON, attorney for
Defendant

PD-203-096/KDD/mdh                              -5

**<u>ATTORNEY FOR DEFENDANT:</u>**
KENNETH D. DOBSON
ATTORNEY AT LAW
LEEFERS LAW OFFICES
210 North West Street
Jacksonville, IL  62650
Ph:  (217) 245-5500
Fax:  (217) 245-4600
Atty. Reg. No. 06224804

C146

90

## CERTIFICATE OF SERVICE

The undersigned certifies that true and complete copies of the foregoing documents were duly served on all parties who appeared and have not theretofore been found by the court to be in default for failure to plead, or upon the attorneys of record for represented parties as disclosed by the pleadings, in the following manner and upon those at addresses hereafter indicated:

By hand delivering said copies in sealed envelopes addressed to said parties, or if represented by counsel of record then to said attorneys, at the addresses set forth below.

Parties and/or counsel for parties served and addresses:

**Mr. Charles Colburn
Morgan County State's Attorney
Morgan County Courthouse
300 West State Street
Jacksonville, IL  62650**

**FILED**

**SEP 2 6 2003**

THERESA LONERGAN
Clerk of Circuit Court Morgan Co. IL

Dated: September _26_ , 2003 _____

## PEOPLE'S SUBPOENA FOR WITNESSES

### Case No.  00-CF-21

STATE OF ILLINOIS          )          THE PEOPLE OF THE STATE OF ILLINOIS
                                  ) ss.   to the Sheriff of Morgan County
COUNTY OF MORGAN      )          GREETING:

    WE COMMAND YOU TO SUMMON **RICHARD K. CREWS, 301 W. State Street, Jacksonville, Illinois  62650** to appear before the Circuit Court of said County, at the Courthouse in Jacksonville in said County, on **Tuesday**, the **30th** day of **September A.D., 2003 at 2:00 p.m.** to testify and the truth to speak in behalf of THE PEOPLE OF THE STATE OF ILLINOIS in a cause now pending in said Court, wherein the People of the State of Illinois are plaintiffs and **Tony W. Shoemaker**, Defendant.

    And have you then and there this Writ, with a return thereon, showing in what manner you have executed the same.

**FILED**

SEP 2 9 2003

THERESA LONERGAN
Clerk of Circuit Court Morgan ... il.

WITNESS, Teresa Lonergan, Clerk of said Court, and the seal thereof, at her office in Jacksonville in said County, this **29th** day of **September**, A.D., **2003.**

_Theresa Lonergan_ sc
_____
Circuit Clerk

STATE OF ILLINOIS     )
                            ) SS
COUNTY OF _____  )

    I have duly served the within by reading the same to the within named as I am therein commanded.

Jim Robson
by _____
Sheriff

Fees—Service....................$_____
    _____miles travel...$ _____
    Return...................$_____

8468

92

E-FILED
Monday, 20 November, 2006  06:55:45 AM
Clerk, U.S. District Court, ILCD

IN THE
SEVENTH JUDICIAL CIRCUIT COURT
MORGAN COUNTY, ILLINOIS

==================================================================

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) |
| PLAINTIFF, | ) ) |
| -VS- | ) ) Case No.  00-CF-21 |
| TONY SHOEMAKER, | ) ) ) |
| DEFENDANT. | ) |

==================================================================

NOTICE OF FILING

TO: CHARLES M. COLBURN
    STATE'S ATTORNEY, MORGAN COUNTY
    MORGAN COUNTY COURT HOUSE
    300 WEST STATE STREET
    JACKSONVILLE, ILLINOIS 62650

FILED
MAY 3 0 2003

THERESA LONG
Clerk of Circuit Court Mo...

**Please take notice that on**, May 30, 2003, I filed with the circuit court of Morgan County, the attached **PETITION FOR POST CONVICTION RELIEF, MOTION TO PROCEED IN FORMA PAUPERIS, MOTION FOR APPOINTMENT OF COUNSEL, MEMORANDUM OF LAW IN SUPPORT OF THE PETITION FOR POST CONVICTION RELIEF**, A copy of which is served on you.

State of Illinois )
                  ) ss:
County of Randolph)

**AFTER BEING DULY SWORN**, the defendant states that he served the attached notice on the above named person, by placing a true and correct copy in a envelope, addressed as shown above with the proper U.S. Postage on each and deposited the envelopes in the U.S. Mail, at the Menard Correctional Center in Menard Illinois, 62259.

Signed,

*Tony Shoemaker.*

Subscribed and Sworn to
before me on this 24'12
Day of _May_ ,2003
By: _____

NOTARY PUBLIC

Tony Shoemaker, #B-23560
Menard Correctional Center
Post Box 711
Menard Illinois, 62259

"OFFICIAL SEAL"
Patricia Luers
Notary Public, State of Illinois
My Commission Exp. 12/15/2011

EXHIBIT N

IN THE

SEVENTH JUDICIAL CIRCUIT COURT

MORGAN COUNTY, ILLINOIS

===================================================================

| | |
|---|---|
| THE PEOPLE OF THE<br>STATE OF ILLINOIS,<br><br>   PLAINTIFF,<br><br>   -VS-<br><br>TONY SHOEMAKER,<br><br>   DEFENDANT. | )<br>)<br>)<br>)<br>)<br>)   Case No. 00-CF-21<br>)<br>)<br>)<br>) |

**FILED**

**MAY 3 0 2003**

THERESA LONEHG—N
Clerk of Circuit Court Morgan Co. IL

===================================================================

### MOTION TO PROCEED IN FORMA PAUPERIS

NOW COMES, the DEFENDANT, TONY SHOEMAKER, pro-se, and moves
this Honorable Court, Pursuant to the Illinois Compiled
Statues 735 ILCS 5/5-105 (Poor Person), for an order granting
leave to proceed in Forma Pauperis, without payment of costs
and fees, and without giving security thereof.

In Support thereof, the Defendant, States the following:

1. That He is presently incarcerated in the Menard
   Correctional Center, in Menard Illinois 62259.

2. That he has NO assets, no monies, no securities, nor
   Stocks, Bonds, or Real Estate.

3. That he is without sufficient funds or property to pay
   for the costs and fees of this proceeding, or to hire a
   Attorney to represent him in this matter.

4. That he believes he has a meritorious claim that should
   be heard by this Honorable Court.

   WHEREFORE, the Defendant prays this Honorable Court will
grant the leave to file and proceed in Forma Pauperis in the
above entitled cause.

Signed,

Subscribed and Sworn to

before me on this 24

Day of May ,2003

By: _____

NOTARY PUBLIC

*Tony Shoemaker.*
Tony Shoemaker, #B-23560
Menard Correctional Center
Post Box 711
Menard, Illinois 62259

"OFFICIAL SEAL"
Patricia Luers
Notary Public, State of Illinois
My Commission Exp. 12/15/2004

42

IN THE
SEVENTH JUDICIAL CIRCUIT COURT
MORGAN COUNTY, ILLINOIS

=================================================================

| | |
|---|---|
| THE PEOPLE OF THE<br>STATE OF ILLINOIS,<br><br>  PLAINTIFF,<br><br>-vs-<br><br>TONY SHOEMAKER<br><br>  DEFENDANT. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.   00-CF-21

**FILED**

**MAY 3 0 2003**

THERESA LONEHGAN
Clerk of Circuit Court Morgan Co.

=================================================================

MOTION FOR THE APPOINTMENT OF COUNSEL

**NOW COMES, the DEFENDANT, TONY SHOEMAKER**, pro-se, and moves this
Honorable Court, Pursuant to The Illinois Compiled Statues, 735
ILCS 5/5-105, for an order granting Appointment of Counsel in the
Above Captioned proceeding.

**In support thereof**, the Defendant states asfollows:

1. That He is presently incarcerated in the Menard
   Correctional Facility in Menard Illinois, 62259.

2. That he has no assets, no monies, no securities, nor
   Stocks, Bonds, or Real Estate.

3. That he is without sufficient funds or property to pay
   for the costs and fees of retaining a attorney for the
   purpose of representing him in this proceeding.

4. That he believes he has a meritorious claim that should
   be heard by this Honorable Court.

    **WHEREFORE**, the Defendant prays this Honorable Court will
grant Counsel to be Appointed in the above entitled cause as the
matters for review also contain complex legal issues.

Signed,

*Tony Shoemaker*

Subscribed and Sworn to
before me on this 24
Day of May ,2003
By: _____
    NOTARY PUBLIC

Tony Shoemaker, #B-23560
Menard Correctional Center
Post Box 711
Menard, Illinois 62259

"OFFICIAL SEAL"
Patricia Luers
Notary Public, State of Illinois
My Commission Exp. 12/15/2004

C119

43

IN THE
SEVENTH JUDICIAL CIRCUIT COURT
MORGAN COUNTY, ILLINOIS

```
=================================================================
THE PEOPLE OF THE              )
STATE OF ILLINOIS,             )
                               )
    PLAINTIFF,                 )
                               )
    -vs-                       )
                               )   Case No.  00-CF-21
                               )
TONY SHOEMAKER,                )
                               )
    DEFENDANT.                 )
=================================================================
```

P E T I T I O N

F O R   P O S T   C O N V I C T I O N   R E L I E F

FILED

MAY 3 0 2003

THERES...
Clerk of Circui...

PREPARED BY:

TONY SHOEMAKER, #B-23560
MENARD CORRECTIONAL CENTER
POST OFFICE BOX 711
MENARD, ILLINOIS 62259

C120

44

IN THE
SEVENTH JUDICIAL CIRCUIT COURT
MORGAN COUNTY, ILLINOIS

=====================================================================

THE PEOPLE OF THE          )
STATE OF ILLINOIS,         )
                           )
   PLAINTIFF,              )
                           )
   -vs-                    )          Case No. 00-CF-21
                           )
TONY SHOEMAKER,            )
                           )
   DEFENDANT.              )

=====================================================================

P E T I T I O N

F O R   P O S T   C O N V I C T I O N   R E L I E F

NOW COMES, the Defendant, TONY SHOEMAKER, Pro-se, Pursuant to
the Illinois Post Conviction Hearing Act of the Illinois Compiled
Statues, 725 ILCS 5/122-1 et Seq (2000), and moves this court to
VACATE the judgment entered on June 16, 2000, in the Circuit
court of Morgan County, Illinois.

In support thereof, the Defendant, Tony Shoemaker, states as
follows:

   1. On May 8, 2000, The Defendant, Tony Shoemaker
      plead guilty to the Offense of Aggravated Criminal
      Sexual Assault, and home invasion and was then
      sentenced to two terms of 30 years imprisonment to
      be served consecutively.

   2. The sentencing hearing was held on June 16, 2000.

   3. Appellant filed a motion to vacate his guilty plea
      which was denied on March 27, 2001.

   4. Notice of Appeal was filed on April 3, 2001.

   5. A Motion to reconsider the Sentence was filed on
      July 5, 2000.

   6. On March 27, 2001, the Motion to Reconsider the
      Sentence was denied.

   7. On July 7, 2000, and The defendant filed a pro-se
      motion to withdraw his guilty plea. On October
      10, 2000, the defendant filed another motion with
      regards to the same issue. On March 19, 2001, the
      Defendant again, filed another motion regarding

C121

45

the very same issue, and all were denied because
the Defendant was said to have counsel.

8. Since the filing of the Direct Appeal, the
   Illinois Appellate Court has issued a order
   to the Circuit Court of Morgan County to
   Conduct a Hearing regarding investigation
   into his claims of Ineffective Assistance
   of Counsel pursuant to the Pro-se Motions
   that were filed by the Defendant in the
   Circuit Court of Morgan County.

9. As of the date of this Post Conviction
   there has been no order issued from the
   Circuit Court of Morgan County regarding
   those proceedings.

=====================================================================

## ISSUES PRESENTED FOR REVIEW

### I.

WHETHER THE CONSECUTIVE SENTENCING SCHEME
THE DEFENDANT WAS SENTENCED UNDER IS
CONSTITUTIONAL UNDER THE DECISION IN
APPRENDI V. NEW JERSEY.

### II.

WHETHER TRUTH IN SENTENCING VIOLATES THE
RIGHT TO DUE PROCESS AND A JURY TRIAL BY
SUBJECTING DEFENDANTS TO INCREASED LEVELS
OF PUNISHMENT, WITHOUT PRETRIAL NOTICE OR
ALLEGATION IN THE CHARGING INSTRUMENT, OR
MANDATING A JURY FINDING OF THE FACTS
NECESSARY FOR IMPOSITION OF THE INCREASED
TERM OF IMPRISONMENT.

### III.

WHETHER THE STATUTE UNDER WHICH THE
DEFENDANT WAS SENTENCED FOR CRIMINAL
SEXUAL ASSUALT IS UNCONSTITUTIONAL WITH
REGARDS TO EFFECTUALLY CAUSING THE
DEFENDANTS SENTENCE TO TRIPLE BECAUSE OF
A FACT THAT IS IMPLICIT IN THE CHARGE
ITSELF.

C-22

46

## IV.

WHETHER COUNSEL WAS INEFFECTIVE FOR HIS
FAILURE TO PROTECT HIS CLIENTS RIGHTS IN
THE ABOVE MENTIONED ISSUES, AS WELL AS
COUNSELS FAILURE TO WITHDRAW THE DEFENDANTS
GUILTY PLEA AS REQUESTED.

DEFENDANT ALSO ALLEGES THAT COUNSEL WAS
INEFFECTIVE IN THE FOLLOWING WAYS:

A. FAILURE OF COUNSEL TO OBJECT TO A
   PRIOR CRIMINAL OFFENSE, OF WHICH,
   THE DEFENDANT WAS NOT CONVICTED.

B. NOT PROVIDING ANY MITIGATION ON
   BEHALF OF THE DEFENDANT AT SENTENCING.

C. COUNSEL NOT CALLING ANY OF THE
   CHARACTER WITNESSES WHICH HE REQUESTED
   THE DEFENDANT TO HAVE PRESENT AT THE
   SENTENCING.

D. COUNSEL MAKING PREJUDICIAL REMARKS
   ABOUT THE DEFENDANT BEFORE THE
   SENTENCING HEARING EVEN TOOK PLACE.

E. COUNSELS FAILURE TO OBJECT TO FINES
   AND MONETARY PENALTIES WHICH WERE
   ASSESED AGAINST THE DEFENDANT DURING
   SENTENCING AND ORDERED TO BE TAKEN
   OUT OF THE DEFENDANTS STATE PAY.

C123

47

I.

WEATHER THE CONSECUTIVE SENTENCING SCHEME
UNDER WHICH THE DEFENDANT WAS SENTENCED
IN UNCONSTITUTIONAL UNDER THE DECISION IN
APPRENDI V. NEW JERSEY.

10. The defendant was sentenced to 30 years in the Illinois
    Department of Corrections for Aggravated Criminal Sexual
    Assault, and thirty years in the Department of Corrections
    for Home Invasion to be served COnsecutively.

11. The Triggering factor which authorized the penalty is
    Brutal and Heinous, and Severe Bodily Injury.  These
    facts, which inhanced the defendants sentence, were Not
    Alleged in the Charging Instrument nor proved beyond a
    Reasonable doubt before a jury.

12. Even in the event of the Defendants plea of guilty,
    he still didn't waive his right to have these issues
    of fact, which enhanced his sentence, sent to a jury
    or proved beyond a reasonable doubt, when the state
    of his liberty was effected, due to the extended
    sentence he would recieve as a result of these
    findings.

13. The Defendants sentence was based on a statute, that
    has been rendered unconstitutional in the United States
    Supreme Court Decision of Apprendi v. New Jersey.

14. Under this statute, the defendants consecutive sentences
    are unconstitutional, and his Consecutive Sentences
    should be vacated accordingly.

II.

WEATHER TRUTH IN SENTENCING VIOLATES THE RIGHT TO
DUE PROCESS AND A JURY TRIAL BY SUBJECTING DEFENDANTS
TO INCREASED LEVELS OF PUNISHMENT, WITHOUT PRETRIAL
NOTICE OR ALLEGATION IN THE CHARGING INSTRUMENT, OR
MANDATING A JURY FINDING OF THE FACTS NECESSARY FOR
IMPOSTION OF THE INCREASED TERM OF IMPRISOMENT.

15. Section 3-6-3(a)(2)(ii) of the Unified Code of Corrections
    mandates that a prisoner serving a term of imprisonment
    for specific crimes receive no more than 4.5 days credit
    for good time, for each month served.

C124



16. The Statute decreasing Mr. Shoemakers day for day credit does not require that he be given pre-trial notice of the facts which qualify him for this enhanced sentence. Nor does it require the facts be charged in the indictment.

17. The Statute does not mandate that the facts qualifying Mr. Shoemaker for only 15% good time credit be determined by a jury upon proof beyond a reasonable doubt.

18. The absence of these constitutional protections violated Due Process.

19. The United States Supreme Court Decision in Apprendi v. New Jersey requires that Mr. Shoemakers' 15% credit be vacated and the cause be remanded for the imposition of day for day credit.

20. The New Jersey Supreme Court recently applied the doctrine of Constitutional doubt to invalidate the No Early Release Act - NERA, a statute very similar to the Illinois truth-in-sentencing statute.

21. Under State v. Johnson, 166N.J.523, 766 A.2d 1126 (2001) the procedure of the court making a finding without a jury, to extend a defendants sentence is unconstitutional.

22. The Court found, fundamental constitutional concerns with the notion that a prosecutor could use a judicial hearing under subsection (e) of NERA to shift to the trial court the burden of finding predicate facts chargeable as elements of crimes in our criminal Statutes.

23. The truth in Sentencing statute bears the same defects as NERA. It allows a fact which increased the defendants sentence to be established by the trial court at the sentencing, without being pled in the indictment or proven to the jury, and without a clear standard of proof.

24. This Court should apply the doctrine of constitutional doubt, and relying on the United States Supreme Court Decision in Apprendi v. New Jersey, and invalidate this Statute.

### III.

WHETHER THE STATUTE UNDER WHICH THE DEFENDANT WAS SENTENCED FOR CRIMINAL SEXUAL ASSUALT IS UNCONSTITUTIONAL WITH REGARDS TO EFFECTUALLY CAUSING THE DEFENDANTS SENTENCE TO TRIPLE BECAUSE OF A FACT THAT IS IMPLICIT IN THE CHARGE ITSELF.



49

25. Under the sexual assault statute, if A crime is committed in a 'single course of conduct, with no substantial change in the crinmal objective, the sentences are to run concurrently'.

26. The statute also states **unless**, one of the crimes is criminal sexual assault, then sentences are to run consecutively.

27. Mr. Shoemakers crimes occured in a single course of conduct, with no substantial change in the criminal objective.

28. Under that law, if Mr. Shoemaker were given the same 30 years for criminal sexual assault, and the same 30 years for home invasion, he would actually do 15 years in the Illinois Department of Corrections.

29. In cases regarding double enhancement, where there a element of a crime is implicit in the charge itself is used to inhance someones time, the principle of using a element to enhance the sentence that is implict in the crime itself, is illegal.

30. In Mr.Shoemakers case, his time tripled because not a element of his crime was used, but the actual crime itself was used to not only double, but to triple his time.

31. Mr. Shoemaker received 30 years for both the sexual assualt, and the home invasion. Under statute, they should have been ran concurrently. But according to the unless portion of the statute, Mr. Shoemakers time now doubles. Instead of Mr. Shoemaker doing 15 years; which is correct under the single course of conduct, he now does 15 years for the sexual assualt, and 15 years for the Home Invasion, because of the unless portion of the statute. Mr. Shoemakers time doubles.

32. Also now under the statute, because again, the crime is sexual assault, Mr. Shoemaker is given 85% under truth in sentencing law.

33. It is evident, once Mr. Shoemaker committed the sexual assualt, that it was under a single course of conduct theory. The statute was made for Mr. Shoemaker circumstances. If a crime is committed and there is one or more crimes taking place, all under the same criminal objective, that sentences will be ran concurrently.

C-126    50

34. But essentially what happens to Mr. Shoemaker is his sentences triple, not because of any additional factors, or aggravating factors, but because of the crime itself. Under double enhancement, it's wrong to use a element implicit in the charge to aggravate a criminal defendants time. Hence the term double enhancement. Here, the case is not simply a element, but the charge itself is used three times to give Mr. Shoemaker his time.

35. Simply put, because Mr. Shoemaker committed sexual assualt, he gets 30 years. Of which he has to do 15. But again, because Mr. Shoemaker committed Sexual Assualt, his sentences now have to run consecutively; doubling his time to do to 30 years. But again, now under truth and sentencing because he committed sexual assualt, he has to do 85% of his sentence. All because Mr. Shoemaker committed sexual assualt, his time goes from doing 15 years, to 30 years, to 51 years. Mr. Shoemakers time triples, for a factor that is not only implicit in the crime, but is the actual crime itself.

36. For these reasons, it is MR. Shoemakers position that this statute is unconstitutional, because his sentence in not only double, but triple enhanced, because of the crime itself, without any additional factors.

IV.

WHETHER COUNSEL WAS INEFFECTIVE FOR HIS FAILURE TO PROTECT HIS CLIENTS RIGHTS IN THE ABOVE MENTIONED USSUES, AS WELL AS COUNSELS FAILURE TO WITHDRAW THE DEFENDANTS GUILTY PLEA AS REQUESTED, AS WELL AS OTHER ISSUES MENTIONED.

37. At the outset of Mr. Shoemakes case, Richard Crews was appointed from the Public Defenders Office the represent Mr. Shoemaker in the case Pending against him.

38. Although Mr. Shoemaker plead guilty, there were several sentencing issues which were not raised nor perfected for appeal by Mr. Crews, including Mr. Crews failure to withdraw Mr. Shoemakers guilty Plea, which Mr. Shoemaker requested he do.

C127

51

39. After pleading guilty Mr. Shoemaker filed several
    Pro-se motions, requesting the court to withdraw
    his guilty plea.  The reason he did so, is because
    He communicated several times to Mr. Crews, that
    He wanted his Plea revoked due to the factual
    Basis of the Plea, as well as not understanding
    the wide range of sentences he was eligible for.

40. Mr. Crews was Ineffective for not protecting his
    clients rights, not listening to his wishes with
    regards to his repeated requests to file a motion
    to withdraw his guilty plea, therefor protecting
    Mr. Shoemakers appeal rights.

41. Mr. Crews was also ineffective for failing to
    raise Constitutional Issues regarding his getting
    consecutive sentences in Violation of Apprendi v.
    New Jersey.  Mr. Crews filed a Motion to Reconsider
    sentence, which failed to raise this and other issues
    therefore not protecting Mr. Shoemakers rights.

42. Mr. Crews was also ineffective regarding not
    attacking the Truth in Sentencing law regarding
    the issue of Mr. Shoemaker receiving 85%, under
    the Sexual Assualt provision, as well as the
    Finding of severe Bodily harm causing him to
    receive 85% on the home invaison as well.

43. Mr. Crews was also ineffective for not raising
    the issue of The single course of conduct provison
    under which his sentences should have ran under
    the concurrent fashion instead of the consecutive
    one.  Mr. Shoemakers time was tripled, because
    Mr. Crews failed to raise these issues to be
    preserved for an appeal.

44. Mr Shoemaker is presently in court in the Circuit
    Court of Morgan county from an order of the Appealate
    Court of Illinois regarding the investigation into
    the issues of Ineffective Assistance of Counsel
    which Mr. Shoemaker raised in his Pro-se motions
    filed in the Circuit Court after his plea of guilty
    and subsequent sentence.

45. Mr. Crews was also Ineffective for failing to object
    during sentencing to a crime in which the prosecution
    Alleged Mr. Shoemaker was responsible for commiting,
    **BUT DIDN'T COMMITT**.  The crime was later refered to
    during sentencing by the judge, which he alluded
    to as being one of the reasons Mr. Shoemaker got
    the sentence he got.  Mr. Shoemaker mentioned at
    that time to Mr. Crews that he didn't do that crime
    but Mr. Crews made no metion of objection to the court.

C128    52

46. Mr. Crews was also Ineffective for not making any
    attempt to provide mitigation on behalf of his client
    during the sentencing procedure.  Which is his
    duty to do.  There was no attempt to even rebut any
    of the aggravation in which the state used crimes
    to aggravate Mr. Shoemakers criminal history, in
    which Mr. Shoemaker never was charged or convicted.

47. Mr. Crews was also Ineffective for failing to call
    any of the character witnesses which he requested
    Mr. Shoemaker to have in court on the day of his
    sentencing.  Mr. Shoemaker has provided affidavits
    along with this post conviction regarding from
    those that were suppose to Testify at Mr. Shoemakers
    sentencing, and were there in court that day for
    the purpose of doing just that.

48. Mr. Crews also was highly ineffective for making
    extreemly prejudicial remarks against him own
    client during the sentencing proceeding.  From
    page 26, sentencing transcript, June 16, 2000
    sentencing hearing: "There are those cases that
    I'm appointed to represent that are just not much
    fun, and this is the coup de grace so to speak.
    What Tony Shoemaker did in Fegruary is one of the
    most filthy, disgusting things I've ever heard of
    and I in no way am going to stand here and try to
    argue that it was not.  IT's sickening, it's disgu-
    sting, it's wrong, and he's going to prison today
    and he knows that.  I mean, being around him I'm
    not real happy.  I'm not friends with TOny Shoemaker,
    but your honor, as I stated I took an oath."  There
    was no reason for this statement, it was nothing
    that was requested by the court, and it explained
    nothing about the charges that were pending against
    Mr. Shoemaker, but it did explain a great deal about
    the attitude of the of Attorney appointed to protect
    the rights of Mr. Shoemaker, and how he really felt
    about his client.

49. Mr. Crews was also ineffective failing to object to
    fines assesed against Mr. Shoemaker which were not
    only illegal, but were ordered to be taken out of
    his statepay, once Mr. Shoemaker reached the Illinois
    Department of Corrections.  Mr. Crews also didn't
    object when the state and court placed fines against
    him for the installation of a security system in
    the victims home after the attack, because they no
    longer felt safe.  There is no rule stating this
    can be done, or assesed against the defentant as
    part of any court ordered restitution.

C129

53

WHEREFOR, THE Defendant, Tony Shoemaker, requests
this court to first vacate his consecutive sentences,
and vacate the Truth in Sentencing provision from
his sentencing guidlines, as well rule the defense
counsels action to be Ineffective representation,
and resentence Mr. Shoemaker to a term of years
which is appropriate and under the color of the
law here in Illinois.


**End of Petition**


Respectfully Submitted,


/s/ *Tony Shoomaker.*

Tony Shoemaker, #B-23560
Menard Correctional Cntr.
P.O. Box 711
Menard, Ill.  62259-0711

C130

54

IN THE

SEVENTH JUDICIAL CIRCUIT COURT

MORGAN COUNTY, ILLINOIS

```
===========================================================
THE PEOPLE OF THE           )
STATE OF ILLINOIS,          )
                            )
   PLAINTIFF,               )
                            )
   -vs-                     )
                            )   Case No.  00-CF-21
TONY SHOEMAKER,             )
                            )
   DEFENDANT.               )
===========================================================
```

A F F I D A V I T


State of Illinois  )
                   ) ss:
County of Randolph )



I, the Defendant, TONY SHOEMAKER, depose and state under the
PENALTY OF PERJURY, pursuant to Section 1-109 of the Illinois
Code of Civil Procedure, that I am the defendant in the above
captioned matter, and that I have read the contents of this
Petition for Post Conviction Relief, and that such contents
are both true and correct in substance and fact, and that I am
competent to testify thereto if called upon to testify.




Respectfully Submitted,


*Tony Shoemaker.*
Tony Shoemaker, #B-23560 - Affiant
Menard Correctional Center
Post Box 711
Menard, Illinois 62259


0136

55

State Of Illinois      )
                       ) SS
County Of Randolph

## AFFIDAVIT

I, Tonia R. Phillips swear that the foregoing is true and correct, to the best of my knowledge and belief.

1.  That Tony Shoemaker, communicated to us, we to be in court, on the day of his sentencing, because Mr. Crews, his Attorney, communicated to him he would be calling us as character witnesses.

2.  That me, and several members of my family, were there in court on the day of Tony Shoemakers sentencing, Ready to testify on his behalf.

3.  That at no time during the proceedings, was I or my family ever called to testify on his behalf.

4.  That on this day in question, I had testimony, that I believe would have helped Tony Shoemaker, about his Character, and circumstances in general, which would have assisted him in mitgation portion of the case.

5.  FURTHER AFFIANT SAYETH NOT.

SUBSCRIBED AND SWORN TO
BEFORE ME THIS 2nd DAY
OF _____ May _____ 2002.

BY _Sandra B. Dudley_                        _Tonia R. Phillips_
   NOTARY PUBLIC                              TONIA R. PHILLIPS
                                              AFFIANT

SANDRA B. DUDLEY
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires 06-11-2003

56

State Of Illinois      )
                             ) SS

County Of Randolph

## AFFIDAVIT

I, Charles W. Shoemaker, swear that the foregoing is true and correct, to the best of my knowledge and belief.

1. That Tony Shoemaker, communicated to us, we to be in court, on the day of his sentencing, because Mr. Crews, his Attorney, communicated to him he would be calling us as character witnesses.

2. That me, and several members of my family, were there in court on the day of Tony Shoemakers sentencing, Ready to testify on his behalf.

3. That at no time during the proceedings, was I or my family ever called to testify on his behalf.

4. That on this day in question, I had testimony, that I believe would have helped Tony Shoemaker, about his Character, and circumstances in general, which would have assisted him in mitgation portion of the case.

5. FURTHER AFFIANT SAYETH NOT.

SUBSCRIBED AND SWORN TO
BEFORE ME THIS _2nd_ DAY
OF _May_ 2002.

BY _Sandra B. Dudley_
NOTARY PUBLIC

_Charles W. Shoemaker_
CHARLES W. SHOEMAKER
AFFIANT

SANDRA B. DUDLEY
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires 06-11-2003

State Of Illinois )
                  ) SS
County Of Randolph

### AFFIDAVIT

I, Donald E. Phillips, swear that the foregoing is true and correct, to the best of my knowledge and belief.

1.  That Tony Shoemaker, communicated to us, we to be in court, on the day of his sentencing, because

Mr. Crews, his Attorney, communicated to him he would be calling us as character witnesses.

2.  That me, and several members of his family, were there in court on the day of Tony Shoemakers sentencing,

Ready to testify on his behalf.

3.  That at no time during the proceedings, was I or any of his family ever called to testify on his behalf.

4.  That on this day in question, I had testimony, that I believe would have helped Tony Shoemaker, about his

Character, and circumstances in general, which would have assisted him in mitgation portion of the case.

5.  FURTHER AFFIANT SAYETH NOT.

SUBSCRIBED AND SWORN TO
BEFORE ME THIS 2nd DAY
OF _May_ 2002.

BY _Sandra B. Dudley_
     NOTARY PUBLIC

_Donald E. Phillips_
     DONALD E. PHILLIPS
     AFFIANT

SANDRA B. DUDLEY
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires 06-11-2003

C134

58

STATE OF ILLINOIS )
                 ) SS
COUNTY OF RANDOLPH )


## A F F I D A V I T


I, Chad Black, swear that the foregoing is true and correct to the best of my knowledge and belief.

1. That Tony Shoemaker, communicated to me, we were to be in court, on the day of his sentencing, because MR. CREWS, his Attorney communicated to him, he would be calling us as his character witnesses.

2. That me, and several members of my family, were there in Court on the day of Tony Shoemakers sentencing, ready to testify on his behalf.

3. That at no time during the proceedings, was I or my family ever called to testify on his behalf.

4. That on this day in question, I have testimony, that I believe would have helped Tony Shoemaker, about his character, and circumstances in general, which would have assisted him in the mitigation portion of his case.

5. FURTHER AFFIANT SAYETH NOT.


_____
CHAD BLACK
AFFIANT


SUBSCRIBED AND SWORN TO

BEFORE ME THIS 26 DAY

OF _____ 2002.

BY _____
     NOTARY PUBLIC



JOAN L. TULIER RICHARDSON
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 02-11-06

135

59

STATE OF ILLINOIS    )
                     ) SS
COUNTY OF RANDOLPH   )

### A F F A D A V I T T

I, NICOLE M. RILEY, swear that the foregoing is true and correct to the best of my knowledge and belief.

1. That Tony Shoemaker, communicated to us, we were to be in court, on the day of his sentencing, because Mr. Crews, his Attorney, communicated to hi, he would be calling us as character witnesses.

2. That me, and several family members, were there in Court on the day of Tony Shoemakers sentencing, ready to testify on his behalf.

3. That at no time during the procedings, was I, or my family ever called to testify on his behalf.

4. That on this day in question, I had testimony, that I believe would have helped Tony Shoemaker, about his character, and circumstances in general, which would have assisted him in the mitigation portion of his sentence.

5. FURTHER AFFIANT SAYETH NOT.


SUBSCRIBED AND SWORN TO
BEFORE ME THIS 17th DAY
OF _April_ 2002
BY _Doris Diane Ehlert_
NOTARY PUBLIC

_Nicole M. Riley_
NICOLE M. RILEY
AFFIANT

OFFICIAL SEAL
DORIS DIANE EHLERT
NOTARY PUBLIC - STATE OF ILLINOIS
My Commission Expires: 07/09/05

C136

60

STATE OF ILLINOIS   )
                    ) SS
COUNTY OF RANDOLPH  )


# A F F I D A V I T

I, Tammy S. Black, Swear that the foregoing is true and correct
to the best of my knowledge and belief.


1. That Tony Shoemaker, communicated to me, we were to be in
court, on the day of his sentencing, because MR. CREWS, his
Attorney, communicated to him, he would be calling us as c
Character witnesses.

2. That me, and several members of my family, were there in
Court on the day of Tony Shoemakers sentencing, ready to testify
on his behalf.

3. That at no time during the proceedings, was I or my
family ever called to testify on his behalf.

4. That on this day in question, I had testimony, that I
believe would have helped Tony Shomaker, about his character,
and circumstances in general, which would have assisted him in
the mitigation protion of his case.

5. FURTHER AFFIANT SAYETH NOT.


_Tammy S. Black_
TAMMY S. BLACK
AFFIANT


SUBSCRIBED AND SWORN TO

BEFORE ME THIS _26_ DAY

OF _April_   2002.

BY _____
        NOTARY PUBLIC

JOAN L. TULIER RICHARDSON
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 02-11-06

61

STATE OF ILLINOIS  )
                    )  SS
COUNTY OF RANDOLPH  )


<u>A F F I D A V I T</u>


I, TERESA L. SHANKS, swear that the foregoing in true and correct to the best of my knowledge and belief.

    1. That Tony Shoemaker, coomunicated to me, we were to be in court, on the day of his sentencing, because MR. Crews, his Attorney, communicated to him, he would be calling us as character witnesses.

    2. That me, and several members of my family, were there in Court on the day of Tony Shoemakers sentencing, ready to testify on his behalf.

    3. That at no time during the proceedings, was I or my family ever called to testify on his behalf.

    4. That on this day in question, I had testimony, that I believe would have helped Tony Shoemaker, about his character, and circumstances in general, which would have assisted him in the mitigation portion of his case.

    5. FURTHER AFFIANT SAYETH NOT.


_Theresa L. Shanks_
TERESA L. SHANKS
AFFIANT

SUBSCRIBED AND SWORN TO
BEFORE ME THIS 15 DAY
OF April 2002.
BY _Cherie M. Emerick_
NOTARY PUBLIC

OFFICIAL SEAL
CHERIE M. EMERICK
NOTARY PUBLIC - STATE OF ILLINOIS
My Commission Expires: 4/15/06

62

July 7, 2003

Theresa Lonergan
Clerk of the Circuit Court
Morgan County
P.O. Box 1120
Jacksonville, IL 62651-1120

**FILED**

**JUL 1 6 2003**

THERESA LONERGAN
Clerk of Circuit Court Morgan Co. IL

Dear Clerk of the Court,


Could you please advise me on the matters regarding case No. 00-CF-21
as I have motions pending in your court.  I have not got any notice
of the events that have occurred with regards to my case, and
I would like to know what is going on.

I thank you in advance for the time and consideration in this
matter.  If there is any information you can offer me, I would
appreciate it.  Once again, thank you.


Sincerely,


Tony Shoemaker
#B-23560
Menard Correctional Center
P.O. Box 711
Menard, Illinois, 62259


C139

63

E-FILED
Monday, 20 November, 2006  06:55:56 AM
Clerk, U.S. District Court, ILCD

IN THE

SEVENTH JUDICIAL CIRCUIT COURT

MORGAN COUNTY, ILLINOIS

|  |  |  |
|---|---|---|
| The People of the State of ILLINOIS,           Respondent<br><br>~VS~<br><br>Tony Shoemaker,           Petitioner | ) ) ) ) ) ) ) ) ) ) ) | Case no. 00-CF-21 |

**FILED**
**JUL 2 4 2003**

THERESA LONERGAN
Clerk of Circuit Court Morgan Co. IL

## NOTICE OF MOTION

THERESA LONERGAN
P.O.BOX 1120
CLERK OF THE CIRCUIT COURT
JACKSONVILLE, ILLINOIS 62651-1120

CHARLES M. COLBURN
STATE'S ATTORNEY
MORGAN COUNTY COURT HOUSE
300 WEST STATE STREET
JACKSONVILLE, IL,62650

You are hereby notified that on _July 19_ ,2003, I have caused to be filed the original and three copies of the attached Motion to Supplement,Petitioner's Post-Conviction Petition to be sent to the above named parties.

_Tony W. Shoemaker_
Tony Shoemaker B-23560
P.O. BOX 711
Menard, Illinois 62259

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the atached motions have been served on the above named parties via U.S. mail with the proper postage being paid at the menard Correctional center P.O. Box 711 Menard, Illinois 62259-9998.

Subscribed to and Sworn to before me this _19_ Day of _July_ 2003

_Patricia Luers_
Notary Public

"OFFICIAL SEAL"
Patricia Luers
Notary Public, State of Illinois
My Commission Exp. 12/15/2004

_Tony Shoemaker_
Tony Shoemaker

0744

85

EXHIBIT O

IN THE
SEVENTH JUDICIAL CIRCUIT COURT
MORGAN COUNTY, ILLINOIS

THE PEOPLE OF THE STATE )
OF ILLINOIS, )
)
)
 PLAINTIFF, )
)
)
-VS- )          CASE NO. 00-CF-21          **FILED**
)
TONY SHOEMAKER, )                                  JUL 2 4 2003
 DEFENDANT. )

~~THERESA~~ LONERGAN
Clerk of Circuit Court Morgan Co. IL

## MOTION TO SUPPLEMENT
## POST-CONVICTION PETITION

Now comes, The Defendant, <u>Tony Shoemaker,</u> Pro-se. pursuant
to the Illinois Post-Conviction Hearing Act of 725 ILCS
5/122-1 et seq (2000), and respectfully requests that this
Court allow this Motion to Supplement his Post-Conviction
Petition filed 5-30-03, in this honorable Court with the
following issues:

I

PETITIONER SUBMITS THAT 730 ILCS 5/5-8-4(a) OF THE UNIFIED
CODE OF CORRECTIONS TO WHICH THIS PETITIONER WAS GIVEN
CONSECUTIVE SENTENCES, IS AS A WHOLE UNCONSTITUTIONALLY
VAGUE, IN VIOLATION OF THIS PETITIONERS RIGHTS UNDER THE
6th AND THE 14th AMENDMENTS TO THE CONSTITUTION OF THE
UNITED STATES OF AMERICA.

II

PETITIONER ALSO SUBMITS THAT HIS SENTENCES ARE VOID DUE
TO THE UNCONSTITUTIONALITY OF 730 ILCS 5/5-8-4(a) OF THE
UNIFIED CODE OF CORRECTIONS.



0742

66

## I.

PETITIONER SUBMITS THAT 730 ILCS 5/5-8-4(a) OF THE
UNIFIED CODE OF CORRECTIONS TO WHICH THIS PETITIONER
WAS GIVEN CONSECUTIVE SENTENCES, IS AS A WHOLE
UNCONSTITUTIONALLY VAGUE, IN VIOLATION OF THIS PETITIONERS
RIGHTS UNDER THE 6th AND 14th AMENDMENTS TO THE CONSTITUTION
OF THE UNITED STATES OF AMERICA.

Section 5-8-4(a) of the unified code of corrections
(code) 730 ILCS 5/5-8-4(a) Provides in pertinent part
as follows:

"The court shall not impose consecutive sentences for
offenses which were committed as <u>part of a single
course of conduct during which there was no substantial
change in the nature of the criminal objective</u>, unless,
one of the offenses for which defendant was convicted
was a Class X or Class 1 felony and the defendant inflicted
severe bodily injury, or where the defendant was convicted of
a violation of section 12-14 (agg.Crim. Sexual assualt)
in which event the court shall enter sentences to run
consecutively."

Petitioner submits that the phrases underlined above is
so unconstitutionally vague, that it has caused a **de novo**
review of this statue over and over again.

"Since our Supreme court first addressed the issue of
the meaning of "Single course of Conduct" in Bole,
Appellate Courts have not developed a consistent or
even coherent analysis of when courses of conduct are
"related", as as opposed to "separate." <u>PEOPLE V.STRICTLAND,
283 Ill. App. 3d 319, 324-25,218 Ill.Dec.369, 668 N.E.2d 1201.</u>

(1)

CT43

67

In trying to interpret the phrase "substantial change in the nature of the criminal objective," the Supreme Court in **PEOPLE V. BOLE** stated that it was <u>unclear</u> from the statue whether that language was"meant to define, or describe, the phrase 'single course of conduct.' or whether it is intended instead to limit that phrase." (<u>155 Ill. 2d at 193, 184 Ill. Dec 423, 613 N.E.2d 740.</u>)

Petitioner respectfully submits that the very definition of the word **vague** describes this interpretation and statue.

according to Black's law Dictionary (abridged Seventh edition) the word Vague means the following:

**Vague**, imprecise; not sharply outlined; indistint. 2. broadly indefinite; **not clear** or concretely expressed.

It is Clear, however, that when a defendant commits multiple acts of sexual assault separated by a <u>substantial passage of time</u> between the assaults, the assaults are treated as being "separate," and not part of a " single course of conduct' for the purpose of section 5-8-4. <u>**BOLE, 155 Ill. 2d at 194, 184 Ill. Dec. 423, 613 N.E. 2d 740**</u>."

But, then again, this interpretation is also vague, based on the word **substantial**, Which has the following meaning;

**Substantial**-considerable as in amount; ample. (Webster's 3rd ed. Dictionary)

What is **Substantial** for one trial judge may not be substantial for another, that is why there is no consistent or even coherent analysis of this statue.

(2)

C194

68

As noted by Justice KILBRIDE in his dissenting opinion
in **PEOPLE EX REL. WALLER V. McKOSKI 254 Ill.Dec. 729,
748 N.E.2d 175 (Ill.2001)** at best, the operative language
of the Statue is <u>muddy</u> the trial judge may have justifiably
interpreted the statue in one of at least three different
ways.  Justice Kilbride went on to state that: On the
Other hand it is <u>unclear</u> whether the trial judge properly
interpreted the criminal objective standard in the sentencing
statue.

It is clear that this Statue is unclear, Vague, and it
can be interpreted in many different ways, the questions
that the Supreme Court of the state posed in Bole have
yet to be answered, and this court is bound by the supreme
Courts interpretation of Statues and law. Petitioner
respectfully requests that this court find this statue
**unconstitutionally vague.**

Petitioner respectfully submits that the fed. Courts and
the U.S. Supreme Court has a consistent analysis of the
void for vagueness doctrine, which can be seen in the
following cases:

**U.S. V. Ulyses-Salazar, 28 F.3d 932.**
Criminal laws that are not sufficiently clear are voided
by due process for their ambiguity.

**Berra V. U.S., 76 S.Ct. 685.**
A basic principle of our criminal law is that Govt. only
prosecute people for crimes under statues passed by congress
which fairly and <u>clearly define</u> the conduct made criminal
and the punishment which can be administered.

(3)

C745

69

Jordan v. DeGeorge, 71 S.Ct. 703.

The U.S. Supreme Court examined a sentencing law under the Vagueness doctrine and held: "the essential purpose of the void for vagueness doctrine is to warn individuals of the criminal consequences of their conduct.

Petitioner submits that 730 ILCS 5/5-8-4(a) of the unified code of corrections does not do this, and that it is void for it's vagueness.

## CONCLUSION

Petitioner asks this court to find 730 ILCS 5/5-8-4(a) of the unified code of corrections unconstitutional, and to vacate the consecutive nature of the defendant's Sentences and order those to run concurrent.

(4)

C14.6

70

## AFFIDAVIT

I <u>Tony Shoemaker,</u> a Prisoner incarcerated in the State
of Illinois, do State under oath that the Attached Motion
and it's contents are True in substance and in fact to
the best of my belief.


_Tony W. Shoemaker_
Tony Shoemaker


Subscribed and sworn to before me this _19th_ day

of _____July_____ ,2003

_Patricia Green_
Notary Public

"OFFICIAL SEAL"
Patricia Luers
Notary Public, State of Illinois
My Commission Exp. 12/15/20..

C147

71

FILE COPY

E-FILED
Monday, 20 November, 2006 06:56:11 AM
Clerk, U.S. District Court, ILCD

Nos. 4-03-0930 and 4-03-0744 (consolidated)

DEC - 8 2004

SAAP FOURTH DISTRICT

IN THE

APPELLATE COURT OF ILLINOIS

FOURTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the Seventh Judicial Circuit, Morgan County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| -vs- | ) ) | No. 00-CF-21 |
| TONY SHOEMAKER, | ) ) | Honorable Richard T. Mitchell, |
| Defendant-Appellant. | ) | Judge Presiding. |

**Brief and Argument for Defendant-Appellant**

DANIEL D. YUHAS
Deputy Defender
Office of the State Appellate Defender
Fourth Judicial District
400 South Ninth Street, Suite 102
P.O. Box 5750
Springfield, IL 62705-5750
(217) 782-3654

KAREN MUNOZ
Assistant Defender

COUNSEL FOR DEFENDANT-APPELLANT

EXHIBIT P

## Point and Authorities

**Mr. Shoemaker's counsel did not provide effective representation at the sentencing hearing when he made disparaging comments about Mr. Shoemaker and failed to call available witnesses to testify to Mr. Shoemaker's character.**

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*People v. Holman,* 164 Ill.2d 356, 647 N.E.2d 960 (1995) . . . . . . . . . . 14, 15

*People v. Howery,* 178 Ill.2d 1, 687 N.E.2d 836 (1997) . . . . . . . . . . . . . 15, 16

*Osborn v. Shillinger,* 861 F.2d 612 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . 15

## Nature of the Case

Tony Shoemaker pled guilty to home invasion and aggravated criminal sexual assault. On direct appeal, this Court remanded and on remand, the trial court denied the defendant's motion and his various claims including ineffective assistance of counsel. The appeal from the remand hearing is docketed as General No. 4-03-0930. Mr. Shoemaker also filed a post-conviction petition in the case. The petition was dismissed as frivolous and patently without merit and that ruling is the subject of the appeal in 4-03-0744.

## Issue Presented for Review

Whether Mr. Shoemaker's counsel provided effective representation at the sentencing hearing when he made disparaging comments about Mr. Shoemaker and failed to call available witnesses to testify to Mr. Shoemaker's character.

# Jurisdiction

The defendant's appeal (Appellate Court No. 4-03-0744) is from the dismissal of the post-conviction petition entered by the trial court, pursuant to article VI, section 6 of the Illinois Constitution and Illinois Supreme Court Rules 603, 606 and 651.

The defendant pled guilty to aggravated criminal sexual assault and home invasion and was sentenced on June 16, 2000. (Appellate Court No. 4-03-0744, Vol. I, C. 27) The defendant appealed but also filed a post-conviction petition while the appeal was pending. That petition was dismissed as frivolous on August 13, 2003, and Mr. Shoemaker filed a notice of appeal on August 26, 2003. (Appellate Court No. 4-03-0744, Vol. II, C. 76)

The defendant also appeals from a final judgment of conviction entered upon a plea of guilty (Appellate Court No. 4-03-0930), pursuant to Illinois Supreme Court Rules 603, 604(d) and 606. The defendant pleaded guilty to aggravated criminal sexual assault and home invasion; sentence was imposed on June 16, 2000; a motion to reconsider sentence was filed on July 5, 2000; and the motion was denied on March 27, 2001. (Appellate Court No. 4-03-0744, Vol. III, R. 72-73) The defendant appealed and this Court ordered a remand. On remand, the motion to reconsider was denied. A timely notice of appeal was filed on October 30, 2003. (Appellate Court No. 4-03-0930, Vol. I, C. 16)

## Statement of Facts

Morgan County Case No. 00-CF-21 charged Tony Shoemaker with aggravated criminal sexual assault and home invasion. (Gen. No. 4-03-0744, Vol. I, C. 6-8) Mr. Shoemaker pled guilty on May 8, 2000 to both counts. (Gen. No. 4-03-0744, Vol. I, C. 24; Vol. IV) Mr. Shoemaker entered an open plea to the charges. He was admonished of mandatory consecutive sentences and was notified of the truth-in-sentencing provisions requiring that he serve 85 % of any sentence on the aggravated criminal sexual assault charge, and that if great bodily harm was found regarding the home invasion charge, he would have to serve 85% of that sentence. He was also admonished of the possibility of extended term sentences. The rights Mr. Shoemaker waived by pleading guilty were explained to him, and Mr. Shoemaker indicated no promises or threats had been made to him to force him to plead guilty. (Gen. No. 4-03-0744, Vol. IV, R. 3-15)

The State presented a factual basis for the plea (Gen. No. 4-03-0744, Vol. IV, R. 15-16), and the court accepted the plea and entered judgment on both counts. (Gen. No. 4-03-0744, Vol. IV, R. 16)

Sentencing occurred on June 16, 2000. At that time, Mr. Shoemaker was sentenced to 30 years' imprisonment for aggravated criminal sexual assault and a consecutive 30 years' imprisonment for home invasion. The court also made a finding that great bodily harm to the victim occurred for truth-in-sentencing purposes. The court did not impose extended term sentences. The defendant was ordered to make restitution in the amount of $40,550 plus 9% interest, pay costs and a $100 sexual assault fine, and the court ordered 50% of his DOC wages withheld to apply to fines, costs and restitution. (Gen No. 4-03-0744, Vol. I, C. 27; Vol. IV, R. 24-63)

Counsel filed a motion to reconsider sentence on July 5, 2000. (Gen. No. 4-03-0744, Vol. I, C. 33-34) The defendant filed a *pro se* motion to reduce sentence and *pro se* motion to withdraw plea on July 7, 2000. (Gen. No. 4-03-0744, Vol. I, C. 38-47) A hearing on the motion to reconsider sentence was scheduled for August 15, 2000. On that date, the State's motion to strike the defendant's *pro se* motions because the defendant was represented by counsel was granted. (Gen. No. 4-03-0744, Vol. III, R. 29-30) The defendant moved to reinstate his *pro se* motions on October 10, 2000. He also filed a motion for new counsel, alleging that his attorney, Richard Crews, had not effectively represented him. (Gen. No. 4-03-0744, Vol. I, C. 53-59) Mr. Shoemaker then wrote to the court in a letter filed on October 16, 2000 and asked the court to withdraw those motions. (Gen. No. 4-03-0744, Vol. I, C. 61)

The hearing on the counsel filed motion to reconsider sentence was continued until October 24, 2000. At that time, Mr. Shoemaker attempted to testify to new evidence and the State objected. The cause was then continued and did not resume until March 27, 2001. (Gen. No. 4-03-0744, Vol. III, R. 40-46, 65) At that time, counsel presented argument on the motion. (Gen. No. 4-03-0744, Vol. III, R. 65-71) The trial court denied the defendant's motion to reconsider. (Gen. No. 4-03-0744, Vol. III, R. 71-72) Counsel indicated to the court he was filing a certificate in compliance with Supreme Court Rule 604(d) on the date of the hearing. (Gen. No. 4-03-0744, Vol. III, R. 72-73) The certificate was filed April 3, 2001. (Gen. No. 4-03-0744, Vol. I, C. 68) A notice of appeal was filed on behalf of Mr. Shoemaker on April 3, 2001. (Gen. No. 4-03-0744, Vol. I, C. 70)

On April 8, 2002, this Court affirmed in part, finding no *Apprendi* violation with the great bodily harm finding for truth-in-sentencing purposes on the home

-6-

invasion charge, ordering fine credit, vacating that portion of the sentencing order that 50% of DOC wages would be withheld and remanding for a hearing on the defendant's ineffective assistance of counsel claim which was dismissed by the trial court without consideration. (Gen. No. 4-01-0300; Vol. II, C. 12-21) That remand is the subject of the appeal in 4-03-0930.

Mr. Shoemaker also filed a post-conviction petition on May 30, 2003. In that petition, he alleged that his consecutive sentences violated the holding of *Apprendi v. New Jersey*, that the truth-in-sentencing provisions violated *Apprendi*, that the aggravated criminal sexual assault statute was unconstitutional as a triple enhancement, and that counsel was ineffective for "failure to protect his client's rights" and by "failure to withdraw the defendant's guilty plea as requested." (Gen. No. 4-03-0744, Vol. II, C. 40-63) Mr. Shoemaker then filed a *pro se* motion to supplement the post-conviction petition on July 24, 2003. (Gen. No. 4-03-0744, Vol. II, C. 66-71) The trial court dismissed the defendant's petition and supplement as frivolous and patently without merit on August 11, 2003. (Gen. No. 4-03-0744, Vol. II, C. 72) Mr. Shoemaker is appealing that finding in Gen. No. 4-03-0744. (Gen. No. 4-03-0744, Vol. II, C. 76)

The appeal in General No. 4-03-0930 is from the ruling on remand following inquiry into the defendant's claim of ineffective assistance of counsel. On remand, counsel was appointed to represent Mr. Shoemaker. Counsel filed a post-trial motion on behalf of Mr. Shoemaker on September 26, 2003. (Gen. No. 4-03-0744, Vol. II, C. 85) In the motion, counsel alleged that the plea was not voluntary, that trial counsel had failed to file a motion to suppress statements, failed to investigate DNA test results, failed to provide the defendant with discovery information, failed to file a motion to suppress arrest, and failed to file a motion

-7-

to withdraw guilty plea as requested by the defendant. The motion also alleged that the sentences imposed were excessive and that counsel was ineffective at sentencing because he did not object to other crimes evidence introduced at the sentencing hearing, failed to call available witnesses on behalf of the defendant, and made comments in his sentencing argument that the defendant's acts were "one of the most filthy, disgusting things I have ever heard of . . .; and that "I mean, being around him, I'm not real happy." (Gen. No. 4-03-0744; Vol. II, C. 85-89)

At the remand hearing, Mr. Shoemaker testified that his attorney had gone to visit him in the county jail twice and told him the best thing to do was enter an open plea. (Gen. No. 4-03-0930, Vol. II, R. 8) Mr. Shoemaker said that he had written to his attorney when he was first appointed and asked him to file various motions, including a motion for substitution of judge, a motion for change of venue and motion to suppress statements. (4-03-0930, Vol. II, R. 9) Judge Bone had sentenced Mr. Shoemaker on other occasions and the defendant did not believe he could get a fair sentence. (4-03-0930, Vol. II, R. 9-10) As to the suppression of statements, Mr. Shoemaker claimed that the police officer interviewing him, Detective Snelling, told him that he would call the State's Attorney and help the defendant get a lenient sentence if Shoemaker first made a statement. He also alleged that he was not read his constitutional rights until the following morning when he was interviewed by a different officer. (4-93-0930, Vol. II, R. 11-12)

Mr. Shoemaker testified that he was not allowed to review the discovery before he pled guilty, and he had wanted to know the DNA test results. (4-03-0930, Vol. II, R. 14) He also claimed that on May 7, 2000, the day before the

-8-

defendant pled guilty, trial counsel visited the defendant and told him "he was sorry that he hadn't come over to see me or that he was sorry that my phone calls hadn't been answered but he just didn't have the heart to tell me what the State was asking for to give me." (4-03-0930, Vol. II, R. 16) The defendant said he never knew what the State offered and his attorney advised him to enter an open plea of guilty. Shoemaker allegedly wrote his attorney that evening that he wished to go to trial. (4-03-0930, Vol. II, R. 16-17) The following morning, counsel went to the jail and allegedly asked Shoemaker "what the hell my problem was now." Counsel then told Mr. Shoemaker that if he did not plead guilty, and went to trial, "they're going to, they will give you 120 years, and I'm not going to go over there and make myself look like an ass in the courtroom." (4-03-0930, Vol. II, R. 17)

Mr. Shoemaker said he pled guilty because his attorney acted like he did not want to help the defendant. (4-03-0930, Vol. II, R. 17) After sentencing, the defendant asked his counsel to move to withdraw the plea. The defendant was also displeased with his attorney's representation at sentencing. He wanted his attorney to object to the aggravation evidence concerning other crimes for which Mr. Shoemaker was never arrested or charged, and he wanted his attorney to call witnesses to testify in his behalf. (4-03-0930, Vol. II, R. 21-22)

While Mr. Shoemaker made a statement at sentencing, he believed he should have testified at the hearing. (4-03-0930, Vol. II, R. 24-26)

Detective Jack Wood testified at the remand hearing that he interviewed Mr. Shoemaker on February 17 and 18, 2000 and in those interviews Mr. Shoemaker admitted to the home invasion and sexual assault. Detective Wood also testified that in view of the identification by the victim and Mr. Shoemaker's confessions, People's Exhibits 1 and 2, no blood samples were ever submitted for DNA analysis.

-9-

(4-03-0930, Vol. II, R. 32-33) Detective Wood was not aware of any other police officer speaking with Mr. Shoemaker. (4-03-0930, Vol. II, R. 33-34)

Sergeant Kelly Surratt of the Jacksonville Police Department assisted in the defendant's arrest on February 16, 2000. The police went to a residence rented by Travis Matthews looking for the defendant. Through the window, they could see the defendant asleep on the couch inside the residence. When Matthews answered the door, police told him they had an arrest warrant for the defendant. Matthews "stepped aside and said go ahead." (4-03-0930, Vol. II, R. 36-37)

Surratt took the defendant to the Jacksonville Police Department rather than the county jail. He was placed in booking and later moved to the county jail. (4-03-0930, Vol. II, R. 38-40)

Mr. Richard Crews, the defendant's trial attorney, testified that he met with Mr. Shoemaker at the county jail and they discussed evidentiary issues, including the defendant's admissions and the testimony of the victim. Crews said that when evaluating the victim's testimony and the statements the defendant made to Detective Wood, they started talking about an open plea. Crews could not recall the initial reaction of the defendant when Crews suggested a plea. Crews said he focused more on sentencing than on trial at that point. (4-03-0930, Vol. II, R. 43-44, 50)

Crews admitted that the defendant talked about trying to withdraw his plea but then decided to proceed to sentencing. The sentencing strategy was to present to the court data on other sentences that had been imposed for a more serious offense and hope that it would influence the court to give a lighter sentence. (4-03-0930; Vol. II, R. 45) Crews said he did not believe that the defendant's family members or the defendant's own testimony would benefit the argument for a

lenient sentence. The trial strategy was to remind the court of lesser sentences imposed for more serious crimes and hope for a sentence less than the maximum. That strategy did not work. (4-03-0930, Vol. II, R. 45-46) Mr. Crews did not recall the defendant's thoughts regarding testifying at the sentencing hearing or the details of his family members offering testimony. (4-03-0930, Vol. II, R. 47-48)

Tonya Shoemaker, the defendant's sister, recalled the night her brother was arrested. She had told police where her brother was when they came looking for him. Ms. Shoemaker arrived at Travis Matthews' house as the police were escorting her brother out of the home. She noticed Travis Matthews was a block and a half away, walking toward his home. Tonya had told police officers that she was concerned about her brother's mental health. (4-03-0930, Vol. II, R. 52-54)

After argument by counsel, the trial court ruled that Mr. Shoemaker had not proved that his guilty plea counsel had been ineffective. (4-03-0930, Vol. II, R. 56-67) Mr. Shoemaker filed a notice of appeal from that ruling on October 30, 2003. (4-03-0930, Vol. I, C. 16)

## Argument

**Mr. Shoemaker's counsel did not provide effective representation at the sentencing hearing when he made disparaging comments about Mr. Shoemaker and failed to call available witnesses to testify to Mr. Shoemaker's character.**

In both Mr. Shoemaker's post-conviction petition and in the motion filed for the remand hearing, he alleged that his trial attorney had been ineffective in his representation at sentencing. Mr. Shoemaker alleged that his attorney had not called available witnesses and that he had made disparaging remarks about Mr. Shoemaker at the sentencing hearing. Mr. Shoemaker's allegations have merit, and he should be awarded a new sentencing hearing with different counsel.

At sentencing, the public defender made the following remarks regarding his client:

> Your Honor, a few years ago I was appointed the Public Defender of Morgan County, and I took an oath to defend individuals to the best of my ability. I'd like to think that during that time – I've represented a few traffic cases, a few misdemeanors, maybe even a few felonies – that I actually helped somebody and they were happy that I represented them. But there are those cases that I'm appointed to represent that are just not much fun, and this is the *coup de grace* so to speak. What Tony Shoemaker did in February is one of the most filthy, disgusting things I've ever heard of, and I in no way am going to stand here and try to argue that it was not. It's sickening, it's disgusting, it's wrong, and he's going to prison today. And he knows that. I mean, being around him I'm not real happy. I'm not friends with Tony Shoemaker. But, Your Honor, as I stated, I took an oath, and due to that oath I have to make sure that Tony Shoemaker gets a fair sentence before this Court today. . . .

(Gen. No. 4-03-0744, Vol. IV, R. 47-48)

Defense counsel's argument theory at sentencing was to remind the court of murder cases from Morgan County and the sentences that those defendants had received. Counsel reiterated that the victim in this case was alive, and that

-12-

the defendant should not receive a sentence greater than those defendants who took a life. (Gen. No. 4-03-0744, Vol. IV, R. 48-52)

While comparison of sentences might have been a good tactic by counsel, that trial strategy was not helped by his disparaging remarks about his client moments before he started his comparison argument. Under the *Strickland v. Washington* standard, the two part test for reviewing ineffective assistance of counsel claims is (1) determine whether counsel's performance was deficient and (2) was the defendant prejudiced by that deficient performance. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Mr. Shoemaker received two 30 year sentences – the maximum non-extended term sentence available by law for the home invasion and aggravated criminal sexual assault. Furthermore, the sentences were mandatorily consecutive. Counsel's references to his client's acts as "disgusting," "filthy" and "sickening" did not aid Mr. Shoemaker in his desire to receive sentences at the lower end of the possible sentence range. Nor can that action be overlooked as strategy. It was strategy to argue that he should not be given as severe a sentence as someone who had committed murder, but to have one's own attorney argue that the offense was "sickening and disgusting" did not help get a less than maximum sentence.

Furthermore, defense counsel failed to call potential witnesses in mitigation. Affidavits of various individuals were attached to the defendant's post-conviction petition, and in those affidavits the individuals stated that they had been available to testify on Mr. Shoemaker's behalf at sentencing, were in the courtroom, but were not called as witnesses. (Gen. No. 4-03-0744, Vol. II, C. 56-62)

At the remand hearing, defense counsel Richard Crews testified that he recalled that there were witnesses ready and willing to testify for Mr. Shoemaker at the sentencing hearing, but "it was a decision that I made at the sentencing hearing not to put on family members to testify as to his character, because based upon the nature of the offense, based upon the evidence or the victim impact statement that had been made by the victim in this case, I felt that it was still our best approach just to simply ask for a like sentence from the Court that the Court had handed down in previous cases." (Gen. No. 4-03-0930, Vol. II, R. 46)

Mr. Crews said he assumed that the witnesses Mr. Shoemaker had lined up to testify were not going to say anything bad about him (Gen. No. 4-03-0930, Vol. II, R. 48), but nothing in the record indicated that Mr. Crews had actually interviewed the witnesses to gauge their potential effectiveness as a character witness. The defendant testified that Mr. Shoemaker had told him to have character witnesses, available, and Mr. Shoemaker followed those instructions. The witnesses, however, were never called. (Gen. NO. 4-03-0930, Vol. II, R. 22)

Tony Shoemaker was entitled to a vocal advocate at sentencing. He did not have that. He had an attorney who was clearly displeased with having to represent Mr. Shoemaker, who told the court how "sickening" the defendant's conduct had been, and who refused to call family members to present some mitigating evidence in Mr. Shoemaker's favor. In the case of *People v. Holman*, 164 Ill.2d 356, 647 N.E.2d 960 (1995), the defendant argued in his post-conviction appeal that he should have been given an evidentiary hearing on his allegation that counsel had labored under a conflict of interest as evidenced by the fact that counsel told another lawyer that the defendant deserved the death penalty. That comment was made in private. The trial court, in dismissing the post-conviction petition, held

-14-

that the affidavit from the attorney to whom the comment was made was not sufficient to show ineffective assistance of counsel. 647 N.E.2d at 969.

On appeal, the Supreme Court distinguished the case from *Osborn v. Shillinger*, 861 F.2d 612 (10th Cir. 1988). In that case, it was determined that counsel was deprived of effective assistance of counsel under the decision of *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In *Osborn*, counsel made public remarks, on three occasions, including to the trial court during and after sentencing, that the defendant deserved the death penalty. The comments in *Osborn* included describing the crimes as horrendous and an analogy by defense counsel that his client and the co-defendants were like "sharks in a feeding frenzy" and like animals in all aspects. 861 F.2d at 628. While in *Holman*, "[t]here is nothing in the record before us to indicate that attorney Bjekich ever made a single derogatory comment to the prosecution, the jury, or the trial court judge regarding the defendant." 647 N.E.2d at 970.

The facts of this case are more akin to *Osborn*. Counsel made the derogatory remarks about the defendant to the trial court during the sentencing hearing. He said he was not happy being around the defendant, and that the case was "not fun" to be appointed to in view of the "sickening" and "filthy" actions by the defendant. These remarks by trial counsel, coupled with his failure to present readily available mitigating evidence on the defendant's character, rendered his representation at the sentencing hearing deficient. Without the remarks and with mitigating evidence, it is reasonably likely that Mr. Shoemaker would have received less than the maximum non-extended terms of imprisonment.

In the case of *People v. Howery*, 178 Ill.2d 1, 687 N.E.2d 836 (1997), the defendant alleged that at his death penalty hearing, counsel had been ineffective.

The court held that to prove the ineffectiveness claim, the defendant had to show that counsel's performance was deficient and that there was a reasonable probability that the sentence would have been different if counsel had performed competently. In *Howery*, defense counsel failed to investigate mitigating evidence. He presented only three character witnesses who all said they were not familiar with the evidence but believed the defendant was innocent. There were potential witnesses who would have testified to the defendant's civic involvement, and that he had no prior criminal involvement and suffered from emotional stress and heavy drinking at the time of the offense. The trial court had made the statement that no "meaningful" mitigating evidence had been presented. The Supreme Court found that counsel's actions were objectively unreasonable and that it was reasonably likely that a different sentence would have been imposed if the mitigating evidence had been presented. 687 N.E.2d at 863-865.

The failure of counsel to present readily available character witnesses in mitigation and his derogatory remarks about the defendant at sentencing rendered his representation ineffective. Tony Shoemaker's sentences should be vacated and the cause remanded for a new sentencing hearing with new counsel appointed for Mr. Shoemaker.

## Conclusion

For the foregoing reasons, Tony Shoemaker asks this Court to find that his counsel at sentencing was ineffective and order a new sentencing hearing to be conducted.

DANIEL D. YUHAS
Deputy Defender
Office of the State Appellate Defender
Fourth Judicial District
400 South Ninth Street, Suite 102
P.O. Box 5750
Springfield, IL 62705-5750
(217) 782-3654

KAREN MUNOZ
Assistant Defender

COUNSEL FOR DEFENDANT-APPELLANT

**E-FILED**
Monday, 20 November, 2006  06:56:25 AM
Clerk, U.S. District Court, ILCD

NOS. 4-03-0744 and 4-03-0930, Cons.

IN THE

APPELLATE COURT OF ILLINOIS

FOURTH JUDICIAL DISTRICT

---

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| | ) | the Seventh Judicial Circuit |
| Plaintiff-Appellee, | ) | Morgan County, Illinois |
| | ) | |
| vs. | ) | No. 00-CF-21 |
| | ) | |
| TONY W. SHOEMAKER, | ) | Honorable |
| | ) | Richard T. Mitchell |
| Defendant-Appellant. | ) | Judge Presiding. |

---

<u>BRIEF AND ARGUMENT FOR PLAINTIFF-APPELLEE</u>

Chris Reif
State's Attorney
Morgan County Courthouse
100 West State
Jacksonville, Illinois  62650

Norbert J. Goetten
Director
Robert J. Biderman
Deputy Director
Thomas R. Dodegge
Of Counsel
State's Attorneys Appellate
       Prosecutor
725 South Second Street
Springfield, Illinois  62704
(217) 782 - 8076

COUNSEL FOR PLAINTIFF-APPELLEE

EXHIBIT Q

POINT AND AUTHORITIES                    PAGE

DEFENDANT HAS FAILED TO ESTABLISH THAT TRIAL

COUNSEL WAS INEFFECTIVE IN REGARDS TO SENTENCING  . . . .  2

People v. Coleman, 183 Ill.2d 366, 233 Ill.Dec.

789, 701 N.E.2d 1063 (1998)  . . . . . . . . . . . .  3

People v. Stanley, 246 Ill.App.3d 393, 186 Ill.Dec.

295, 615 N.E.2d 1352 (4th Dist. 1993)  . . . . 8, 9, 11

People v. Whitehead, 169 Ill.2d 355, 215 Ill.Dec.

164, 662 N.E.2d 1304 (1996), overruled on other

grounds, People v. Coleman, 183 Ill.2d 366, 233

Ill.Dec. 789, 701 N.E.2d 1063 (1998) . . . . . . . .  9

People v. Howery, 178 Ill.2d 1, 227 Ill.Dec. 354,

687 N.E.2d 836 (1997)  . . . . . . . . . . . . . 10, 11

People v. Steidl, 142 Ill.2d 204, 154 Ill.Dec. 616,

568 N.E.3d 837 (1991)  . . . . . . . . . . . . . . . 11

People v. Daniels, 331 Ill.App.3d 380, 264 Ill.Dec.

447, 770 N.E.2d 1143 (1st Dist. 2002)  . . . . . 11, 12

Osborn v. Shillinger, 861 F.2d 612 (10th Cir.

1988)  . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Cronic, 466 U.S. 648, 104 S.Ct.

2039, 80 L.Ed.2d 567 (1984)  . . . . . . . . . . . . 12

People v. Holman, 164 Ill.2d 356, 207 Ill.Dec. 467,

647 N.E.2d 960 (1995)  . . . . . . . . . . . . . . . 12

i

## NATURE OF THE CASE

Defendant, Tony Shoemaker, pleaded guilty to aggravated criminal sexual assault and home invasion.  He was sentenced to consecutive terms of 30 years for each offense.

On direct appeal, this court remanded for an inquiry into the factual basis for defendant's claims of ineffective assistance of counsel.  On remand, the trial court rejected defendant's claims of ineffective assistance after a hearing. Defendant has appealed.

<u>ARGUMENT</u>

DEFENDANT HAS FAILED TO ESTABLISH THAT TRIAL COUNSEL WAS INEFFECTIVE IN REGARDS TO SENTENCING.

An initial question is the appropriate standard of review. Defendant filed a pro se petition for post-conviction relief, which the trial court dismissed as being frivolous and patently without merit. (R. Vol. II, C40, C72) This dismissal was appealed in No. 4-03-0744. (R. Vol. II, C76)

Previously, this court had remanded this case to the trial court for an inquiry into the factual basis for defendant's claims of ineffective assistance. <u>People</u> v. <u>Shoemaker</u>, unpublished order under Rule 23, No. 4-01-0300 (April 8, 2002). On remand, counsel was appointed and a motion alleging ineffective assistance of trial counsel was filed. (R. Vol. II, C85) On October 30, 2003, the trial court rejected the claim of ineffective assistance after an evidentiary hearing. (R. Vol. II, 67)

This was appealed in No. 4-03-0930. Pursuant to defendant's motion, case Nos. 4-03-0744 and 4-03-0930 were consolidated on appeal.

On appeal, defendant contends that trial counsel was ineffective in regards to sentencing. Since the trial court conducted an evidentiary hearing on this issue, the appropriate standard of review is whether the trial court's

2

determination was against the manifest weight of the evidence.
See People v. Coleman, 183 Ill.2d 366, 233 Ill.Dec. 789, 701
N.E.2d 1063, 1073 (1998).

On the merits, on May 8, 2000, defendant entered an open
plea of guilty to aggravated criminal sexual assault and home
invasion. (R. Vol. IV, 15) On June 8, 2000, a presentence
investigation report was filed. (R. Vol. I, C78) The report
described the offenses in part as follows:

> The victim stated that she was asleep and was
> awaken [sic] by some noise around 1:00 a.m. She
> advised that the defendant appeared in her bedroom
> and immediately began to physically assault her.
> The defendant grabbed her by her hair and told her
> to "shut-up or I'll kill you". He repeatedly
> struck her with a closed fist in the face and head
> area. From approximately 1:00 a.m. to 7:00 a.m.,
> the defendant repeatedly sexually assaulted her.
> The defendant, during this time, also repeatedly
> physically assault [sic] her. The victim stated
> the defendant struck her about her torso and at one
> time, he knocked the wind out of her. She also
> reported that at one time while being choked she
> passed out. Through out [sic] the incident, the
> repeatedly told the victim that he was going to
> kill her; because, he was not going to go back to
> prison.
>
> The defendant during this assault, made the victim
> perform oral sex three or four times, forced
> vaginal sex approximately five times and ejaculated
> one of these times, and attempted to have anal sex
> on one other occasion.
>
> (R. Vol. I, C79)

The report indicated that defendant had Morgan County
felony convictions for unlawful restraint (No. 91-CF-67),
burglary (No. 93-CF-97), and forgery (No. 97-CF-134). (R.
Vol. I, C81-C82) He also had misdemeanor convictions for,

3

inter alia, battery (No. 91-CM-106), retail theft (No. 93-CM-180), resisting a peace officer (No. 96-CM-2993), criminal damage to property (No. 99-CM-10), and battery (No. 99-CM-353).  (R. Vol. I, C81-C82)

On June 16, 2000, the trial court conducted a sentencing hearing.  (R. Vol. IV, 22) The victim testified that she was 58 years old and had known defendant for about 4 years. (R. Vol. IV, 27) Defendant's father owned a construction company, which had done extensive work on her home.  (R. Vol. IV, 27-28)

Defendant broke into her house through a basement window. (R. Vol. IV, 28) He performed multiple sex acts, which were extremely painful.  (R. Vol. IV, 29) He struck her in the ribs and diaphragm.  (R. Vol. IV, 29) He also caused substantial injuries to her face.  (R. Vol. IV, 30) As a result, she had had two plastic surgeries, and would probably require a third. (R. Vol. IV, 33)

Defendant did not present evidence in mitigation.  (R. Vol. IV, 40)

In closing argument, defense counsel, Richard Crews, stated in part:

> But there are those cases that I'm appointed to
> represent that are just not much fun, and this is
> the <u>coup de grace</u>, so to speak.   What Tony
> Shoemaker did in February is one of the most
> filthy, disgusting things I've ever heard of, and I
> in no way am going to stand here and try to argue
> that it was not.   It's sickening, it's disgusting,
> it's wrong, and he's going to prison today. And he
> knows that.   I mean, being around him I'm not real

4

happy.  I'm not friends with Tony Shoemaker.  But, Your Honor, as I stated, I took an oath, and due to that oath I have to make sure that Tony Shoemaker gets a fair sentence before this Court today.

Now, one thing I will say during my time appearing before this Court is I've been here on sentencing hearings for murder cases.

\*         \*         \*

But Tony Shoemaker is here today to be sentenced for aggravated criminal sexual assault and home invasion, not for murder.

Where am I going with this?  As I stated earlier, Court has always been very consistent in the past with its sentencing guidelines.  What I would like to remind the Court is of the last two murder cases that were sentenced before this Court.  The last one was when Bruce Credit was murdered at the gas station on the corner of South Main and Morton. Two young men came before this Court charged with that murder.  One individual was sentenced to 20 years.  The other one was sentenced to 25 years.

\*         \*         \*

Now, the other previous murder case that was before this Court was Mr. Robert Thompson.  Mr. Thompson was raped, sodomized anally with a broomstick, and left his body to rot in the Dunlap Hotel by two individuals named John Robinson and Albert Spradlin.  His body was only discovered by a lady in the Dunlap Hotel and rotting.  John Robinson was sentenced to 30 years in prison.  Albert Spradlin was sentenced to 25 years in prison.

\*         \*         \*

So, Your Honor, we concur that the sentences will be consecutive, which means sentencing guidelines before the Court six to 30 years on both counts, so basically 12 to 60 years.  We feel that a consistent sentence for Tony Shoemaker within that guidelines [sic] is 10 to 12 years on both counts. He'll serve 20 to 24 years.  Now, 20 to 24 years is a very consistent statement with the sentences that this Court has handed down in the past for murderers.  And Tony Shoemaker is not a murderer.

(R. Vol. IV, 46-51)

5

In sentencing defendant, the trial court stated in part:

> I've considered all aggravating, mitigating factors. I find no mitigating factors -- I agree with the State on that point -- except for defendant's apology which he made to Detective Wood during an interview and which he makes to the Court and the family and to society ' today. I've considered each of them. There really are none beyond that single apology.
>
> As to aggravating factors, I agree substantially with the State. Number one, his conduct certainly caused serious harm. Number three, he has a history of substantial criminal activity. He was on probation, on felony probation at the time of the commission of this offense. That's Number 12. Yes, there is a need to deter this defendant and deter others from similar conduct, obviously, and I believe it's necessary that defendant receive an extensive commitment to the Department of Corrections that'll be in accord with the need to protect the public.
>
> *         *         *
>
> It is the judgment of this Court, Mr. Shoemaker, that you be committed to the Department of Corrections for the home invasion 30 years and for the aggravated criminal sexual assault 30 years, to be served consecutively to the total of 60.
>
> (R. Vol. IV, 59-61)

As noted, on October 30, 2003, the trial court conducted a hearing on defendant's claims of ineffective assistance. (R. Vol. II, 3) In its summary of the evidence presented at the hearing, the State will focus on what is relevant to the argument made by defendant on appeal.

Defense counsel, Kenneth Dobson, introduced affidavits from a number of witnesses, who could have testified in mitigation. (R. Vol. II, 4; see R. Vol. I, 9-15) All these

6

affidavits stated:

> 4.   That on this day in question, I had testimony,
> that I believe would have helped Tony Shoemaker,
> about his Character, and circumstances in general,
> which would have assisted him in mitigation portion
> of the case.

(R. Vol. I, 9-15)

Defendant testified on his own behalf.   (R. Vol. II, 5)
He indicated that he had character witnesses available to
testify at the sentencing hearing.   (R. Vol. II, 22) He also
referred to certain comments made by defense counsel in
closing argument at the sentencing hearing.   (R. Vol. II, 23)

Richard Crews, who had represented defendant through
sentencing, was called as a witness by the State.   (R. Vol.
II, 42-43) He testified:

> When  I  met  with  Mr.  Shoemaker  prior  to  the
> sentencing hearing, and I think if anyone reviews
> the transcripts in this, our whole strategy I guess
> for lack of a better term was to present to the
> Court prior sentences that the Court at that time
> had issued.   And that was the argument that we
> made,  hoping  the  Court  would  consider  those
> sentences that it had handed down earlier and would
> take  into  consideration  what  happened  in  Mr.
> Shoemaker's case and would give a like sentence.

(R. Vol. II, 45)

The following exchange occurred:

> Q.   All right.   And with regard to any family
> members  that  may  now  be  saying  they  wish  to
> testify,  was  there  anybody  presented  to  you  or
> anybody  make  a  request  of  you  at  that  time  to
> testify on behalf of the defendant's good character
> at the sentencing hearing?

A.    Upon listening to Mr. Shoemaker's testimony, I
do recollect the fact that he did have family
members there.  We had talked about that.  It was a
decision that I made at the sentencing hearing not
to put on family members to testify as to his
character, because based upon the nature of the
offense, based upon the evidence or the victim
impact statement that had been made by the victim
in this case, I felt that it was still our best
approach just to simply ask for a like sentence
from the Court that the Court had handed down in
previous cases.

Q.    And that was a matter of trial strategy on
your part?

A.    Yes.

(R. Vol. II, 46)

After hearing arguments of counsel, the trial court
denied the motion alleging ineffective assistance of counsel.
(R. Vol. II, 67)

On appeal, defendant contends that trial counsel was
ineffective at sentencing for making disparaging comments
about defendant, and for failing to call available character
witnesses.

In People v. Stanley, 246 Ill.App.3d 393, 186 Ill.Dec.
295, 615 N.E.2d 1352 (4th Dist. 1993), this court stated:

Here, defendant must show (1) his counsel's
performance at the sentencing hearing fell below an
objective standard of reasonableness under
prevailing professional norms; and (2) the
deficient performance so prejudiced the defense as
to deny the defendant a fair sentencing hearing.
(People v. Perez (1992), 148 Ill.2d 168, '186, 170
Ill.Dec. 304, 312-13, 592 N.E.2d 984, '992-93,
citing People v. Franklin (1990), 135 Ill.2d 78,
116-17, 142 Ill.Dec. 152, 170, 552 N.E.2d 743,
761.)  To establish the deficiency of counsel's
performance, defendant must overcome the strong

8

presumption that his counsel's representation fell
within the range of reasonable professional
assistance. (*Strickland*, 466 U.S. at 689, 104
S.Ct. at 2065, 80 L.Ed.2d at 694.) Defendant is
only entitled to competent representation and not
perfect or successful representation. (*People v.
Hillenbrand* (1988), 121 Ill.2d 537, 548, 118
Ill.Dec. 423, 427, 521 N.E.2d 900, 904.) Failure
to present mitigating evidence at sentencing does
not in itself constitute ineffective assistance of
counsel.

Stanley, 615 N.E.2d at 1360.

If it is easier to dispose of an ineffectiveness claim on

the ground of lack of sufficient prejudice, that course should

be followed. People v. Whitehead, 169 Ill.2d 355, 215

Ill.Dec. 164, 662 N.E.2d 1304, 1316 (1996), overruled on other

grounds, People v. Coleman, 183 Ill.2d 366, 233 Ill.Dec. 789,

701 N.E.2d 1063 (1998). Therefore, the State will first

address the issue of whether defendant has established

prejudice.

In Stanley, this court discussed prejudice as follows:

At sentencing, the trial court noted several
aggravating factors, including that the victim was
handicapped, the victim was over the age of 60, and
the murder was particularly brutal. Given the
overwhelming aggravating evidence, there is no
reasonable probability that the omitted evidence
would have changed the conclusion that the
aggravating circumstances outweighed the mitigating
circumstances. (*People v. Eddmonds* (1991), 143
Ill.2d 501, 535, 161 Ill.Dec. 306, 321, 578 N.E.2d
952, 967.) Accordingly, even if counsel's
performance was somehow deficient, there was no
indication defendant would have received a
different punishment had defense counsel presented
mitigating evidence.

Stanley, 615 N.E.2d at 1360-61.

9

Here, the trial court emphasized the serious harm caused by defendant and his history of criminal activity. (R. Vol. IV, 59-61) These factors were supported by overwhelming evidence. (See R. Vol. I, C79, C81-C82; Vol. IV, 29-33) There was also overwhelming evidence establishing the extraordinarily brutal nature of the offense. (R. Vol. I, C79)

The affidavits from the possible mitigating witnesses all summarized their proposed testimony as follows:

> 4. That on this day in question, I had testimony, that I believe would have helped Tony Shoemaker, about his Character, and circumstances in general, which would have assisted him in mitigation portion of the case.
>
> (R. Vol. I, 9-15)

As indicated, the affidavits are so vague that they fail to establish that the proposed mitigating evidence would have had any significant value. Given the overwhelming aggravating evidence, there is no reasonable probability that defendant would have received a lesser offense, if the mitigating evidence had been presented. Thus, defendant has failed to demonstrate prejudice.

People v. Howery, 178 Ill.2d 1, 227 Ill.Dec. 354, 687 N.E.2d 836 (1997), which is cited by defendant, is readily distinguishable. Howery was a death penalty case. The mitigating evidence, which counsel had failed to present, concerned defendant's extensive civic involvement. Howery,

10

687 N.E.2d at 863.    The State presented no testimony in aggravation at the death penalty hearing.    Howery, 687 N.E.2d at 862.    In the case at bar, unlike in Howery, there was extensive aggravating evidence and the mitigating evidence was essentially undefined.

Defendant has also failed to establish that he was prejudiced the defense counsel's remarks.    Counsel's characterization of the offense as "disgusting and "sickening" accurately described the crime.   (See R. Vol. I, C79) As such, the remarks did not tell the trial judge anything that was not readily apparent from the record.   Consequently, they could not have affected the sentence, when the aggravating evidence is considered.

Moreover, defendant has failed to establish that defense counsel was incompetent.    Whether to present mitigating evidence is a matter of trial strategy.   See People v. Steidl, 142 Ill.2d 204, 154 Ill.Dec. 616, 568 N.E.3d 837, 856 (1991). Defense counsel stated that he was aware of the character witnesses and did not call them because he did not believe that this was the right approach due to the nature of the offense.   (R. Vol. II, 46) Since this decision was a matter of trial strategy, it is not subject to an ineffective assistance claim.   See Stanley, 615 N.E.2d at 1360.

As to the purported derogatory comments, the content of closing argument is generally a matter of trial strategy.   See People v. Daniels, 331 Ill.App.3d 380, 264 Ill.Dec. 447, 770

11

N.E.2d 1143, 1155 (1st Dist. 2002).  Defense counsel's characterization of the crimes as "disgusting" and "sickening" was an attempt to show that regardless of how reprehensible the offenses were, they were still not murder.  Consequently, defendant should not receive a more severe sentence than the court had imposed in two murder cases.  Under the circumstances, defendant has failed to demonstrate the first prong of the Strickland test.  See Daniels, 770 N.E.2d at 1155 (defense counsel's reference to defendant as a "thug" and a "bully" in closing argument matter of trial strategy).

The State suggests that Osborn v. Shillinger, 861 F.2d 612 (10th Cir. 1988), which is cited by defendant, has no real relevance to the case at bar.  In Osborn, the court determined that the defendant was deprived of effective assistance of counsel under United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 567 (1984).  See People v. Holman, 164 Ill.2d 356, 207 Ill.Dec. 467, 647 N.E.2d 960, 970 (1995).  One of the factors considered by the court in ascertaining that defense counsel had abandoned the defendant was trial counsel's remarks at the death penalty hearing.  See Osborn, 861 F.2d at 628.  Since defendant does not argue that Cronic is applicable to the case at bar, Osborn is not on point.

<u>CONCLUSION</u>

WHEREFORE, the PEOPLE OF THE STATE OF ILLINOIS respectfully request this court to affirm the order of the circuit court denying defendant's motion.

Respectfully submitted,

THE PEOPLE OF THE STATE OF ILLINOIS

Chris Reif
State's Attorney
Morgan County Courthouse
100 West State
Jacksonville, Illinois  62650

Norbert J. Goetten
Director
Robert J. Biderman
Deputy Director
Thomas R. Dodegge
Of Counsel
State's Attorneys Appellate
          Prosecutor
725 South Second Street
Springfield, Illinois  62704
(217) 782 - 8076

COUNSEL FOR PLAINTIFF-APPELLEE

13

IN THE

APPELLATE COURT OF ILLINOIS

FOURTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the Circuit Court of |
| | ) | the Seventh Judicial Circuit |
| Plaintiff-Appellee, | ) | Morgan County, Illinois |
| | ) | |
| Vs. | ) | No. 00-CF-21 |
| | ) | |
| TONY W. SHOEMAKER, | ) | Honorable |
| | ) | Richard T. Mitchell |
| Defendant-Appellant. | ) | Judge Presiding. |

NOTICE AND PROOF OF SERVICE

TO:  Darryl Pratscher, Clerk,          Daniel D. Yuhas, Deputy Dfndr.
     Fourth District Appellate Court    Office of the St.Apel.Dfndr.
     201 W. Monroe, P.O. Box 19206      Fourth District
     Springfield, IL 62794-9206         400 S. 9th St., Suite 102
                                        P.O. Box 5750
                                        Springfield, IL 62705-5750

The undersigned certifies that two copies of Plaintiff-Appellee's Brief and Argument were delivered to the Clerk of the Appellate Court; and three copies of same were served upon the defendant's Attorney of Record by enclosing said copies in an envelope addressed as indicated above, and by depositing said envelope, with postage fully prepaid, in the U.S. Mail in Springfield, Illinois, on this 12th day of January, 2005.

Subscribed and sworn to
before me on this 12th
day of January, 2005.

_Carol Smith_, Secretary
State's Attorneys Appellate
Prosecutor

_Shirley Bagby_
NOTARY PUBLIC

OFFICIAL SEAL
SHIRLEY BAGBY
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 1-27-2007

NOS. 4-03-0744, 4-03-0930 cons.

FILED
JUN 3 0 2005
CLERK OF THE
APPELLATE COURT, 4TH DIST.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Morgan County |
| TONY W. SHOEMAKER, | ) | No. 00CF21 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Richard T. Mitchell, |
| | ) | Judge Presiding. |

---

PRESIDING JUSTICE COOK delivered the opinion of the court:

In May 2000, defendant, Tony W. Shoemaker, entered an open plea to one count of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(2) (West 1998)) and one count of home invasion (720 ILCS 5/12-11(a)(2) (West 1998)) committed on February 16, 2002.  On June 16, 2000, the trial court sentenced defendant to consecutive 30-year prison terms, stating that in committing these crimes defendant had "forfeited his right to live among us."  The trial court applied the "truth-in-sentencing" provision of the Unified Code of Corrections (Unified Code), requiring defendant to serve at least 85% of his sentence.  See 730 ILCS 5/3-6-3(a)(2)(ii), (a)(2)(iii) (West 1998).

Defendant filed a number of pro se motions that essentially alleged ineffective assistance of counsel.  The trial court struck those motions, stating that defendant could not file pro se motions while he was represented by counsel.  On April 8, 2002, this court reversed the trial court's order striking

EXHIBIT R



defendant's pro se motions and remanded for a hearing on defendant's ineffective-assistance-of-counsel claim.  People v. Shoemaker; No. 4-01-0300 (April 8, 2002) (unpublished order under Supreme Court Rule 23).  On remand, the trial court appointed new counsel for defendant, who filed a posttrial motion urging the trial court to permit withdrawal of defendant's guilty plea, or in the alternative, reconsider the sentence imposed on defendant, on the basis defendant's trial counsel was ineffective.  The court conducted a hearing on October 30, 2003, and denied the motion.  Defendant filed a notice of appeal, docketed as No. 4-03-0930.  Previously, on August 26, 2003, defendant filed a notice of appeal from the August 11, 2003, summary dismissal of his May 2003 postconviction petition, docketed as No. 4-03-0744.  We have consolidated the appeals.

                              I. BACKGROUND

     At the June 16, 2000, sentencing hearing, evidence was presented that the victim had known defendant for about four years.  Defendant's father owned a construction company that had done extensive work on the victim's home.  Defendant broke into the home through a basement window.  The victim was awakened when defendant entered her bedroom.  From approximately 1 a.m. to 7 a.m., defendant sexually assaulted the victim, performing multiple sexual acts that were extremely painful to her.  Defendant grabbed the victim by the hair and told her, "shut up or I'll kill you."  Defendant repeatedly struck the victim.  At one time, he knocked the wind out of her.  She passed out once while being

                                - 2 -

choked.   Throughout the incident, defendant repeatedly told the
victim he was going to kill her because he was not going to go
back to prison.

Trial counsel's strategy at the June 2000 sentencing
hearing was to discuss sentences other defendants had received in
murder cases that had been before the trial court for sentencing.
Counsel emphasized that defendant did not kill anyone and asked
for a sentence similar to those given in the murder cases.   At
the sentencing hearing, defendant's trial counsel made the
following remarks:

"Your Honor, a few years ago I was ap-
pointed the [p]ublic [d]efender of Morgan
County, and I took an oath to defend individ-
uals to the best of my ability.   I'd like to
think that during that time--I've represented
a few traffic cases, a few misdemeanors,
maybe even a few felonies--that I actually
helped somebody and they were happy that I
represented them.   But there are those cases
that I'm appointed to represent that are just
not much fun, and this is the coup de grace,
so to speak.   What [defendant] did in Febru-
ary is one of the most filthy, disgusting,
things I've ever heard of, and I in no way am
going to stand here and try to argue that it
was not.   It's sickening, it's disgusting,

- 3 -

it's wrong, and he's going to prison today.
And he knows that. I mean, being around him
I'm not real happy. I'm not friends with
[defendant]. But, Your Honor, as I stated, I
took an oath, and due to that I have to make
sure [defendant] gets a fair sentence before
this [c]ourt today.

Now, one thing I will say during my time
appearing before this [c]ourt is I've been
here on sentencing hearings for murder cases.
I've been here for felonies, misdemeanors,
[and] traffic cases. And this [c]ourt has
always been very consistent with its sentenc-
ing guidelines, and that's one of the things
I've always took pride in being before this
[c]ourt is I know I'm going to get a fair
sentence.

Now, with all the evidence we've heard
here today from [the victim] and the
victim[-]impact statement that she wrote and
the information in the [presentence investi-
gation report], one thing stands out, and
that is the fact that she was able to write a
victim[-]impact statement; that she was able
to come here today and testify. And the
point I'm trying to make, Your Honor, is that

- 4 -

> [the victim] is not dead. [She] is alive.
> She has her life.  It's damaged.  I'm not
> trying to say it's not.  And I in no way wish
> to diminish the impact this is going to have
> on the rest of her life.  But [defendant] is
> here today to be sentenced for aggravated
> criminal sexual assault and home invasion,
> not for murder."  (Emphases added.)

Counsel then discussed the two previous murder cases before the court.  Counsel pointed out one of the victims had been raped before being murdered and one of the defendants in that case received a 25-year sentence while the other received a 30-year sentence.  In the other case, one defendant received 20 years' imprisonment while the other received a 25-year sentence.

> Counsel then stated:

> "Once again, Your Honor, I want to reit-
> erate, I am in no way trying to diminish what
> happened here.  But all we're asking for from
> the [c]ourt is consistency.  If the [c]ourt
> takes the State's recommendation and sen-
> tences [defendant] to 80 years in prison,
> what's the message we're sending out there?
> What's the message we're sending?  Well, if
> you're going to do something like this you'd
> better kill your victim, because if you don't
> you're going to prison for a long time.  But

- 5 -

if you kill them now there's no evidence of
home invasion, we don't know how long this
whole thing took place, and you're going to
get a lighter sentence.  We're asking the
[c]ourt to be consistent.  We're asking the
[c]ourt to sentence [defendant] consistently
with the cases that have been before the
[c]ourt in the past."

Defense counsel stated a sentence in the range of 20 to 24 years
would be consistent with "the sentences that this [c]ourt has
handed down in the past for murders.  Defendant is not a mur-
derer."

## II. ANALYSIS

Claims of ineffective assistance of counsel are exam-
ined under the two-pronged performance and prejudice test set
forth in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d
674, 104 S. Ct. 2052 (1984).  People v. Harris, 206 Ill. 2d 293,
303, 794 N.E.2d 181, 189 (2002); see W. LaFave, J. Israel & N.
King, Criminal Procedure §11.10(c), at 132 (2d ed. supp. 2005).
Under Strickland, reviewing courts entertain a strong presumption
that the attorney's performance was a product of sound trial
strategy and professional judgment.  Strickland, 466 U.S. at 689,
80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.  However, where
"counsel entirely fails to subject the prosecution's case to
meaningful adversarial testing, then there has been a denial of
[s]ixth [a]mendment rights that makes the adversary process

- 6 -

itself presumptively unreliable." (Emphasis added.) <u>United</u>
<u>States v. Cronic</u>, 466 U.S. 648, 659, 80 L. Ed. 2d 657, 668, 104
S. Ct. 2039, 2047 (1984). A <u>Cronic</u> violation was found in <u>People</u>
<u>v. Hattery</u>, 109 Ill. 2d 449, 488 N.E.2d 513 (1985), where defense
counsel conceded the defendant was guilty of murder and eligible
for the death penalty. The supreme court, however, concerned
that an unscrupulous defense counsel might deliberately concede
his client's guilt in order to lay the groundwork for a later
reversal, has narrowly construed <u>Hattery</u>. <u>People v. Johnson</u>, 128
Ill. 2d 253, 269, 538 N.E.2d 1118, 1125 (1989). "In situations
where there is overwhelming evidence of guilt and no defense, if
counsel contests all charges he is liable to lose credibility
with the trier of fact when it comes to charges where a legiti-
mate defense exists." <u>Johnson</u>, 128 Ill. 2d at 270, 538 N.E.2d at
1125 (counsel asserted a theory of defense on a number of charges
and vigorously contested that defendant was eligible for the
death penalty). It is not necessarily ineffective assistance for
a defense counsel to waive closing argument at a capital sentenc-
ing hearing; waiving argument may have the advantage of prevent-
ing an impassioned rebuttal argument by the prosecutor. See <u>Bell</u>
<u>v. Cone</u>, 535 U.S. 685, 701-02, 152 L. Ed. 2d 914, 931, 122 S. Ct.
1843, 1854 (2002).

The Supreme Court has refused to find ineffective
assistance where counsel argued his client was a "'bad person,
lousy drug addict, stinking thief, jail bird.'" <u>Yarborough v.</u>
<u>Gentry</u>, 540 U.S. 1, 3, 157 L. Ed. 2d 1, 6, 124 S. Ct. 1, 3,

- 7 -

(2003).  Although the right to effective assistance extends to
closing arguments, deference is particularly important because of
the broad range of defense strategy at that stage.  Yarborough,
540 U.S. at 5-6, 157 L. Ed. 2d at 7-8, 124 S. Ct. at 4.  The
Court rejected the Ninth Circuit's criticism of the quoted
remarks, which the Ninth Circuit apparently viewed

>  "as a gratuitous swipe at Gentry's character.
>  While confessing a client's shortcomings might
>  remind the jury of facts they otherwise would
>  have forgotten, it might also convince them
>  to put aside facts they would have remembered
>  in any event.  This is precisely the sort of
>  calculated risk that lies at the heart of an
>  advocate's discretion.  By candidly acknowledg-
>  ing his client's shortcomings, counsel might
>  have built credibility with the jury and per-
>  suaded it to focus on the relevant issues in
>  the case."  Yarborough, 540 U.S. at 9, 157
>  L. Ed. 2d at 10, 124 S. Ct. at 6.

The Supreme Court cited a number of works on trial techniques to
support its position, concluding with Aristotle:  "'A speech
should indicate to the audience that the speaker shares the
attitudes of the listener, so that, in turn, the listener will
respond positively to the views of the speaker.'"  Yarborough,
540 U.S. at 11, 157 L. Ed. 2d at 11, 124 S. Ct. at 7, quoting P.
Lagarias, Effective Closing Argument §§2.05 through 2.06, at 99-

- 8 -

101 (1989) (citing Aristotle's Rhetoric).

This case has differences from Yarborough. Yarborough was a habeas corpus case, where the Ninth Circuit had reversed a finding of the state court. Judicial review of a defense attorney's summation is "doubly deferential when it is conducted through the lens of federal habeas." Yarborough, 540 U.S. at 6, 157 L. Ed. 2d at 8, 124 S. Ct. at 4. Yarborough also involved a closing argument to a jury, while the present case involved an argument to a judge, on sentencing. The remarks in the present case also appear to be more extensive than those in Yarborough. Nevertheless, we cannot say that defense counsel's representation in this case was ineffective.

This is not a case where defense counsel completely failed to test the prosecution's case. Certainly the argument that murderers received lesser sentences than the maximum nonextended consecutive sentences in this case was a reasonable argument. Nor can we conclude that counsel's disparaging remarks were nothing more than "a gratuitous swipe at [defendant's] character." The argument was made to the trial court, not to a jury, and the trial court already knew that defendant's actions were filthy and disgusting. As in Yarborough, by candidly acknowledging his client's shortcomings, counsel may have built credibility with the court and persuaded the court to focus its attention not on defendant's character, but the sentencing structure that might punish defendant more severely than a murderer. Counsel's strategy does not constitute ineffective

assistance simply because it was unsuccessful. <u>People v. Milton</u>, 354 Ill. App. 3d 283, 290, 820 N.E.2d 1074, 1079-80 (2004) (counsel conceded the defendant's possession of drugs but attacked element of knowledge).

Defendant also argues defense counsel was ineffective for failing to call him and several character witnesses to testify at the sentencing hearing. At the October 30, 2003, evidentiary hearing, defendant was given an opportunity to state what he could have testified to. Defendant was unable to add anything to the facts already known to the court. Defendant attached affidavits from his suggested character witnesses, but those affidavits said only that they had testimony they believed would have helped defendant. Defense counsel testified that he made a conscious choice not to put on family members to testify as to defendant's character. Defendant has failed to show that the witnesses would have made a difference in the sentence he received. See <u>People v. Jackson</u>, 149 Ill. 2d 540, 553-54, 599 N.E.2d 926, 932 (1992). The trial court did not err in summarily dismissing defendant's postconviction petition.

### III. CONCLUSION

We affirm the trial court's judgment.

Affirmed.

TURNER and MYERSCOUGH, JJ., concur.

E-FILED
Monday, 20 November, 2006  06:56:52 AM
Clerk, U.S. District Court, ILCD

ORIGINAL

No. **101102**

No._____

IN THE SUPREME COURT OF THE STATE OF ILLINOIS

| | |
|---|---|
| PEOPLE ~~OF THE~~ STATE OF ILLINOIS, ) <br> ) <br> ~~Plaintiff-Appellee,~~ ) <br> *Respondent* ) <br> ) <br> -vs- ) <br> ) <br> ) <br> ) <br> TONY W. SHOEMAKER ) <br> ~~Defendant-Appellant, Pro se.~~ ) <br> *Petitioner* | Petition For Leave To Appeal From the Appellate Court of Illinois, Fourth Judicial District, Appeal No. 4-03-0744, 4-03-0930 <br><br> There Heard on Appeal From the Circuit Court For the 7th Judicial Circuit, Morgan County, Illinois, Case No. 00-CF-21 <br><br> Honorable Richard T. Mitchell, Judge Presiding. |

**PETITION FOR LEAVE TO APPEAL**

TO THE HONORABLE JUSTICE OF THE SUPREME COURT OF THE STATE OF ILLINOIS:

**FILED**

AUG 8 - 2005

**SUPREME COURT CLERK**

Tony Shoemaker
Reg. No. B-23560
P. O. Box 711
Menard, Illinois  62259

35-080405
0- 063005
No RH

## I.
## PRAYER TO LEAVE TO APPEAL

I Tony Shoemaker, pro se, respectfully petitions this
Honorable Court for Leave to Appeal pursuant to Supreme Court
Rule 315, from the judgment of the Appellate Court of Illinois,
Fourth Judicial District, which affirmed the judgment of conviction
entered by the Circuit Court of Morgan County, Illinois for the
crimes of Aggravated criminal sexual assault and home invasion.

## II.
## OPINION AND PROCEEDINGS

In May of 2000, Petitioner plead guilty to one count of
Aggravated criminal sexual assault, and one count of home
invasion. On June 16, 2000, the trial court sentenced defendant
to consecutive 30 year prison terms. He appealed this conviction
to the Illinois Appellate Court, Fourth Judicial District.
On June 30, 2005,the decision of the Circuit Court was affirmed
by the Appellate Court. The Court delivered its opinion in
said appeal, affirming the judgment of conviction and sentence.
No Petition for rehearing was filed. On July 21, 2005, a
Letter of Intent to file a Petition for Leave to Appeal was
filed.

## III.
## POINTS AND AUTHORITIES

Mr. Shoemaker's counsel did not provide effective representation
at the sentencing hearing when he made disparagine comments about
Mr. Shoemaker and failed to call available witnesses to testify
to Mr. Shoemaker's character. Failure to do these things, caused
Mr.Shoemaker irreversable harm in that he recieved a harsher
term of imprisonment due to the remarks, as well as provide the
court with better information on which to sentence Mr. Shoemaker
for the crimes in which he plead guilty. (See attached Page 9)

1

## Statement of Facts

Morgan County Case No. 00-CF-21 charged Tony Shoemaker with aggravated criminal sexual assault and home invasion. (Gen. No. 4-03-0744, Vol. I, C. 6-8) Mr. Shoemaker pled guilty on May 8, 2000 to both counts. (Gen. No. 4-03-0744, Vol. I, C. 24; Vol. IV) Mr. Shoemaker entered an open plea to the charges. He was admonished of mandatory consecutive sentences and was notified of the truth-in-sentencing provisions requiring that he serve 85 % of any sentence on the aggravated criminal sexual assault charge, and that if great bodily harm was found regarding the home invasion charge, he would have to serve 85% of that sentence. He was also admonished of the possibility of extended term sentences. The rights Mr. Shoemaker waived by pleading guilty were explained to him, and Mr. Shoemaker indicated no promises or threats had been made to him to force him to plead guilty. (Gen. No. 4-03-0744, Vol. IV, R. 3-15)

The State presented a factual basis for the plea (Gen. No. 4-03-0744, Vol. IV, R. 15-16), and the court accepted the plea and entered judgment on both counts. (Gen. No. 4-03-0744, Vol. IV, R. 16)

Sentencing occurred on June 16, 2000. At that time, Mr. Shoemaker was sentenced to 30 years' imprisonment for aggravated criminal sexual assault and a consecutive 30 years' imprisonment for home invasion. The court also made a finding that great bodily harm to the victim occurred for truth-in-sentencing purposes. The court did not impose extended term sentences. The defendant was ordered to make restitution in the amount of $40,550 plus 9% interest, pay costs and a $100 sexual assault fine, and the court ordered 50% of his DOC wages withheld to apply to fines, costs and restitution. (Gen No. 4-03-0744, Vol. I, C. 27; Vol. IV, R. 24-63)

Counsel filed a motion to reconsider sentence on July 5, 2000. (Gen. No. 4-03-0744, Vol. I, C. 33-34) The defendant filed a *pro se* motion to reduce sentence and *pro se* motion to withdraw plea on July 7, 2000. (Gen. No. 4-03-0744, Vol. I, C. 38-47) A hearing on the motion to reconsider sentence was scheduled for August 15, 2000. On that date, the State's motion to strike the defendant's *pro se* motions because the defendant was represented by counsel was granted. (Gen. No. 4-03-0744, Vol. III, R. 29-30) The defendant moved to reinstate his *pro se* motions on October 10, 2000. He also filed a motion for new counsel, alleging that his attorney, Richard Crews, had not effectively represented him. (Gen. No. 4-03-0744, Vol. I, C. 53-59) Mr. Shoemaker then wrote to the court in a letter filed on October 16, 2000 and asked the court to withdraw those motions. (Gen. No. 4-03-0744, Vol. I, C. 61)

The hearing on the counsel filed motion to reconsider sentence was continued until October 24, 2000. At that time, Mr. Shoemaker attempted to testify to new evidence and the State objected. The cause was then continued and did not resume until March 27, 2001. (Gen. No. 4-03-0744, Vol. III, R. 40-46, 65) At that time, counsel presented argument on the motion. (Gen. No. 4-03-0744, Vol. III, R. 65-71) The trial court denied the defendant's motion to reconsider. (Gen. No. 4-03-0744, Vol. III, R. 71-72) Counsel indicated to the court he was filing a certificate in compliance with Supreme Court Rule 604(d) on the date of the hearing. (Gen. No. 4-03-0744, Vol. III, R. 72-73) The certificate was filed April 3, 2001. (Gen. No. 4-03-0744, Vol. I, C. 68) A notice of appeal was filed on behalf of Mr. Shoemaker on April 3, 2001. (Gen. No. 4-03-0744, Vol. I, C. 70)

On April 8, 2002, this Court affirmed in part, finding no *Apprendi* violation with the great bodily harm finding for truth-in-sentencing purposes on the home

3

invasion charge, ordering fine credit, vacating that portion of the sentencing order that 50% of DOC wages would be withheld and remanding for a hearing on the defendant's ineffective assistance of counsel claim which was dismissed by the trial court without consideration. (Gen. No. 4-01-0300; Vol. II, C. 12-21) That remand is the subject of the appeal in 4-03-0930.

Mr. Shoemaker also filed a post-conviction petition on May 30, 2003. In that petition, he alleged that his consecutive sentences violated the holding of *Apprendi v. New Jersey*, that the truth-in-sentencing provisions violated *Apprendi*, that the aggravated criminal sexual assault statute was unconstitutional as a triple enhancement, and that counsel was ineffective for "failure to protect his client's rights" and by "failure to withdraw the defendant's guilty plea as requested." (Gen. No. 4-03-0744, Vol. II, C. 40-63) Mr. Shoemaker then filed a *pro se* motion to supplement the post-conviction petition on July 24, 2003. (Gen. No. 4-03-0744, Vol. II, C. 66-71) The trial court dismissed the defendant's petition and supplement as frivolous and patently without merit on August 11, 2003. (Gen. No. 4-03-0744, Vol. II, C. 72) Mr. Shoemaker is appealing that finding in Gen. No. 4-03-0744. (Gen. No. 4-03-0744, Vol. II, C. 76)

The appeal in General No. 4-03-0930 is from the ruling on remand following inquiry into the defendant's claim of ineffective assistance of counsel. On remand, counsel was appointed to represent Mr. Shoemaker. Counsel filed a post-trial motion on behalf of Mr. Shoemaker on September 26, 2003. (Gen. No. 4-03-0744, Vol. II, C. 85) In the motion, counsel alleged that the plea was not voluntary, that trial counsel had failed to file a motion to suppress statements, failed to investigate DNA test results, failed to provide the defendant with discovery information, failed to file a motion to suppress arrest, and failed to file a motion

4.

to withdraw guilty plea as requested by the defendant. The motion also alleged that the sentences imposed were excessive and that counsel was ineffective at sentencing because he did not object to other crimes evidence introduced at the sentencing hearing, failed to call available witnesses on behalf of the defendant, and made comments in his sentencing argument that the defendant's acts were "one of the most filthy, disgusting things I have ever heard of . . .; and that "I mean, being around him, I'm not real happy." (Gen. No. 4-03-0744; Vol. II, C. 85-89)

At the remand hearing, Mr. Shoemaker testified that his attorney had gone to visit him in the county jail twice and told him the best thing to do was enter an open plea. (Gen. No. 4-03-0930, Vol. II, R. 8) Mr. Shoemaker said that he had written to his attorney when he was first appointed and asked him to file various motions, including a motion for substitution of judge, a motion for change of venue and motion to suppress statements. (4-03-0930, Vol. II, R. 9) Judge Bone had sentenced Mr. Shoemaker on other occasions and the defendant did not believe he could get a fair sentence. (4-03-0930, Vol. II, R. 9-10) As to the suppression of statements, Mr. Shoemaker claimed that the police officer interviewing him, Detective Snelling, told him that he would call the State's Attorney and help the defendant get a lenient sentence if Shoemaker first made a statement. He also alleged that he was not read his constitutional rights until the following morning when he was interviewed by a different officer. (4-93-0930, Vol. II, R. 11-12)

Mr. Shoemaker testified that he was not allowed to review the discovery before he pled guilty, and he had wanted to know the DNA test results. (4-03-0930, Vol. II, R. 14) He also claimed that on May 7, 2000, the day before the

defendant pled guilty, trial counsel visited the defendant and told him "he was sorry that he hadn't come over to see me or that he was sorry that my phone calls hadn't been answered but he just didn't have the heart to tell me what the State was asking for to give me." (4-03-0930, Vol. II, R. 16) The defendant said he never knew what the State offered and his attorney advised him to enter an open plea of guilty. Shoemaker allegedly wrote his attorney that evening that he wished to go to trial. (4-03-0930, Vol. II, R. 16-17) The following morning, counsel went to the jail and allegedly asked Shoemaker "what the hell my problem was now." Counsel then told Mr. Shoemaker that if he did not plead guilty, and went to trial, "they're going to, they will give you 120 years, and I'm not going to go over there and make myself look like an ass in the courtroom." (4-03-0930, Vol. II, R. 17)

Mr. Shoemaker said he pled guilty because his attorney acted like he did not want to help the defendant. (4-03-0930, Vol. II, R. 17) After sentencing, the defendant asked his counsel to move to withdraw the plea. The defendant was also displeased with his attorney's representation at sentencing. He wanted his attorney to object to the aggravation evidence concerning other crimes for which Mr. Shoemaker was never arrested or charged, and he wanted his attorney to call witnesses to testify in his behalf. (4-03-0930, Vol. II, R. 21-22)

While Mr. Shoemaker made a statement at sentencing, he believed he should have testified at the hearing. (4-03-0930, Vol. II, R. 24-26)

Detective Jack Wood testified at the remand hearing that he interviewed Mr. Shoemaker on February 17 and 18, 2000 and in those interviews Mr. Shoemaker admitted to the home invasion and sexual assault. Detective Wood also testified that in view of the identification by the victim and Mr. Shoemaker's confessions, People's Exhibits 1 and 2, no blood samples were ever submitted for DNA analysis.

(4-03-0930, Vol. II, R. 32-33) Detective Wood was not aware of any other police officer speaking with Mr. Shoemaker. (4-03-0930, Vol. II, R. 33-34)

Sergeant Kelly Surratt of the Jacksonville Police Department assisted in the defendant's arrest on February 16, 2000. The police went to a residence rented by Travis Matthews looking for the defendant. Through the window, they could see the defendant asleep on the couch inside the residence. When Matthews answered the door, police told him they had an arrest warrant for the defendant. Matthews "stepped aside and said go ahead." (4-03-0930, Vol. II, R. 36-37)

Surratt took the defendant to the Jacksonville Police Department rather than the county jail. He was placed in booking and later moved to the county jail. (4-03-0930, Vol. II, R. 38-40)

Mr. Richard Crews, the defendant's trial attorney, testified that he met with Mr. Shoemaker at the county jail and they discussed evidentiary issues, including the defendant's admissions and the testimony of the victim. Crews said that when evaluating the victim's testimony and the statements the defendant made to Detective Wood, they started talking about an open plea. Crews could not recall the initial reaction of the defendant when Crews suggested a plea. Crews said he focused more on sentencing than on trial at that point. (4-03-0930, Vol. II, R. 43-44, 50)

Crews admitted that the defendant talked about trying to withdraw his plea but then decided to proceed to sentencing. The sentencing strategy was to present to the court data on other sentences that had been imposed for a more serious offense and hope that it would influence the court to give a lighter sentence. (4-03-0930; Vol. II, R. 45) Crews said he did not believe that the defendant's family members or the defendant's own testimony would benefit the argument for a

lenient sentence. The trial strategy was to remind the court of lesser sentences imposed for more serious crimes and hope for a sentence less than the maximum. That strategy did not work. (4-03-0930, Vol. II, R. 45-46) Mr. Crews did not recall the defendant's thoughts regarding testifying at the sentencing hearing or the details of his family members offering testimony. (4-03-0930, Vol. II, R. 47-48)

Tonya Shoemaker, the defendant's sister, recalled the night her brother was arrested. She had told police where her brother was when they came looking for him. Ms. Shoemaker arrived at Travis Matthews' house as the police were escorting her brother out of the home. She noticed Travis Matthews was a block and a half away, walking toward his home. Tonya had told police officers that she was concerned about her brother's mental health. (4-03-0930, Vol. II, R. 52-54)

After argument by counsel, the trial court ruled that Mr. Shoemaker had not proved that his guilty plea counsel had been ineffective. (4-03-0930, Vol. II, R. 56-67) Mr. Shoemaker filed a notice of appeal from that ruling on October 30, 2003. (4-03-0930, Vol. I, C. 16)

8

V.

ARGUMENT

In Yarborough v. Gentry, 540 U.S. 1, 3, 157 L ed. 2d 1, 6, 124 S. Ct. 1, 3,(2003),although the comments made, were made in front of a jury, still pose to the defenant the same loss of liberty as do the comments made to the jury in Yarborogh.

Here, in the opinion of the court (See page 9); the court admits "The remarks in the present case also appear to be more extensive than those in Yarborough", Comments more extensive in front of a Judge, Jury or trier of fact, only become harmful in the final fact, that they either result in the conviction of the Defendant, which in turn results in the loss of liberty of the defendant. In sentencing, the judge is to decide what loss, as in this case, a substantial one will occure to the defendant based on the information that judge hears at sentencing. How can a comment made infront of a jury be any LESS damaging, than one made to a judge, when the result; loss of liberty is the same in both cases ?

These comments, which are "more extensive than those in Yarborough", and not merely "a gratuitous swipe at defendant's character".. The idea, that counsel may have built credibility with the court is rediculous. This is not sound trial strategy and professional judgment. Nor does this in any way subject the prosecutions case to meaningful adversarial testing.

The defendant also argues the fact cousel failed to call character witnesses to testify at the sentencing hearing. The fact the court relies on is Defendant failed to show that the witnesses would have made a difference in the sentence he received. But without the testimony of these people, who are we to judge or know with any certainty, what effect

9

that testimony would have had during the sentencing hearing. Without that testimony, we will probably never know.  The fact is not only would the testimony have made a difference, but why after repeated requests by the defendant, were these people not called ?

VI.

CONCLUSION


   In closing, the Appellate Court of Illinois errored in
it's findings that Mr. Shoemaker should not be remanded
back to the Circuit Court for resentencing, and the fact
that the trial counsel for MR. Shoemaker was not ineffective
in his representation and overall conduct during the
sentencing phase of Mr. Shoemakers case.


   Our prayer, is that the Supreme Court of Illinois reverse
the decision of the Illinois Appellate Court and grant Mr.
Shoemaker a new sentencing hearing.




                              Respectfully Submitted,
SUBSCRIBED AND SWORN TO BEFORE

ME ON THIS _02_ DAY OF AUGUST, 2005

_Timothy D. Sapp_                   _Tony Shoemaker_
NOTARY PUBLIC                       Tony Shoemaker, Petitioner


         "OFFICIAL SEAL"
         TIMOTHY D. SAPP
      NOTARY PUBLIC, STATE OF ILLINOIS
      MY COMMISSION EXPIRES 6/19/2007

## STATE OF ILLINOIS
### SUPREME COURT

At a Term of the Supreme Court, begun and held in Springfield, on Monday, the fourteenth day of November, 2005.

Present: Robert R. Thomas, Chief Justice

| | |
|---|---|
| Justice Charles E. Freeman | Justice Mary Ann G. McMorrow |
| Justice Thomas R. Fitzgerald | Justice Thomas L. Kilbride |
| Justice Rita B. Garman | Justice Lloyd A. Karmeier |

---

On the first day of December, 2005, the Supreme Court entered the following judgment:

No. 101102

People State of Illinois,

    Respondent

    v.

Tony W. Shoemaker,

    Petitioner

Petition for Leave
to Appeal from
Appellate Court
Fourth District
4-03-0744
4-03-0930
00CF21

The Court having considered the Petition for leave to appeal and being fully advised of the premises, the Petition for leave to appeal is DENIED.

As Clerk of the Supreme Court of the State of Illinois and keeper of the records, files and Seal thereof, I certify that the foregoing is a true copy of the final order entered in this case.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the Seal of said Court, this twenty-third day of December, 2005.

*Juleann Hornyak*

    Clerk,
Supreme Court of the State of Illinois

EXHIBIT T