E-FILED
Monday, 09 June, 2008  02:07:33 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| TONY SHOEMAKER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 06-3187 |
| | ) | |
| DONALD HULICK, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## <u>OPINION</u>

RICHARD MILLS, U.S. District Judge:

Petitioner Tony Shoemaker ("Shoemaker") seeks habeas corpus relief in this Court.

For the following reasons, his petition must be denied.

## I.  BACKGROUND

On May 8, 2000, Shoemaker pled guilty to aggravated criminal sexual assault and home invasion.  A sentencing hearing was held, which the Illinois Appellate Court described in detail:

> At the June 16, 2000, sentencing hearing, evidence was
> presented that the victim had known defendant for about four

years. Defendant's father owned a construction company that had done extensive work on the victim's home. Defendant broke into the home through a basement window. The victim was awakened when defendant entered her bedroom. From approximately 1 a.m. to 7 a.m., defendant sexually assaulted the victim, performing multiple sexual acts that were extremely painful to her. Defendant grabbed the victim by the hair and told her, "shut up or I'll kill you." Defendant repeatedly struck the victim. At one time, he knocked the wind out of her. She passed out once while being choked. Throughout the incident, defendant repeatedly told the victim he was going to kill her because he was not going to go back to prison.

Trial counsel's strategy at the June 2000 sentencing hearing was to discuss sentences other defendants had received in murder cases that had been before the trial court for sentencing. Counsel emphasized that defendant did not kill anyone and asked for a sentence similar to those given in the murder cases. At the sentencing hearing, defendant's trial counsel made the following remarks:

> "Your Honor, a few years ago I was appointed the [p]ublic [d]efender of Morgan County, and I took an oath to defend individuals to the best of my ability. I'd like to

think that during that time-I've represented a few traffic cases, a few misdemeanors, maybe even a few felonies-that I actually helped somebody and they were happy that I represented them. But there are those cases that I'm appointed to represent that are just not much fun, and this is the *coup de grace,* so to speak. *What* [ *defendant*] *did in febrUAry* [sic] *is one of the most filthy, disgusting, things I've ever heard of,* and I in no way am going to stand here and try to argue that it was not. It's sickening, it's disgusting, it's wrong, and he's going to prison today. And he knows that. *I mean, being around him I'm not real happy. I'm not friends with* [ *defendant*]. But, Your Honor, as I stated, I took an oath, and due to that I have to make sure [defendant] gets a fair sentence before this [c]ourt today.

Now, one thing I will say during my time appearing before this [c]ourt is I've been here on sentencing hearings for murder cases. I've been here for felonies, misdemeanors, [and] traffic cases. And this [c]ourt has always been very consistent with its sentencing guidelines, and that's one of the things I've always took pride in being before this [c]ourt is I know I'm going to get a fair sentence.

Now, with all the evidence we've heard here today from [the victim] and the victim[-]impact statement that

3

she wrote and the information in the [presentence investigation report], one thing stands out, and that is the fact that she was able to write a victim[-]impact statement; that she was able to come here today and testify. And the point I'm trying to make, Your Honor, is that [the victim] is not dead. [She] is alive. She has her life. It's damaged. I'm not trying to say it's not. And I in no way wish to diminish the impact this is going to have on the rest of her life. But [defendant] is here today to be sentenced for aggravated criminal sexual assault and home invasion, not for murder." (Emphases added.)

Counsel then discussed the two previous murder cases before the court. Counsel pointed out one of the victims had been raped before being murdered and one of the defendants in that case received a 25-year sentence while the other received a 30-year sentence. In the other case, one defendant received 20 years' imprisonment while the other received a 25-year sentence.

Counsel then stated:

"Once again, Your Honor, I want to reiterate, I am in no way trying to diminish what happened here. But all we're asking for from the [c]ourt is consistency. If the [c]ourt takes the State's recommendation and sentences

4

[defendant] to 80 years in prison, what's the message we're sending out there? What's the message we're sending? Well, if you're going to do something like this you'd better kill your victim, because if you don't you're going to prison for a long time. But if you kill them now there's no evidence of home invasion, we don't know how long this whole thing took place, and you're going to get a lighter sentence. We're asking the [c]ourt to be consistent. We're asking the [c]ourt to sentence [defendant] consistently with the cases that have been before the [c]ourt in the past."

Defense counsel stated a sentence in the range of 20 to 24 years would be consistent with "the sentences that this [c]ourt has handed down in the past for murders. Defendant is not a murderer."

*Shoemaker*, 358 Ill. App. 3d at 258-60, 294 Ill. Dec. 876, 831N.E.2d 1201 (alterations in the original).

Rejecting defense counsel's suggestions, the trial judge sentenced Shoemaker to 30 years imprisonment for each offense. He further ordered that the terms be served consecutively and required the defendant to serve at least 85% of his sentence pursuant to the truth-in-sentencing provision

of the Unified Code of Corrections.  *See* 730 Ill. Comp. Stat. 5/3-6-3(a)(2)(ii), (a)(2)(iii).  Shoemaker's trial counsel filed a motion for reconsideration of the sentence, which was denied.

Shoemaker appealed his sentence, arguing that (1) the trial court erred by striking, rather than investigating, various *pro se* motions alleging ineffective assistance and (2) the truth-in-sentencing provision of the Unified Code, § 3-6-3(a)(2)(ii), violated *Apprendi v. New Jersey*, 530 U.S. 446, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).[1]  *People v. Shoemaker*, 328 Ill. App. 3d 1106, 288 Ill. Dec. 102, 817 N.E.2d 277 (Ill. App. Ct. April 8, 2002) (table).  The Fourth District Appellate Court affirmed the validity of the truth-in-sentencing provision but reversed and remanded after finding that the trial court had erred in summarily dismissing Shoemaker's *pro se* motions.  Shoemaker filed a petition for leave to appeal on the basis of his *Apprendi* claim.  The Illinois Supreme Court denied the petition.  *People v. Shoemaker*, 201 Ill. 2d 605, 271 Ill. Dec. 939, 786 N.E.2d 197 (Ill. Oct. 2, 2002) (table).

---

[1]Shoemaker also made arguments relating to the imposition and collection of fines against him.

6

On remand, the trial court addressed Shoemaker's ineffective assistance claims. The trial court appointed new counsel, and Shoemaker argued for the withdrawal of his plea or, alternatively, reconsideration of his sentence. After conducting a hearing, the Court denied the motions. Shoemaker again appealed.

Shoemaker also filed a *pro se* postconviction petition. There, he made numerous arguments relating to *Apprendi*, ineffective assistance, and other alleged constitutional violations. The trial court dismissed the petition, and a supplemental petition, as frivolous and patently without merit. Shoemaker appealed.

The appellate court consolidated Shoemaker's appeal from remand and from the dismissal of his postconviction petition. Shoemaker's briefs alleged ineffective assistance of counsel based on (1) prejudicial statements made during sentencing and (2) the failure to call character witnesses at the sentencing hearing. Accordingly, the appellate court only discussed these two claims, and did not mention the postconviction petition claims. *See People v. Shoemaker*, 358 Ill. App. 3d 257, 294 Ill. Dec. 876, 831 N.E.2d

1201 (Ill. App. Ct. 2005).  The court ultimately rejected Shoemaker's arguments, concluding that the "prejudicial statements" were part of a trial strategy and did not amount to ineffective assistance.  *Id.* at 1204-06. Further, the court refused to find ineffective assistance based on trial counsel's failure to call witnesses during sentencing, because Shoemaker "failed to show that the witnesses would have made a difference in the sentence he received." *Id.* at 1206.

Once again, Shoemaker filed a petition for leave to appeal with the Illinois Supreme Court.  Like his previous appellate brief and the appellate opinion, his petition was based solely on claims of ineffective assistance stemming from (1) prejudicial remarks and (2) the failure to call mitigation witnesses.  The Supreme Court denied the petition. *People v. Shoemaker*, 217 Ill. 2d 588, 300 Ill. Dec. 373, 844 N.E.2d 45 (Ill. Dec. 1, 2005).

On June 29, 2006, Shoemaker filed the present habeas petition, alleging ineffective assistance of counsel and various *Apprendi* violations.[2]

---

[2]Shoemaker also attempted to file a petition to vacate the state court judgment on August 21, 2006.  This petition was rejected and Shoemaker failed to properly appeal the case.

## II.  AEDPA STANDARDS

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief may be granted "if the state court's 'decision was contrary to, or involved an unreasonable application of, Supreme Court precedent. . . . '" *Virsnieks v. Smith*, 521 F.3d 707, 713 (7th Cir. 2008) (quoting *Daniels v. Knight*, 476 F.3d 426, 433 (7th Cir. 2007)).  The "contrary to" provision is satisfied where "the state court reached a result opposite to that reached by the Supreme Court on materially indistinguishable facts."  *Id.*  To satisfy the "unreasonable application" provision, "a habeas petitioner must show that the state court's decision unreasonably applied clearly established Supreme Court precedent by unreasonably extending a rule to a context where it should not have applied or by unreasonably refusing to extend a rule to a context where it should have applied."  *Id.* (citing *Jackson v. Miller*, 260 F.3d 769, 774 (7th Cir. 2001)).

## III.  ANALYSIS

Shoemaker raises an assortment of claims: (1) ineffective assistance

of trial counsel based on (a) his lawyer coercing him into a guilty plea, (b) the failure to offer mitigating testimony at sentencing, (c) allegedly prejudicial remarks made by his counsel during closing statements, (d) a failure to raise an *Apprendi* objection to the imposition of consecutive sentences, and (e) a failure to object to the government's inference that he had committed other crimes, (2) ineffective assistance of appellate counsel, (3) *Apprendi* violations based on (a) the imposition of consecutive sentences and (b) the alleged invalidity of a Truth-in-Sentencing provision, and (4) that the Illinois courts misapplied the "single course of conduct" rule.

## A.    Procedurally Defaulted Claims

"A petitioner is generally required to exhaust all of his available state court remedies before seeking a writ of habeas corpus in federal court." *Lieberman v. Thomas*, 505 F.3d 665, 669 (7th Cir. 2007) (citing 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971)).  Thus, a petitioner must "'present the state courts with the same claim he urges upon the federal courts.'" *Id.* (quoting *Picard*, 404 U.S. at 275-76, 92 S. Ct. 509, 30 L. Ed. 2d 438).  "'A habeas petitioner

who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim.'" *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005) (quoting *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004)).

Shoemaker failed to present a number of his ineffective assistance claims to the Illinois appellate courts: (1) the theory that his trial counsel coerced him into pleading guilty, (2) his trial counsel's alleged failure to object to consecutive sentences based on *Apprendi* grounds, (3) his trial counsel's failure to object to the State's inference that he had committed other crimes, and (4) his appellate counsel's ineffectiveness.[3]   Further, Shoemaker also failed to raise in the Illinois appellate courts his theories

---

[3]Shoemaker's legal theories of ineffective assistance and *Apprendi* violations have multiple strands.  For example, Shoemaker's ineffective assistance of counsel claim is based not only on prejudicial statements but also on whether his counsel coerced him into taking a plea.  The Seventh Circuit, however, has required petitioners to "'present both the operative facts and the legal principles that control each claim to the state judiciary.'"  *Stevens v. McBride*, 489 F.3d 883, 893-94 (7th Cir. 2007) (quoting *Rittenhouse v. Battles*, 263 F.3d 689, 695 (7th Cir. 2001)).  Thus, this Court will treat each ineffective assistance theory as a separate claim that had to be properly exhausted.  *See Stevens v. McBride*, 489 F.3d 883, 893-94 (7th Cir. 2007); *see also Lewis v. Sternes*, 390 F.3d 1019 (7th Cir. 2004).

that *Apprendi* barred the imposition of a consecutive sentence based on "brutal and heinous" acts and that the Illinois courts misapplied their sentencing rules in finding a "single course of conduct."  As such, these claims are procedurally barred.  *See Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (noting that "a petitioner must have directly appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court").

A petitioner may avoid a procedural default bar by establishing cause and prejudice or a fundamental miscarriage of justice.  *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)); *Guest*, 474 F.3d at 930.  While the ineffective assistance of appellate counsel can satisfy the cause and prejudice standard, such a claim must itself be properly exhausted.  *Edwards,* 529 U.S. at 451-54, 120 S. Ct. 1587, 146 L. Ed. 2d 518.  As noted above, Shoemaker failed to exhaust this claim.  Nor does the record suggest that a failure to address the defaulted claims will result in a fundamental miscarriage of justice.  *Gomez v. Jaimet*,

12

350 F.3d 673, 679 (7th Cir. 2003) ("The fundamental-miscarriage-of-justice exception applies only in the 'extremely rare' and 'extraordinary case' where the petitioner is actually innocent of the crime for which he is imprisoned").  Therefore, no exceptions save Shoemaker's claims.

## B.    Remaining Claims

Although the bulk of Shoemaker's claims were procedurally defaulted, a few grounds for relief remain: (1) ineffective assistance of counsel based on (a) prejudicial statements and (b) a failure to call mitigation witnesses at sentencing and (2) an *Apprendi* violation based on the application of various truth-in-sentencing provisions.  Each claim is addressed in turn.

### 1.    Ineffective Assistance of Counsel

Shoemaker claims that he was denied the assistance of effective counsel.  A criminal defendant is denied his Sixth Amendment right to the effective assistance of counsel "when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense."  *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003) (*per curiam*) (citations omitted).  Under AEDPA, habeas relief is

unavailable unless the state court's rejection of the ineffective-assistance claim was "not only erroneous, but objectively unreasonable." *Id.*

### a.    Prejudicial Remarks

Shoemaker's first allegation of ineffective assistance is based on his trial counsel's allegedly prejudicial statements during sentencing. To succeed on this claim, Shoemaker must show that the Illinois courts unreasonably applied Supreme Court precedent in holding that his counsel's allegedly prejudicial remarks at sentencing did not constitute ineffective assistance.

In *Yarborough*, a habeas petitioner argued ineffective assistance based on a closing argument that labeled him as a "bad person, lousy drug addict, stinking thief, [and] jail bird." Finding that the defense counsel's strategy of building credibility with the jury through candor had venerable roots in law and rhetoric, the Supreme Court unanimously reversed a prior grant of habeas relief. *Id.* at 9-10.

As in *Yarborough*, Shoemaker's counsel attempted to use candor to gain an advantage. By frankly admitting the heinous nature of the sexual

assault, he tried to focus the sentencing judge's attention on sentencing consistency. His argument, reasonably enough, was that his client, who did not kill his victim, should be given a lower sentence than those who rape and murder. Further, although Shoemaker's counsel used strong language, the prejudice in this case was significantly tempered (if not eliminated) by the context: Shoemaker's counsel was not arguing to a jury, as in *Yarborough*, but to a sentencing judge. Since the judge had Shoemaker's guilty plea before him, the contemptible nature of Shoemaker's crimes hardly came as a revelation. Given these facts, the state court did not unreasonably apply *Yarborough* in concluding that Shoemaker's counsel was not ineffective.

### b.    Failure to Call Mitigation Witnesses

Shoemaker also asserts an ineffective assistance claim premised on his counsel's decision not to call family members as mitigation witnesses at sentencing. "[U]sually, counsel's decision not to call a witness is a tactical choice not subject to review." *Barnhill v. Flannigan*, 42 F.3d 1074, 1078 (7th Cir. 1994) (citation omitted). However, even assuming that his

15

counsel's decision was erroneous and unreasonable, Shoemaker must also show prejudice in order to merit habeas relief. *See Shiro v. Clark*, 963 F.2d 962, 973 (7th Cir. 1992) ("If [petitioner] alleges prejudice from his trial counsel's failure to present mitigating evidence at trial . . . he must offer some piece of mitigating evidence that should have been presented to the trial court but wasn't."). Shoemaker's evidence of prejudice comes solely from six identical affidavits executed by family members. Each affiant states that he or she had helpful testimony about Shoemaker's "character and circumstances," but gives no particulars. Such a meager evidentiary showing is insufficient to establish prejudice, especially considering the enormity of Shoemaker's crime. *See Milone v. Camp,* 22 F.3d 693, 704 (7th Cir. 1994) (concluding that the failure to call twenty-five mitigation character witnesses did not constitute ineffective assistance where the defendant had been convicted of a gruesome murder). Therefore, habeas relief is unwarranted.

## 2.    *Apprendi* and Illinois' Truth-in-Sentencing Provisions

Shoemaker appears to challenge 730 ILCS 5/3-6-3(a)(2)(iii) (2000),

a truth-in-sentencing provision, under *Apprendi* and its progeny.[4]   In

*Apprendi*, the Supreme Court ruled that "other than the fact of a prior

conviction, any fact that increases the penalty for a crime beyond the

prescribed statutory maximum must be submitted to a jury, and proved

beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S. Ct. 2348,

147 L. Ed. 2d 435.  Later cases have refined this rule.  *See Cunningham v.*

*California*, 549 U.S. 270, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007); *United*

*States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005);

*Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403

(2004).

Shoemaker argues that the *Apprendi* rule conflicts with portions of

Illinois' truth-in-sentencing rules.  Under Illinois law, the amount of good

conduct credit that a prisoner may receive each month turns, in part, on the

---

[4]Shoemaker actually cites the truth-in-sentencing provision found
in 730 ILCS § 5/3-6-3(a)(2)(ii) (2000).  Section 3-6-3(a)(2)(ii) provides,
in relevant part, that "a prisoner serving a sentence for . . . aggravated
criminal sexual assault . . . shall receive no more than 4.5 days of good
conduct credit for each month of his or her sentence of imprisonment."
Since Shoemaker pled guilty to aggravated criminal sexual assault,
however, no judicial fact-finding was necessary, and thus *Apprendi* is
irrelevant.

nature of the underlying conviction. For home invasion, a prisoner may earn day-for-day good conduct credit unless the court "has made and entered a finding . . . that the conduct leading to conviction . . . resulted in great bodily harm to a victim. . . ." § 3-6-3(a)(2)(iii). If such a finding is made, then the good conduct credit is limited to 4.5 days per month. *Id.*

Shoemaker argues that this provision is unconstitutional under *Apprendi*, a claim that Illinois courts have repeatedly rejected. *People v. Robinson*, --- N.E.2d ----, 2008 WL 2180163 (Ill. App. Ct. May 22, 2008); *People v. Bell*, 327 Ill. App. 3d 238, 241-42, 261 Ill. Dec. 936, 764 N.E.2d 551 (Ill. App. Ct. 2002); *People v. Newbolds*, 325 Ill. App. 3d 192, 194-96, 258 Ill. Dec. 975, 757 N.E.2d 664 (Ill. App. Ct. 2001); *People v. Fender*, 325 Ill. App. 3d 168, 177-79, 757 N.E.2d 645, 258 Ill. Dec. 956 (Ill. App. Ct. 2001); *People v. Garry*, 323 Ill. App. 3d 292, 298-99, 257 Ill. Dec. 64, 752 N.E.2d 1244 (Ill. App. Ct. 2001). New Mexico courts, analyzing a similar sentencing scheme, have reached the same conclusion. *State v. Montoya*, 2005-NMCA-078, ¶¶ 11-15, 137 N.M. 713, 114 P.3d 393 (N.M. Ct. App. 2005); *see also State v. Morales*, 2002-NMCA-016, 131 N.M. 530, 39 P.3d

747 (N.M. Ct. App. 2001). Shoemaker argues that these decisions are erroneous and points to a New Jersey case finding potential *Apprendi* problems with a similar sentencing statute. *State v. Johnson*, 166 N.J. 523, 766 A.2d 1138 (2001).

Under AEDPA standards, this Court does not weigh in on the debate over *Apprendi*'s reach; rather, it determines if the Illinois courts' resolution of the issue was contrary to or involved an unreasonable application of Supreme Court precedent. Since no Supreme Court cases have applied *Apprendi* to similar truth-in-sentencing provisions, the "contrary to" clause cannot be satisfied. *See Virsnieks v. Smith*, 521 F.3d 707, 713 (7th Cir. 2008). Nor has Shoemaker shown an unreasonable application of Supreme Court precedent. Unlike the *Apprendi* line of cases, application of § 3-6-3(a)(2)(iii) does not increase the maximum sentence imposed; rather, it merely limits the defendant's ability to later reduce his sentence. Thus, both before and after the judicial fact-finding, Shoemaker's sentence was 30 years. While the practical effect may be that the defendant serves a longer sentence, such a result is little different than the imposition of a mandatory

19

minimum sentence.  *See, e.g., McMillan v. Pennsylvania*, 477 U.S. 79, 87-88, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (upholding judicial fact-finding resulting in the imposition of a mandatory minimum sentence because the statutory scheme "neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty . . .").  Thus, this Court cannot conclude that the Illinois courts' refusal to extend *Apprendi* is "'well outside the boundaries of permissible differences of opinion.'" *Conner v. McBride*, 375 F.3d 643, 649   (7th Cir. 2004).   Therefore, Shoemaker is not entitled to habeas relief under AEDPA.

## IV.  CONCLUSION

<u>Ergo</u>, Shoemaker's petition for habeas relief (d/e 1) is DENIED.

IT IS SO ORDERED.

ENTER:    June 6, 2008

FOR THE COURT:                    /s Richard Mills
                                  United States District Judge